## IN  THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

JOSEPH R. KARSNER, IV,                               *

            **Petitioner**,                       *      NASD Case No.: 04-07347

                                            Civil Action No.: 1:07-cv-00334-RJL

     v.                                               *

PAMELA LOTHIAN  and                                  *
THE NATIONAL ASSOCIATION OF
SECURITIES DEALERS,                                  *

            **Respondents**.                     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MARYLAND SECURITIES COMMISSIONER'S
## MOTION TO INTERVENE

Pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure, the Maryland

Securities Commissioner, Melanie Senter Lubin, by and through undersigned counsel moves for

leave to intervene in this proceeding seeking an order to confirm an arbitration panel's

recommendation of expungement.  We attach hereto a Motion For A Change In Venue and Motion

in Opposition To Confirmation Of The Arbitration Award For Purposes of the Expungement of

Records.  As reasons therefor, the Securities Commissioner states:

1.      The Maryland Securities Commissioner (the "Securities Commissioner") is the

administrator of the Securities Division of the Office of the Attorney General of Maryland, and as

such is responsible for the regulation of the securities industry in Maryland pursuant to the Maryland

Securities Act.  *See* Title 11, Md. Code Ann., Corps. and Ass'ns (1999 Repl. Vol. & Supp. 2006)

(the "Securities Act").

2.      The Securities Commissioner is charged with protecting the investing citizens of

Maryland by ensuring compliance with the Securities Act by all those who offer or sell securities in or from Maryland, and by investigating complaints of fraud or improper practices in connection with the offer or sale of securities or the providing of investment advice.

3.      In a notice adopting changes to National Association of Securities Dealers' ("NASD") expungement rule, Rule 2130, the United States Securities and Exchange Commission noted that state regulators, including the Maryland Securities Commissioner, would be able to intervene in expungement matters handled by the courts as a means of ensuring that the court is made aware of the investor protection and regulatory implications of expungement.  Federal Register, Vol. 68, No. 247, p. 74671 (12/24/03), reading in pertinent part:

> As a further means to ensure that the court is made aware of the investor protection and regulatory implications of an expungement, NASD noted that states will be able to intervene if they have concerns regarding whether investor protection or regulatory issues have been fairly considered by the NASD. [. . .] To the extent that the state(s) wishes to intervene, it could so petition the court.

5.      Because the NASD has decided not to oppose expungement in this matter as contemplated by the SEC in approving NASD Rule 2130, the Maryland Securities Commissioner has the obligation to represent the interests of investors, regulators, and the integrity of the Central Registration Depository ("CRD") system.

6.      The Securities Commissioner registers securities offerings and the persons who sell them, and provides information to the public regarding a company or individual's registration and licensing status and disciplinary history, as those facts are contained on the CRD system, a computerized registration database for the securities industry.  That information also is used by the Securities Commissioner as a factor in licensing, registration, and enforcement decisions.

7.       The records of petitioner Karsner's (the "petitioner") registration and disciplinary

history, like those of almost all registered industry participants, is maintained by NASD on the CRD system.  Furthermore, because petitioner was a Maryland resident, doing business in Maryland, he was required to be registered by the Securities Commissioner, via the CRD, to conduct business in Maryland.

8.    Petitioner also was required by Maryland law to disclose in his CRD records certain disciplinary information, including customer complaints and arbitrations, and to update that information, as needed.

9.    Although the CRD system is maintained by NASD, the records contained on CRD are the joint property of all securities regulators, including all U.S. state securities administrators. Those administrators rely on its contents not only to decide on requests from persons who apply for registration or seek to renew their registration status, but also as a factor in decisions pertaining to disciplinary actions taken against the registrants by the regulators.  Moreover, information on the CRD is made available to citizens who seek information from their state regulator about industry personnel with whom they are considering entrusting their investment funds.

10.    Petitioner Karsner seeks to expunge the facts of an arbitration case based upon an arbitration panel's recommendation that all references to the arbitration be expunged from petitioner Karsner's registration records maintained on CRD.

a.    The petitioner, together with his employing firm Legacy Financial Services, Inc. ("Legacy"), was the subject of an arbitration proceeding brought by Pamela Lothian, a Maryland resident, who alleged that petitioner made unsuitable investment recommendations with regard to her account, causing significant losses in his account.

b.    The parties to the arbitration proceeding entered into a confidential agreement

to settle the matter based upon terms and conditions that were not disclosed to the arbitration panel.

     c.     As part of the agreement, the parties agreed that petitioner and Legacy were not liable for the counts listed in the Statement (and Amended Statement) of Claim, and that the investments were suitable.

     d.     Upon a motion of all parties, the arbitration panel entered a Stipulated Award dismissing with prejudice all claims against petitioner Karsner and Legacy, and recommending that the facts of the arbitration case be expunged from petitioner's CRD records.

     e.     Subsequent to the arbitration proceeding, and as required by regulations under the Maryland Securities Act, Legacy amended Karsner's CRD records to disclose that a payment of $47,000 was made to the complainant in connection with the settlement of the arbitration proceeding.

11.     The parties in this matter agreed to extend the time by which Respondent NASD had to file its response to petitioner's Petition to Confirm Arbitration Award to March 19, 2007. The NASD only recently has notified the Securities Commissioner that it does not intend to oppose the expungement of the arbitration case.

12.     Because the CRD records of an individual registered, or previously registered, with a state securities agency also are the records of the state agency, in this case the Maryland Division of Securities, the Securities Commissioner has an interest in the preservation of those state records and is concerned that the expungement of such records will negatively impact her ability to fulfill her statutory duties.

13. The Securities Commissioner therefore seeks to intervene in this proceeding.

14. The Securities Commissioner may intervene by right, as provided in Rule 24(a)(2), Federal Rules of Civil Procedure, because she has an interest in the property (CRD records) or transaction (expungement) in question as having an impact on her duties, and because judgment for petitioner may impair or impede the Securities Commissioner's ability to protect that interest, in that expungement of these records will remove relevant information required by Maryland law in order to fulfill her state-law-mandated responsibilities. No other party can or will adequately represent that interest.

15. Alternatively, the Securities Commissioner should be permitted to intervene under Rule 24(b)(2) of the Federal Rules of Procedure because her interest in having petitioner's request for expungement of records denied arises from common facts forming the basis of petitioner's claim against the NASD. Intervention by the Securities Commissioner will not unduly delay or prejudice the adjudication of the rights of the original parties.

16. The NASD does not oppose the Securities Commissioner's motion to intervene.

WHEREFORE, the Securities Commissioner requests that this motion be granted, that she be allowed to intervene in this proceeding, and that a hearing be set in this matter.

Respectfully submitted,

Douglas F. Gansler
Attorney General of Maryland

- 5 -

_____/s/_____
Kelvin M. Blake
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-7783


_____/s/_____
Lucy Cardwell
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-6337



March 20, 2007

CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Motion To Intervene, memorandum in support thereof, and proposed Order, by causing a copy to be sent by U.S. mail, first-class postage prepaid, to:

George S. Mahaffey, Jr., Esq.
Goodell, DeVries, Leech & Dann, LLP
One South St., 20th Floor
Baltimore, MD 21202
*Counsel for Petitioner Joseph Karsner*


Karen Weinstein
NASD Registration and Disclosure Department
9509 Key West Ave., 2nd Floor
Rockville, MD 20850
*Counsel for NASD, Respondent*


William B. Young, Jr., Esq.
Colling, Gilbert, Wright & Carter
2301 Maitland Center Parkway, Suite 240
Maitland, FL 32751
*Counsel for Lawrence Simpson, Respondent*


March 20, 2007                              /s/
                              _____
                                        Kelvin M. Blake

IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

JOSEPH R. KARSNER, IV,                          *

                    Petitioner,                          *        NASD Case No.: 04-07347
                                                                          Civil Action No.: 1:07-cv-00334-RJL
          v.                                                      *

PAMELA LOTHIAN  and                         *
THE NATIONAL ASSOCIATION OF
SECURITIES DEALERS,                            *

                    Respondents.                      *
    *       *       *       *       *       *       *       *       *       *       *       *       *       *

MEMORANDUM IN SUPPORT OF THE
MARYLAND SECURITIES COMMISSIONER'S
MOTION TO INTERVENE

<u>INTRODUCTION</u>

Maryland Securities Commissioner Melanie Senter Lubin (the "Securities

Commissioner") seeks leave to intervene in this proceeding by right and, alternatively,

permissively, pursuant to Rule 24, Federal Rules of Civil Procedure.  The Securities

Commissioner seeks to intervene in order to oppose petitioner's request for expungement of

records.

The Securities Commissioner's intervention is necessary in order to ensure that her

authority and responsibility to enforce the Maryland Securities Act, Title 11, Md. Code Ann.,

Corps. & Ass'ns (1999 Repl. Vol. & Cum. Supp. 2006) (the "Securities Act") for the protection

of Maryland investors and others is not hampered by the expungement of records that the

Securities Commissioner requires, relies upon, and co-owns with the National Association of

Securities Dealers ("NASD").

<u>BACKGROUND</u>

A.     <u>The Maryland Securities Commissioner</u>

The Securities Commissioner is authorized to act to enforce the Maryland Securities Act and to protect Maryland and other investors.  Md. Code Ann., Corps. and Ass'ns, section 11-101 *et seq., passim*.  That responsibility includes reviewing the applications (including the full registration and disciplinary history) of those who seek to be licensed in Maryland to transact securities business.  It also includes providing to inquiring investors information regarding the registration and disciplinary history of a company or individual with whom the investors are considering entrusting their investment funds.  Furthermore, it includes evaluating the history of registered or non-registered individuals when deciding whether to investigate and/or take enforcement action against an individual.

The Securities Commissioner determines who may hold a license to offer and sell securities in Maryland, and acts in the public interest to protect the investing public.  These records are necessary for the Securities Commissioner to fulfill her statutory duties.    Access to timely, accurate, and complete information about a securities professional's conduct and status is thus vital to the meaningful exercise of the Securities Commissioner's responsibilities.  No area of that registration history may be more important than an applicant's or registrant's disciplinary history of customer complaints or arbitrations.

B.     <u>NASD and the "CRD"</u>

The records of the petitioner's registration and disciplinary history, like that of almost all registered industry participants, is maintained by the NASD on the Central Registration Depository ("CRD"), a computerized registration database for the securities industry.  The CRD

serves as an information-gathering/organizing/retrieval system for the state (including Maryland) and federal securities regulators – a single uniform form (Form U4), rather than duplicative filings in each state, may be filed with the CRD by a current or potential registrant. Because each state independently requires, evaluates, and draws conclusions based on the facts contained on the form, all original uniform forms filed with the CRD are deemed to be filed in each state in which the person seeks to be registered as a securities professional. Expungement from the CRD will alter a record actually required and maintained in each state in which the individual is or was registered.

The Securities Commissioner, through the North American Securities Administrators Association, Inc. ("NASAA"), and the NASD have entered into a contractual relationship whereby the NASD has agreed to maintain and administer a database of information pertaining to securities professionals on the CRD so that the Securities Commissioner can use that information to evaluate current and potential registrants. The CRD is maintained by the NASD, but the information filed with the system is the joint property of all state securities regulators; as a joint owner, the Securities Commissioner has an interest in ensuring completeness and accuracy of the CRD records. The Securities Commissioner relies on its contents not only to decide on requests from persons who apply for registration or seek to renew their registration status, but also as a factor in decisions pertaining to disciplinary actions taken against the registrants. Moreover, information on the CRD is made available to those calling their state regulators seeking information about industry personnel. Furthermore, as records of and held in each state securities administrator's control, the CRD records are subject to relevant state public records laws.

To conduct securities business in Maryland, an individual is required to register with the

Maryland Securities Division as an agent by filing a Form U4 through the CRD.  Md. Code Ann., Corps. and Ass'ns, §§11-401 and 11-405.  The Form U4 requires the disclosure of certain information including customer complaints and arbitrations.  Based upon information contained in an applicant's Form U4, the Securities Commissioner makes a decision whether to register that individual.  The Securities Commissioner's decision is independent of the NASD's decision to register an individual, and at times, may differ.

Under Maryland law, an individual has an obligation to keep the information contained in his/her Form U4 accurate and complete.  If any information contained in an individual's Form U4 becomes inaccurate or incomplete, the individual is required to file an amended Form U4, through the CRD, updating or correcting the incorrect or incomplete information.  Id., §11-411.

Petitioner Karsner was registered with NASD and with the State of Maryland.  Those registrations were required in order to transact business in securities in accordance with relevant state and federal securities laws.  Karsner's CRD records reflect a significant number of customer complaints and/or arbitrations.  Karsner now seeks to expunge any record of the arbitration in the case at hand, and that of two other cases also before this Court.  *Karsner v. NASD and Simpson,* Civil Action No. 1:07-cv-00378-RMU, and *Karsner v. NASD and Catalano*, NASD Case No. 04-05933.  Karsner also has several expungement requests pending with the NASD. Additionally, Karsner is the subject of an Order to Show Cause issued by the Securities Commissioner, and an on-going investigation of his securities activities.  The Securities Commissioner, because of her concerns that Karsner is attempting to use the expungement process as a way of cleansing his CRD record and, thus, distorting his disciplinary record, opposes his request of expungement.

- 4 -

C.    Procedural events leading to this Motion

Petitioner Karsner, together with his employing firm Legacy Financial Services, Inc. ("Legacy"), was the subject of an arbitration proceeding brought by a complaining investor, Pamela Lothian, who alleged that unsuitable investment recommendations by petitioner caused significant losses in her account.  The parties to the arbitration proceeding entered into a confidential agreement to settle the matter based upon terms and conditions that were not disclosed to the arbitration panel.  As part of the agreement, the parties stipulated that petitioner Karsner and Legacy were not liable for the counts listed in the Statement (and Amendment Statement) of Claim and that the investments were suitable.  Upon a motion of all parties, the arbitration panel entered a Stipulated Award dismissing with prejudice all claims against petitioner Karsner and Legacy, and recommending that the facts of the arbitration case be expunged from petitioner Karsner's CRD records.  Subsequent to the arbitration proceeding, and as required by state regulations, Legacy amended Karsner's CRD records to disclose that a payment of $47,000 was made to the complainant in connection with the settlement of the arbitration proceeding.  The petitioner then petitioned this Court for an order of expungement, which would result in the removal from his CRD records of all mention of the customer complaint and the arbitration.

NASD was granted an extension of time until March 19, 2007, to file its response to petitioner's Petition to Confirm Arbitration Award.  The NASD, however, has recently notified the Securities Commissioner that it does not intend to oppose petitioner's Petition to Confirm Arbitration Award.  The Securities Commissioner now seeks to intervene.

<u>ARGUMENT</u>

Under controlling law, the intervention of the Securities Commissioner may occur as of right or by permission. The Securities Commissioner meets the standards for both types of intervention.

I.    <u>THE SECURITIES COMMISSIONER SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT</u>

Rule 24(a)(2) of the Federal Rules of Civil Procedure sets forth the requirements for intervention as of right. A party moving for intervention as of right must: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action. *SEC v. Prudential Securities Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998).

a.    <u>The Securities Commissioner's application is timely.</u>

The Maryland Securities Commissioner's motion to intervene is timely. Timeliness, under Rule 24, is not specifically defined but instead is to be determined by the court in its sound discretion based upon all the circumstances. *National Association for the Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973). The Court of Appeals for the District of Columbia has stated that timeliness "is to be judged in consideration of all the circumstances especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *U.S. v. British American Tobacco Australia Services, Ltd*, 437 F.3d 1235, 1238 (D.C. Cir. 2006).

The Securities Commissioner was notified of Karsner's Expungement action through the NASD and NASAA only recently. Even more recently, on or about March 14, 2007, the

Securities Commissioner was informed of the NASD's decision not to oppose the expungement request. Following notification of the NASD's decision, the Securities Commissioner began to prepare her motion and memorandum to this Court.

The Securities Commissioner's Motion to Intervene is timely filed as it is filed only one day after the NASD's response to petitioner's Petition for Confirmation of Arbitration Award was due, March 19, 2007. It also is filed prior to the Court's decision on any pertinent issues or substantive matters.

The Securities Commissioner attaches, together with this Motion to Intervene, the Securities Commissioner's opposition to the petitioner's Petition for Confirmation of Arbitration Award.

      b.    <u>The Securities Commissioner has a substantial interest in this matter and that interest may be impaired by the disposition of the action.</u>

The Securities Commissioner's motion to intervene satisfies the second and third requirements for intervention as of right. The Securities Commissioner has substantial legal interests in the ruling on the petition for expungement. A ruling on the petition granting expungement will impair or impede her ability to fulfill her duties under Maryland law.

Expunging the record of the complaint and arbitration from the CRD will remove the information from the Securities Commissioner's consideration (and indeed, from the consideration of every state securities administrator), thereby impairing her ability to perform her statutory obligation to fully evaluate the fitness of potential registrants.

The Securities Commissioner, like every state regulator, needs to be able to identify applicants and registrants who are the subjects of customer complaints or arbitrations in order to determine any patterns of improper conduct and allegations of customer losses or dissatisfaction.

The Securities Commissioner also needs to be able to identify the broker-dealer firms that regularly hire brokers with histories of customer complaints or arbitrations, as perhaps warranting closer review or examination of the sufficiency of supervision. The Securities Commissioner may base an investigation on a pattern of customer arbitration filings or use that information as a factor in determining sanctions. Expunging the record of such filings will remove them from the Securities Commissioner's consideration and greatly impair her ability to carry out her regulatory, investigatory, enforcement, and Public Information Act duties.

For these reasons, the Securities Commissioner needs and is required by law to maintain the complete disciplinary and other records of its registrants; expungement will prevent that. The Securities Commissioner should be granted leave to intervene to more fully present facts to the Court in opposition to the petition for confirmation.

      c.    <u>The Securities Commissioner's interests are not adequately represented by any other party.</u>

The Securities Commissioner's interest is to protect the investing citizens of the State of Maryland by ensuring compliance with the Maryland Securities Act and investigating complaints of fraud or improper practices. The NASD has interests that differ from those of the Securities Commissioner. The NASD is concerned with maintaining the registration and licensing information of its member firms and representatives in accordance with NASD rules and federal law, not state law. The NASD's reasons for maintaining the completeness and accuracy of the CRD system are not identical to those of state regulators, including the Maryland Securities Commissioner, who is governed by state mandates, including public records laws. Therefore, the Securities Commissioner's interests would not be adequately represented by the existing parties. To the extent that the NASD's interests overlap with those of the State, the NASD has indicated

- 8 -

that it does not intend to oppose this Petition.

II.    THIS COURT SHOULD, ALTERNATIVELY, GRANT THE SECURITIES
       COMMISSIONER PERMISSIVE INTERVENTION UNDER RULE 24(b)(2)

Under Rule 24(b)(2) of the Federal Rules of Civil Procedure, an applicant may be

permitted to intervene in an action "when an applicant's claim or defense and the main action

have a question of law or fact in common." Fed.R.Civ.Proc. 24(b)(2).

The Securities Commissioner's motion to intervene satisfies the requirement for

permissive intervention. The Securities Commissioner's interest in having petitioner's request

for expungement denied arises from the same common facts as petitioner's claim against the

NASD. In addition, permitting the Securities Commissioner to intervene would be an

appropriate exercise of discretion because the Securities Commissioner is in the best position to

present the State of Maryland's investor protection and regulatory concerns arising from the

expungement request.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Securities Commissioner requests that

she be allowed to intervene in this proceeding.

Respectfully submitted,

Douglas F. Gansler
Attorney General of Maryland


_____/s/_____
Kelvin M. Blake
Assistant Attorney General
Division of Securities
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410/576-7783

_____/s/_____
Lucy Cardwell
Assistant Attorney General
Division of Securities
200 St. Paul Place, 20th Floor
Baltimore, MD 21202
410/576-6337

March 20, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| **JOSEPH R. KARSNER, IV,** | * | |
| **Petitioner**, | * | NASD Case No.: 04-07347 |
| | | Civil Action No.: 1:07-cv-00334-RJL |
| **v.** | * | |
| **PAMELA LOTHIAN  and** | * | |
| **THE NATIONAL ASSOCIATION OF** | | |
| **SECURITIES DEALERS,** | * | |
| **Respondents**. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**ORDER GRANTING
MARYLAND SECURITIES COMMISSIONER'S
MOTION TO INTERVENE**

Upon consideration of the Maryland Securities Commissioner's Motion To Intervene in this proceeding, the Court being fully apprised in the premises and good cause for granting that Motion having been shown, it is this _____ day of _____ , 2007,

ORDERED, that the motion be and hereby is granted; and it is further

ORDERED, that the Maryland Securities Commissioner be added as a Respondent in this case.

_____
Judge of the U.S. District Court
for the District of Columbia

IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

JOSEPH R. KARSNER, IV,                                    *

             Petitioner,                             *     NASD Case No.: 04-07347
                                       Civil Action No.: 1:07-cv-00334-RJL
   v.                                                       *

PAMELA LOTHIAN  and                                   *
THE NATIONAL ASSOCIATION OF
SECURITIES DEALERS,                                    *

           Respondents.                           *
*    *    *    *    *    *    *    *    *    *    *    *    *    *

MARYLAND SECURITIES COMMISSIONER'S
MOTION IN OPPOSITION TO CONFIRMATION
OF THE ARBITRATION AWARD
FOR PURPOSES OF THE EXPUNGEMENT OF RECORDS

      The Maryland Securities Commissioner, Melanie Senter Lubin, having been granted permission to intervene in this matter, by and through undersigned counsel moves that the Court deny Joseph Karsner's petition for confirmation of an arbitration panel's recommendation that the facts of the matter be expunged from his record on the Central Registration Depository.  As reasons therefor, the Securities Commissioner states:

      1.    The Maryland Securities Commissioner (the "Securities Commissioner") is the administrator of the Securities Division of the Office of the Attorney General of Maryland, which is responsible for the regulation of the securities industry in Maryland pursuant to the Maryland Securities Act.  *See* Title 11, Corporations and Associations Article, Annotated Code of Maryland (1999 Repl. Vol. & Supp. 2006) (the "Securities Act").

      2.    The Securities Commissioner is responsible for protecting the investing citizens of

Maryland by ensuring compliance with the Securities Act by all who offer or sell securities in or from Maryland, and by investigating complaints of fraud or improper practices related to such transactions.

3.      The Securities Commissioner registers securities offerings and the persons who sell them, and provides information to the public regarding a company or individual's registration, licensing status, and disciplinary history, as contained on the Central Registration Depository ("CRD") system.  That information also is used by the Securities Commissioner as a factor in licensing, registration, and enforcement decisions.

4.       The record of petitioner Karsner's (the "petitioner") registration and disciplinary history, like that of almost all registered securities-industry participants, is maintained by the National Association of Securities Dealers ("NASD") on the "CRD" computerized system. Furthermore, because petitioner was a Maryland resident, doing business in Maryland, he was required to be registered by the Securities Commissioner, via the CRD, to conduct business in Maryland.

5.      Although the CRD system is updated and maintained by NASD, the records contained on CRD are the joint property of all securities regulators, including all U.S. state securities administrators.  Those administrators rely on its contents not only to decide on requests from persons who apply for registration or seek to renew their registration status, but also as a factor in decisions pertaining to disciplinary actions taken against the registrants by the regulators.  Moreover, information on the CRD is made available to citizens who seek information from their state regulator about industry personnel with whom they are considering entrusting their investment funds.

6.      The Securities Commissioner opposes expungement because granting Karsner's

petition will impair or impede her ability to further the public interest in her fulfilling her duties of investor protection through regulation of and knowledge about those practicing in the securities business.  Expungement of these records will limit information required by the Securities Commissioner in order to fulfill her state-law-mandated responsibilities.

WHEREFORE, the Securities Commissioner requests that Karsner's petition for confirmation of expungement of records be denied.

Respectfully submitted,

Douglas F. Gansler
Attorney General of Maryland


_____/s/_____
Kelvin Blake
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-7783


_____/s/_____
Lucy Cardwell
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-6337


March 20, 2007

CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing Maryland Securities Commissioner's

Motion In Opposition To Confirmation Of The Arbitration Award For Purposes of the Expungement

of Records, memorandum in support thereof, and proposed Order, by causing copies to be sent by

U.S. mail, first-class postage prepaid, to:


George S. Mahaffey, Jr., Esq.
Goodell, DeVries, Leech & Dann, LLP
One South St., 20th Floor
Baltimore, MD 21202
*Counsel for Petitioner Joseph Karsner*


Karen Weinstein
NASD Registration and Disclosure Department
9509 Key West Ave., 2nd Floor
Rockville, MD 20850
*Counsel for NASD, Respondent*


William B. Young, Jr., Esq.
Colling, Gilbert, Wright & Carter
2301 Maitland Center Parkway, Suite 240
Maitland, FL 32751
*Counsel for Lawrence Simpson, Respondent*


March 20, 2007                    _____
                                              /s/
                                         Kelvin Blake

IN  THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION


JOSEPH R. KARSNER, IV,                          *

              Petitioner,                       *        NASD Case No.: 04-07347
                                                         Civil Action No.: 1:07-cv-00334-RJL
      v.                                        *

PAMELA LOTHIAN  and                             *
THE NATIONAL ASSOCIATION OF
SECURITIES DEALERS,                             *

              Respondents.                      *
*     *     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM IN SUPPORT OF THE
MARYLAND SECURITIES COMMISSIONER'S
MOTION IN OPPOSITION TO CONFIRMATION OF
THE ARBITRATION AWARD
FOR PURPOSES OF THE EXPUNGEMENT OF RECORDS

INTRODUCTION

Maryland Securities Commissioner Melanie Senter Lubin (the "Securities

Commissioner") opposes the expungement of the record of Petitioner Karsner's arbitration, and

urges that his petition for confirmation of the arbitration panel's expungement recommendation

be denied.  Denial of the petition is necessary to ensure that the Securities Commissioner's

authority and responsibility to enforce the Maryland Securities Act for the protection of

Maryland investors and others is not hampered by the expungement of records that the Securities

Commissioner requires, relies upon, and co-owns with the NASD.

<u>BACKGROUND</u>

A.     <u>The Maryland Securities Commissioner</u>

The Securities Commissioner is charged with enforcing the Maryland Securities Act with the goal of protecting Maryland residents and other investors.  *See* Title 11, Md. Code Ann., Corps. & Ass'ns (1999 Repl. Vol. & Cum. Supp. 2006) (the "Securities Act"), section 11-101 *et seq., passim*.  That responsibility includes reviewing the applications (including the full registration and disciplinary history) of those who seek to be licensed in Maryland to transact securities business.  It also includes providing to inquiring investors information regarding the registration and disciplinary history of a company or individual with whom the investors are considering entrusting their investment funds.  Furthermore, it includes evaluating the history of registered or non-registered individuals when deciding whether to investigate and/or take enforcement action against an individual.

The Securities Commissioner determines who may hold a license to offer and sell securities in Maryland, and therefore acts to protect the investing public, which has a direct and substantial interest in the records used by the Securities Commissioner.  Access to timely, accurate, and complete information about a securities professional's conduct and status, both within Maryland and in other jurisdictions with similar securities laws and registration requirements, is thus vital to the meaningful exercise of the Securities Commissioner's authority.  No area of that registration history may be more important than any disciplinary history of customer complaints, including resulting arbitrations or regulatory actions.

B.     <u>NASD and the "CRD"</u>

The records of the petitioner's registration and disciplinary history, like that of almost all

registered industry participants, is maintained by NASD on the Central Registration Depository ("CRD"), a computerized registration database for the securities industry.  The CRD serves as an information-gathering/organizing/retrieval system for the state (including Maryland) and federal securities regulators – a single uniform form (Form U4), rather than duplicative filings in each state, may be filed with the CRD by a current or potential registrant.  Because each state independently requires, evaluates, and draws conclusions based on the facts contained on the form, all original CRD uniform forms filed with NASD are deemed to be filed in each state in which the person seeks to be registered as a securities professional.  Expungement from the CRD will alter a record actually required and maintained in each state in which the individual is or was registered.

The Securities Commissioner, as a member of the North American Securities Administrators Association ("NASAA"),[1] and the NASD have entered into a contractual relationship whereby the NASD has agreed to maintain and administer a database of information pertaining to securities professionals on the CRD so that the Securities Commissioner can use that information to evaluate current and potential registrants.  The CRD is created and maintained by NASD, but the records contained on CRD are the joint property of all state securities regulators; as a joint owner, the Securities Commissioner has an interest in ensuring completeness and accuracy of the CRD records.  The Securities Commissioner relies on its contents not only to decide on requests from persons who apply for registration or seek to renew

---

[1]  NASAA is the nonprofit corporate association of state, provincial, and territorial securities regulators in the United States, Canada, and Mexico.  It has 67 members, including the securities regulators of Maryland, the District of Columbia, and all other states, and is devoted to protecting investors from fraud and abuse in the offer and sale of securities.

their registration status, but also as a factor in decisions pertaining to disciplinary actions taken against the registrants. Moreover, information on the CRD is made available to those calling their state regulators seeking information about industry personnel. Furthermore, as records of and held in each administrator's control, the CRD records are subject to relevant state public records laws.

Petitioner Karsner was registered with NASD and with the State of Maryland at the time of the complaint and resulting arbitration, which registration is required in order to transact securities business in Maryland, in accordance with relevant state and federal securities laws.[2] Karsner's CRD records reflect a significant number of customer complaints and/or arbitrations. Karsner now seeks to expunge any record of the arbitration in the case at hand, and that of two other cases also before this Court. *Karsner v. NASD and Simpson,* Civil Action No. 1:07-cv-00378-RMU, and *Karsner v. NASD and Catalano*, NASD Case No. 04-05933. Additionally, Karsner has several expungement requests pending with the NASD. The Securities Commissioner has concerns that Karsner is attempting to use the expungement process as a way of cleansing his CRD record and, thus, distorting his disciplinary record. It is because of her use of and reliance on the information in the CRD that the Securities Commissioner opposes expungement here.

C.    Procedural events leading to this Opposition

Lothian filed a Statement of Claim on October 19, 2004, alleging that Karsner made unsuitable investment recommendations for her accounts involving mutual funds. Karsner and the brokerage firm Legacy Financial Services, Inc. denied the allegations. Without a hearing or

---

[2] Karsner's registration in Maryland was voluntarily terminated on January 5, 2006.

the submission of any evidence to the panel, the parties entered into a settlement agreement whereby they agreed that neither Legacy nor Karsner is liable for the counts in the claims, that the investments were suitable, that Lothian would be paid $47,000, and that the parties would present a stipulated award to the arbitration panel in which the panel would dismiss the claims and recommend expungement of all CRD records relating to this complaint.  The panel approved the stipulated award in or about February 2006.  Karsner has petitioned this Court for an order to confirm the stipulated arbitration award recommending expungement of the arbitration records. A copy of the records that Karsner seeks to have expunged is Exhibit 1 to the attached affidavit of Frank Barlow.

<u>ARGUMENT</u>

Denial of the petition for expungement, and retention in the CRD system of the truthful facts relevant to this arbitration proceeding and the underlying complaint, is in the public interest and are necessary to the Securities Commissioner's fulfillment of her duties under the Maryland Securities Act.

I.    <u>Denial of expungement serves the public interest by furthering
      full disclosure of information material to investors.</u>

The goal of expungement is to erase from the CRD record – from regulatory history, as it were – any record of the event expunged.  Where an arbitration panel, after a full hearing, has decided on the basis of the law and the facts that the individual securities professional named was not involved in the transactions at issue, or where the panel affirmatively finds that the claim is false or clearly erroneous, then there might be no record that would be material to a potential investor or to a regulator reviewing that professional's credentials.  In that case expungement might protect the professional from the specter of a wrongful allegation.

Where, however, an arbitration is settled pursuant to a confidential agreement involving the payment of funds to the complainant, and a stipulated award is entered without the holding of a hearing or a review by the panel of the law and facts forming the basis for the arbitration claim, then expungement is contrary to the public interest and would impede the regulator's right to enforce the securities laws within her jurisdiction. Expungement especially is inappropriate in cases where the complaint is dismissed without any hearing on the merits. That is the case here. That also is the case in the other Karsner expungement matters (*Karsner v. NASD and Simpson*, Civil Action No. 1:07-cv-00378-RMU, and *Karsner v. NASD and Catalano*, NASD Case No. 04-05933) now before this Court. There was no affirmative finding after a hearing by the arbitration panel that the arbitration might be eligible for expungement. This settlement, like myriad others that Karsner has negotiated, provides for a payment of money in exchange for an agreement to expunge CRD records. This settlement, like myriad others that Karsner has negotiated, provides for a payment of money in exchange for an agreement to expunge CRD records. The information is material both to the investor when they select professionals to handle their investment funds, and to the Securities Commissioner in carrying out her regulatory duties. The public interest, through the maintenance of public records necessary to effective enforcement of state and federal securities laws, is best served by denying expungement.

II.    <u>Denial of expungement and preservation in the CRD disciplinary record of these facts is necessary for the Securities Commissioner to administer the Maryland Securities Act.</u>

A.    <u>The record is necessary for registration purposes.</u>

To conduct securities business in Maryland, an individual is required to register with the Maryland Securities Division as an agent by filing a Form U4 via CRD. Md. Code

Ann., Corps. and Ass'ns, §§11-401 and 11-405.  The Form U4 requires the disclosure of certain information including customer complaints and arbitrations.

Under Maryland law, an individual has an obligation to keep the information contained in his/her Form U4 accurate and complete.  If any information contained in an individual's Form U4 becomes inaccurate or incomplete, the individual is required to file an amended Form U4, via CRD, updating or correcting the incorrect or incomplete information.  Id., §11-411.

The Securities Commissioner makes a decision whether to register or discipline an individual based upon the information contained in his/her Form U4.  Expunging the record of the complaint and arbitration from the CRD will remove the information from the Securities Commissioner's review (indeed, from the consideration of every state securities administrator), thereby impairing her ability to perform her statutory obligation to fully evaluate the fitness of potential registrants.

The Securities Commissioner, like every state regulator, needs to be able to identify licensees who are subjects of customer complaints in order to spot any patterns of improper conduct and unexplained customer losses or dissatisfaction.  Reliance on information in the CRD is especially important when an applicant, licensed in another state, seeks licensure in Maryland.  Such an individual would not be on the Maryland databases, and is not known to the Securities Commissioner.  Absent a complete record, the Securities Commissioner might accept the application of someone who has a checkered disciplinary history but whose customer complaints have been expunged.  Such a person then would be permitted to solicit Maryland clients who likewise would have no knowledge of the history of customer complaints.  The Securities Commissioner has a right, indeed an obligation, to reject the application of such professionals, or

to condition the registration upon certain supervisory or monitoring procedures designed for investor protection. Otherwise, the Commissioner must await a new cycle of customer complaints before moving to limit or revoke such registration.

Furthermore, the reporting of such incidents to the Commissioner, albeit on a uniform CRD form, is a requirement of State law precisely because that information is necessary to the Commissioner in the exercise of her duties to protect Maryland investors.

     B.    <u>The record is necessary for investigative purposes.</u>

Karsner's CRD records disclose the existence of a significant number of customer complaints and/or arbitrations filed against Karsner. Including the case at hand, there are at least 32 customer complaints and/or arbitrations involving Karsner, some involving stipulated awards with expungement provisions. *See* list attached to Frank Barlow affidavit as Exhibit 2. The allegations underlying the complaints and arbitrations involve unsuitable investments, misrepresentation, and mismanagement of client funds. The majority of the complaints and arbitrations have been settled with the payment of monetary compensation; in total, an amount exceeding $1.1 million has been paid to resolve the complaints and arbitrations. Karsner now seeks to expunge any existence of at least 3 of the 32 customer complaints and/arbitrations and, upon information and belief, may be in the process of seeking expungements for a significant number of other complaints and arbitrations.

The Securities Commissioner needs to be able to identify those individuals with histories of customer complaints or arbitrations. The Securities Commissioner may base an investigation on a pattern of customer complaints or arbitration filings to determine if any enforcement action is warranted. In fact, Karsner is the perfect example of a situation in which the Securities

Commissioner has initiated an investigation at least, in part, based upon a pattern reflected in CRD records.  As a result of that investigation, the Securities Commissioner has issued an Order to Show Cause in which she alleges that Karsner may have sold unsuitable investments and in other respects violated the Maryland Securities Act.  *See* Exhibit 3 attached to Frank Barlow affidavit.  The expungement of Karsner's customer complaints or arbitrations from his CRD record will prevent the Securities Commissioner from considering relevant information, and impair her statutory obligation to investigate violations of the Maryland Securities Act.

In addition, the Securities Commissioner needs to be able to identify the broker-dealer firms that regularly hire brokers with histories of customer complaints, as perhaps warranting closer review or examination of the sufficiency of supervision.  The Securities Commissioner may base an investigation on a pattern of customer arbitration filings.

III.    <u>Denial of expungement and preservation in the CRD disciplinary record of these facts is necessary for the Securities Commissioner to comply with Maryland's public record laws.</u>

Under Maryland law, a public record is defined to include any documentary material that is received by the unit or instrumentality in connection with the transaction of public business.  Md. Code Ann., State Gov't, §10-611.  That record may take any form including, but not limited to, a computerized record.  *Id*.  As the principal executive officer of the Maryland Securities Division, the Securities Commissioner is the "official custodian" of the Division's records and, as such, is responsible for keeping the records of the Division.  *Id.*, Md. Code Ann., Corps. and Ass'ns, §11-201.  The Securities Commissioner also is responsible for making those records available to the general public.  Md. Code Ann., State Gov't, §10-612.

As discussed above, to conduct securities business in Maryland, an individual is required

to qualify to become registered with the Maryland Securities Division as an agent by filing, via

CRD, a Form U4 with the Securities Commissioner. That Form U4 requires the disclosure of

certain registration and disciplinary information, including customer complaints and arbitrations,

which forms the basis of the individual's application with the Securities Commissioner. Under

Maryland's public records laws, the majority of the information contained on that Form U4, with

the exception of social security number and, at times, personal residential information, is a public

record. Therefore, expungement of the customer complaint and arbitration make it impossible

for the Securities Commissioner to comply with Maryland's public records laws.

<u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above, the Securities Commissioner requests that

the petition for confirmation of expungement of records be denied. The Securities Commissioner

does not oppose confirmation of the remainder of the arbitration award.

Respectfully submitted,

Douglas F. Gansler
Attorney General of Maryland

/s/
Kelvin M. Blake
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-7783

/s/
Lucy Cardwell
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-6337

March 20, 2007

## AFFIDAVIT OF FRANK G. BARLOW

I, FRANK G. BARLOW, make this affidavit under penalties of perjury:

1.    I am a resident of Baltimore County, Maryland and am over twenty-one years of age. I make this affidavit based on my personal knowledge.

2.    I am an investigator with the Maryland Securities Division ("Division").

3.    I have reviewed documents from the Central Registration Depository ("CRD") to identify the records that Joseph R. Karsner, IV seeks to expunge in this matter. I have printed, and attach as Exhibit 1, the CRD records disclosing an arbitration complaint filed by Pamela Lothian, in NASD arbitration case 04-07347.

4.    I have also reviewed documents from the CRD for current and archived disclosure information on other complaints and arbitrations that have been filed against Joseph R. Karsner, IV. I attach as Exhibit 2 a schedule summarizing the disclosure information for the arbitration complaints filed against Karsner.

5.    On March 19, 2007, the Maryland Securities Commissioner issued an Order to Show Cause against Joseph R. Karsner, IV, Joe Karsner & Associates and Legacy Financial Services alleging violations of the Maryland Securities Act, including violations of the anti-fraud and investment adviser registration provisions. I attach the order as Exhibit 3.

Dated: March 20, 2007

_____
Franklin G. Barlow

DRP Instructions:

- In all matters (i.e., customer complaints, arbitrations/CFTC reparations, civil litigations), complete items 1-6.
- If the matter involves only a customer complaint, also complete items 7-12, as appropriate.
- If the customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.
- If the matter involves an arbitration or CFTC reparation, complete items 13-19, as appropriate.
- If the matter involves a civil litigation, complete items 20-27.
- Item 28 is an optional field and applies to all event types (i.e., customer complaint, arbitration/CFTC reparation/civil litigation).

Complete items 1-6 for all events.

| | |
|---|---|
| 1. Customer Name(s):<br>PAMELA LOTHIAN | |
| 2. Customer(s) State of Residence:<br>Maryland<br>Other state(s) of residence/detail: | |

3. Employing *Firm* when activities occurred which led to the complaint:
LEGACY FINANCIAL SERVICES, INC.

4. Allegation(s) and a brief summary of events related to the allegation(s) including dates when activities leading to the allegation(s) occurred:
ALLEGING THAT REPRESENTATIVE MISMANAGED FUNDS.

5. Principal Product Type:
Annuity(ies) - Variable
Other Product Types:

6. Alleged Compensatory Damage Amount:      $ 104,638.00

**If the matter involves only a customer complaint, complete items 7-12, as appropriate.**

7. Date Customer Complaint was received (MM/DD/YYYY):

10/22/2004  ⊙ **Exact**   ○ **Explanation**

If not exact, provide explanation:

8. Is the customer complaint pending? ○ **Yes**   ⊙ **No**

**If the customer complaint has evolved into an arbitration/CFTC reparation or civil litigation, amend the existing DRP by completing items 9 and 10.**

9. If the customer complaint is not pending, provide status:
If status is settlement, complete items 11 and 12;
If status is arbitration/reparation, complete items 13-19;
If status is litigation, complete items 20-27.

| | | |
|---|---|---|
| ☐ **Closed/No Action** | ☐ **Withdrawn** | ☐ **Denied** |
| ☐ **Settled** | ☑ **Arbitration/Reparation** | ☐ **Litigation** |

10.
   Status Date (MM/DD/YYYY):        EXHIBIT 1

10/22/2004 ⊙ **Exact**    ○ **Explanation**
If not exact, provide explanation:

11. Settlement amount (if settled without arbitration, litigation or    $
    reparation):

12. Individual Contribution Amount:    $

**If the matter involves an arbitration or CFTC reparation, complete items 13-19, as appropriate.**

13. Arbitration/Reparation claim filed with (NASD, AAA, NYSE, CBOE, CFTC, etc.) and
    Docket/Case Number:
    NASD DISPUTE RESOLUTION ARBITRATION CASE # 04-07347

14. Date notice/process was served (MM/DD/YYYY):

    10/22/2004 ⊙ **Exact**    ○ **Explanation**
    If not exact, provide explanation:

15. Is the arbitration/reparation pending?  ○ **Yes**   ⊙ **No**

16. If the arbitration/reparation is not pending, what was the disposition?
    Settled

17. Disposition Date (MM/DD/YYYY):

    01/23/2006 ⊙ **Exact**    ○ **Explanation**
    If not exact, provide explanation:

18. Amount of Monetary Compensation (award, settlement,    $ 47,000.00
    reparation amount):

19. Individual Contribution Amount:    $ 0.00

**If the matter involves a civil litigation, complete items 20-27.**

20. Court that case was filed in (include name of Federal, Military, State or Foreign Court,
    Location of Court - City or County and State or Country, Docket/Case number).

21. Date notice/process was served (MM/DD/YYYY):

    ○ **Exact**   ○ **Explanation**
    If not exact, provide explanation:

22. Is the civil litigation pending? ○ **Yes**   ○ **No**

23. If the civil litigation is not pending, what was the disposition?

24. Disposition Date (MM/DD/YYYY):

    ○ **Exact**   ○ **Explanation**
    If not exact, provide explanation:

25. Amount of Monetary Compensation (judgment, restitution, settlement amount):                    $

26. Individual Contribution Amount:          $

27. If the action is currently on appeal enter date appeal filed (MM/DD/YYYY):

    ⊙ **Exact**  ⊙ **Explanation**

    If not exact, provide explanation:

28. Comment (Optional). You may use this field to provide a brief summary of the circumstances leading to the customer complaint, arbitration/CFTC reparation and/or civil litigation as well as the current status or final disposition(s). Your information must fit within the space provided.

Joseph Karsner CRD Entries

EXHIBIT 2

| Complainant | Date of court filing | Date of award | $ Resolution | $damages sought | Allegations and Comments | State of residence |
|---|---|---|---|---|---|---|
| Lothian, Pamela NASD 04-07347 | 2/12/07 | 1/23/06 | $47,000 | $104,638 | Mismanged funds. Expungement. | MD |
| Simpson, Larry 04-05824 | 2/21/07 | 1/6/06 | $16,000 | $124,000 | Misrepresentations. Expungement. | MD |
| L, Douglas 05-04816 | | 3/12/07 | $36,000 | $200,000 | unsuitable investments | PA |
| T, Cheryl 04-07344 | | 2/13/06 | $35,000 | $80,000 | unsuitable investments | PA |
| P, Anthony 04-08295 | | 6/14/06 | $22,500 | $136,500 | unsuitable investments | MD |
| L, Mary 04-08457 | | 3/7/06 | dismissed | $88,000 | unsuitable investments | MD |
| H, Mattie 04-08341 | | 9/7/06 | $75,000 | $188,000 | unsuitable investments | MD |
| D, Ronald 05-00275 | | 9/7/06 | $75,000 | $218,000 | unsuitable investment advice | MD |
| M, Denise 04-07359 | | 11/2/06 | $31,000 | $64,239 | unsuitable investments | OH |
| C, Robert 04-06068 | | 8/7/06 | $22,500 | $134,383.87 | misrepresentation, fraudulent inducement | MD |
| E, Carolyn 06-02026 | | 1/8/07 | settled, amount unknown | $500,000 | unsuitable investments. Settled and complaint withdrawn, claims dismissed; no payment. | VA |
| M, William 05-04984 | | 3/7/07 | $27,000 | $250,500 | unsuitable investments, misrepresentations | PA |
| J, Warren 05-00940 | | 10/25/06 | $24,000 | $90,352 | unsuitable investments | VA |
| H, Virgie 04-08296 | | 6/22/06 | $15,000 | $28,240 | unsuitable investments | MD |

| | | | | | | |
|---|---|---|---|---|---|---|
| H, Mary<br>04-0736 | | 6/16/06 | $29,000 | $88,000 | mismanagement of funds. | FL |
| L, Shirley<br>04-06796 | | 9/11/06 | $31,000 | $66,029 | misrepresentations | NC |
| B, Beverly<br>04-06795 | | 6/16/06 | $35,000 | $184,000 | misrepresentations | MD |
| W, Robert<br>04-06266 | | 6/22/06 | $30,000 | $105,500 | misrepresentations | VA |
| B, Donna<br>04-06404 | | 6/16/06 | $25,000 | $80,000 | misrepresentations & unsuitability | MD |
| H, Terressa<br>04-06007 | | 11/1/06 | $92,500 | $264,000 | mishandled acct; failure to supervise | MD |
| Catalano, John<br>04-05933 | 3/15/07 | 2/13/06 | $15,000 | $134,000 | high risk accts. $15,000 contingent on stip to expungement. If no stip award granting expungement, $9,999. | MD |
| P, James<br>04-05943 | | 6/12/06 | $25,500 | $198,000 | high risk accts. unsuitable investments | MD |
| H, Joann<br>04-07343 | | 4/14/06 | $25,000 | $52,524 | mismanaged money unsuitable investments | MD |
| G, Diane<br>04-07345 | | 6/22/06 | $16,500 | $52,843 (letter) $$36,400 (arb.) | mismanaged money | MD |
| J, Kathleen<br>04-08561 | | 7/25/06 | $17,500 | $30,000 (letter) $54,523 (arb.) | mismanaged money | MD |
| T, Eleanor<br>03-03410 | | 5/12/05 | denied (archived) | $186,753.26 | unsuitable investments, misrepresentations | VA |
| R, Roland & Linda<br>04-06039 | | 11/3/05 | $265,000 | $500,000 | misrepresentation, mismanaged accts, violations of Act. Karsner contributed $50,000. | MD |

| | | | | | | |
|---|---|---|---|---|---|---|
| P, Michael 04-06176DC | | 9/12/05 | dismissed (archived) | $30,000 | unsuitability and misrepresentation | MD |
| E, Elizabeth 01-05011 | | 12/23/02 | $60,000 | $80,000 | improper management of account causing adverse tax consequences. Karsner contributed $5,000. | MD |
| B, Eva 05-00627 | | 7/22/05 | dismissed (archived) | $70,000 | unsuitable investments | WA |
| C, Douglas 02-07048 | | 2/11/04 | $105,000 (award) | $278,000 | misrepresentation and fraud. Karsner contributed $5,000. | MD |
| T, Joseph 04-05940 | | | pending | $119,000 | misappropriation in high risk investments | MD |
| Total | | | $1,198,000 | | | |

ADMINISTRATIVE PROCEEDING
BEFORE THE
MARYLAND SECURITIES COMMISSIONER

| | |
|---|---|
| IN THE MATTER OF: | * |
| JOSEPH R. KARSNER, IV, | *    File No. 2002-0391 |
| JOE KARSNER & ASSOCIATES, LLC | * |
| and | * |
| LEGACY FINANCIAL SERVICES, INC., | * |
| Respondents. | * |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**ORDER TO SHOW CAUSE**

WHEREAS, the Maryland Securities Commissioner (the "Commissioner"), pursuant to

the authority granted by Section 11-701 of the Maryland Securities Act, Corporations and

Associations Article, Title 11, Annotated Code of Maryland (1999 Repl. Vol. & 2006 Supp.) (the

"Securities Act") initiated an investigation into the activities of Joseph R. Karsner, IV

("Karsner"), a registered representative of Legacy Financial Services, Inc. ("Legacy"), and of

Karsner's sole proprietorship Joe Karsner & Associates, LLC ("JK & A"); and

WHEREAS, in the course of its investigation of Karsner, the Maryland Securities

Division ("Division") pursued an investigation of Legacy's supervisory practices; and

WHEREAS, on the basis of that investigation the Commissioner has determined that

respondent Karsner and JK & A may have sold unsuitable investments to his clients and in other

respects violated the Securities Act, and that respondent Legacy may have failed adequately to

supervise Karsner; and                EXHIBIT 3

NOW, THEREFORE, the Commissioner hereby orders respondents to show cause: why respondents should not be barred from engaging in the securities and investment advisory business in this State; why a civil monetary penalty should not be entered against each respondent; why a final order should not be entered ordering respondents to cease and desist from further violations of the Securities Act; and why respondents' registrations as broker-dealer and broker-dealer agent should not be suspended or revoked.

The Commissioner alleges the following as a basis for this Order:

## I. JURISDICTION

1.      The Commissioner has jurisdiction in this proceeding pursuant to Section 11-701.1 of the Securities Act.

## II. RESPONDENTS

2.      Karsner (CRD # 1001341) is a Maryland resident and maintains a place of business at 325 Gambrills Road, Suite B, Gambrills, Maryland 21054.  Karsner became a registered representative of Legacy on April 2, 1999, but was terminated on January 5, 2006.  He was registered through Signator Investors, Inc. (a.k.a. John Hancock Distributors, Inc.), an affiliate of John Hancock Life Insurance Company (collectively "Hancock"), between November 1981 and April 1999.  He has passed the Series 6 exam and, therefore, may be licensed to sell mutual funds, but has never passed the Series 7 exam that would permit him to become a general securities representative.  He is not registered as an investment adviser representative, but is a licensed insurance agent in Maryland.  He is not currently registered to sell securities in any jurisdiction.

3.      Joe Karsner & Associates, LLC is a Maryland limited liability company formed in

2

April 1999.  Its principal office is located at 325 Gambrills Road, Suite B, Gambrills, Maryland

21054.

4.    Legacy (CRD # 38697) is a California corporation organized in 1995.  It is

headquartered at 2090 Marina Avenue, Box 6030, Petaluma, CA 94955-6030.  Legacy has been

registered as a broker-dealer with the National Association of Securities Dealers, Inc. ("NASD")

since December 1995 and in Maryland since January 1996.

### III. STATEMENT OF FACTS

Karsner's Business Practices

5.    Karsner operated a branch office of Legacy between September 23, 2002 and

January 5, 2006, when he was terminated.  Between April 2, 1999 and September 23, 2002, his

office was an offsite location of Legacy.

6.    Karsner described his business "Joe Karsner and Associates" as a "retirement

planning and investment organization that offers a number of investment vehicles to structure a

portfolio that will meet your particular financial needs."  He explained on his website

provenretirement.com that he has "over 22 years experience in the retirement/investment/

insurance financial planning field."

7.    Karsner held out to the public as an investment adviser.  His website used to

describe Karsner as a "financial advisor."  While he was affiliated with Legacy, the website

stated that he "manages over $250 million in retirement accounts."  It described Karsner's

Proven Retirement Solution's twelve-step, three stage process, including the first stage in which

he helped clients assess their current circumstances and set financial goals; the second stage in

which he developed a retirement plan that would fit clients' particular situations; and the third

stage in which he implemented the retirement plan with investment products that would help achieve the clients' life-long goals.

8.     Karsner emphasized to his clients his close and continuing relationship. In effect, he assumed a continuing fiduciary duty to his clients. He regularly updated clients on the status of their accounts by sending them investment summaries. He also sent letters providing his analysis of the financial markets. He reiterated in these letters his continuing responsibility for his clients with such assurances as "my business has been built soley [sic] on the premise of establishing and maintaining long-term relationships with each and every one of you," "I will continue to work hard in getting you the returns you deserve," and "call us if you would like to set up an appointment to review your accounts or reassess your financial needs. I remain committed to taking care of you the way you deserve."

9.     Karsner's website posting explained that "under the guidance of our Broker/Dealer, Legacy Financial in Petaluma, CA, Joe Karsner and Associates is able to offer superior financial products and services." According to the website, Karsner had several others working with the firm of Joe Karsner and Associates.

10.     Up until at least May 23, 2003, Karsner described Rita Hampton ("Hampton") (CRD #2999338) as one of his Legacy staff members who "has worked in the investment/insurance business for over 17 years." Hampton, however, was not a registered representative of Legacy at that time. She was registered through Lifemark Securities Corp. ("Lifemark") from January 1998 until April 2002 and through Atlas Brokerage Company ("Atlas") from April 2002 until December 2002 and again from February 2003 until October 2003. She did not become registered in Maryland through Legacy until February 3, 2004. She

4

used business cards showing her affiliation with Joe Karsner & Associates providing "Investments & Insurance for Retirement Planning" and serving as a vice president, but not identifying any broker-dealer.

11.    While Hampton was registered first through Lifemark and then Atlas, she routinely assisted Karsner with his Legacy securities clients by accompanying Karsner to meet with clients and talking with them on the telephone. Sometimes, Hampton met with Legacy securities clients alone. For example, Shirley Locklair met *only* with Hampton, but signed a Legacy new account form ("NAF") and received statements from Karsner. Karsner included on client statements insurance products from companies where Hampton, but not Karsner, had appointments. Karsner advised his clients to talk with Hampton if they had questions. Hampton also wrote some Legacy clients concerning their Legacy investments.

12.    With the assistance of Hampton and the rest of his staff, Karsner handled more than eleven hundred clients as of June 2003. He earned more than $3.3 million in commissions between April 2,1999 and June 5, 2003.

13.    Legacy paid Karsner a $125,000 signing bonus when he joined the firm. In exchange, Karsner agreed to provide Legacy with written confirmation from Hancock of its intention to transfer all customers and their invested capital to Legacy.

14.    When Karsner moved from Hancock to Legacy, Legacy arranged for a mass transfer of Karsner's clients. Clients did not individually request or authorize this transfer. Rather, the transfer was handled between the firms in about April 1999. On June 1, 1999, when Karsner expected the transfer to be complete, he wrote clients informing them that their accounts were being transferred to his new firm and asking them to advise him if a Hancock representative

5

should get in touch with them.

15.    Many of Karsner's clients are employees and former employees of the "telephone company," whether AT&T, Bell Atlantic or Verizon.  Karsner holds or held seminars, sometimes on telephone company premises, targeting telephone company employees planning for retirement.  He typically advised persons attending his seminars who were eligible for retirement to take a lump sum distribution rather than a guaranteed monthly pension because the lump sum distribution could provide for income as well as growth.  He recommended that retirees invest the lump sum in a portfolio of mutual funds, variable annuities and other insurance products, and assured potential clients that they would be able to live off the investment income from their lump sum distribution for the rest of their lives.

16.    Karsner routinely gave seminar participants a packet of materials that would help them calculate the payments they could expect to obtain from their retirement portfolio.  The materials contained a formula for calculating sustainable annual withdrawals, depending upon the size of the retirement distribution, the individual's age, life expectancy and estimated annual investment return.  The packet included a selection of investment returns ranging from a low of 6% to a high of 12%.  In the specific example that Karsner generally gave seminar participants, however, the estimated annual investment return was 8%.  In some cases, Karsner handed out materials in which he guaranteed 12% return on variable annuities, 7% return on fixed annuities and 4.5% return in a money market account.  The seminar materials contain no other discussion of the risks associated with the estimated return.

17.    When clients told Karsner how much income they needed or wanted to withdraw per month, he routinely assured them that he could provide that income.  He did not discuss the

risks associated with obtaining higher levels of monthly income and assured them that they would be able to live on their principal and income until they died.  In reliance on Karsner's reassurances, many of the seminar participants retired while still in their 50s, expecting to be able to live on the regular monthly income drawn from their retirement accounts managed by Karsner.

18.     Karsner explained the tax consequences of his retirement advice.  He told his clients that if they withdrew regular income from their retirement accounts before the age of 59 ½ and complied with the provisions of Section 72(t) of the Internal Revenue Code, they would not suffer tax penalties.  IRC Section 72(t) provides that a taxpayer must pay a 10% penalty for any distributions taken from a qualified retirement plan before the age of 59 ½ unless the distributions are part of a series of substantially equal periodic payments.  Clients who relied upon IRC Section 72(t) were locked into their monthly withdrawals until the IRS modified the rules in October 2002 to allow for a one-time change to the distribution method.

19.     Internal Revenue Rulings implementing IRC Section 72(t) provide that the interest rate used to calculate the maximum permissible periodic payment be no more than 120% of the federal mid-term rate determined in accordance in § 1274(d).  During the period after Karsner moved his business to Legacy, that rate could not exceed 6.35%.  Karsner's sample calculation for the periodic payment, however, used a rate of 8%.

20.     Karsner generally advised his clients to purchase several mutual funds and to reserve a part of their portfolio in a money market account that could be used to fund regular monthly withdrawals, satisfying the requirements of IRC Section 72(t).

21.     Most of his clients were unsophisticated in financial matters and relied upon Karsner to make diversified investments in their accounts which would be safe and secure.

While Karsner was with Hancock, his client accounts were generally fairly conservatively invested in a diversified portfolio of mutual funds, including such funds as growth and income, large cap growth, bank and bond funds, and variable annuities with diversified mutual fund sub-accounts.

22.     When Karsner transferred from Hancock to Legacy in April 1999 and his clients were transferred to Legacy through a mass transfer, Karsner was unable to service the client accounts through Legacy because the accounts held proprietary Hancock products.  It took some time for Karsner to meet with his approximately 1000 clients after his move.  As he met with them, he advised his clients to sell the Hancock products and purchase products through Legacy.

23.     Karsner pursued a much riskier investment strategy after he joined Legacy. Karsner followed investment strategies that resulted in significant portions of client assets at Legacy being invested in technology, telecommunications, internet and small or medium cap growth funds.  As a result, clients' portfolios were invested in far riskier funds than they had been at Hancock.

24.     For example, in March 2000, Karsner instructed Hancock to change the mutual funds held in the sub-accounts of over 350 variable annuity clients from a diversified portfolio to a single sub-account holding a mid-cap fund.  He did not consult with clients before directing this transfer and did not have discretionary authority over the accounts.

25.     Karsner switched many other clients from Hancock mutual funds to Oppenheimer or American Skandia/Janus funds after he moved to Legacy.  When he met with clients to make these recommendations, he also had the clients sign Legacy new account forms, often changing the investment objectives and risk tolerance from their Hancock forms to coincide with the

8

characteristics of the riskier portfolios.

26.     Many of the mutual funds that Karsner recommended to his clients declined very substantially with the burst of the tech bubble beginning in the spring of 2000, frequently by significantly more than the S & P 500 because of their investments in risky securities and concentration in small to mid-cap firms and technology stock.

27.     After his clients' portfolios had substantially declined, Karsner sometimes advised clients to sell their homes, take in tenants, go back to work or stop drawing income. Indeed, many clients have been forced to return to work. This advice was in sharp contrast to his advice when they first came to him with their retirement funds and he assured them that they could live off the proceeds for the rest of their lives.

28.     Because Karsner's clients are generally retired from the telephone company and often were taking regular income withdrawals pursuant to IRC Section 72(t), they were locked into taking withdrawals even if the withdrawals came out of principal rather than stock appreciation and investment income. As a result of following Karsner's investment advice, the retirement portfolios for many of these clients have been decimated. For example, Roland and Linda R. invested about $840,000, withdrew about $242,400, and ended with about $302,000 as of August 2003, for an approximately 50% loss of their net investment.

29.     When clients questioned Karsner about the decline in their portfolios, he advised them not to sell because their losses were simply paper losses and they still held the shares. Even as their account balances were dwindling, Karsner sent letters to clients attributing the decline to September 11 and telling them to hold onto their funds because they were invested for the long run. In recognition of his bad investment advice, however, Karsner told clients that he would

9

rebalance their portfolios after fund prices returned to target levels. For example, he wrote one client that, when fund prices reached target levels, he would place half his Janus Capital Growth shares into American Century Strategic Balanced Fund, half the Oppenheimer MidCap Fund into Quest Balanced Value Fund and half the Neuberger Berman MidCap Fund into Pimco Total Return Bond Fund.

30.    Many of the mutual funds purchased on Karsner's advice were unsuitable.  His strategy of investing in risky growth and small or mid cap funds was often devastating to retirees without a source of employment income.  The bitter result was often that clients lost a substantial part or even the entire value of their retirement portfolios.

31.    NAFs are designed to provide guidance to a broker-dealer and its representatives for deciding which investments to recommend to customers.  Legacy's NAFs require background financial information that "must be completed for all accounts."  One section requests the client's net assets and income; a second asks the client to check all applicable investment objectives; and a third asks whether the client's risk tolerance is high, medium or low.  Hancock's NAF contains a similar list of possible investment objectives, including safety of principal.  The NAF should form the basis for Karsner's recommendations to his clients and allow Legacy to review those recommendations for suitability.

32.    Many of Karsner's clients have multiple NAFs with inconsistent objectives or risk tolerance.  Sometimes, clients have more than one NAF with different objectives or risk tolerance on the same day.

33.    Karsner appears to have completed the NAF sections showing the clients' risk tolerance and investment objectives.  Many clients claim that they never discussed with him their

10

willingness to expose their retirement funds to risk. Sometimes, the risk tolerance or investment objectives section of the NAF is blank. Where there are two NAFs on the same date, with one partly blank, it appears that Karsner may have completed the form after the client signed. Other times, the client signatures appear to have been forged or copied.

34.    Karsner had a practice of having his clients sign a new account form for each new investment product. In effect, he made sure that the investment objectives and risk tolerance in the new account form were consistent with the investment product that he sold, rather than with the client's overall investment objectives and risk tolerance.

35.    Many client NAFs have not been approved or signed by a Legacy supervisor. It appears that, even when a supervisor signed the form, Legacy did not question why Karsner's clients signed so many NAFs within a short period of time or even on the same day, why the clients' risk profiles and investment objectives changed, and whether the risk profiles were appropriate for clients' retirement funds.

36.    Many investment applications completed when clients switched from one mutual fund to another are, also, incomplete. Clients did not always sign the applications or initial required items of disclosure. Often, sections were completed by typewriter before the client saw the application.

37.    Karsner routinely told his clients that they paid no fees because of the large volume of his business. Seminar materials state "no sales charges on either front or back end." When clients sold interests in mutual funds, however, they sometimes incurred contingent deferred sales charges on the sale of their Class B mutual funds.

38.    Karsner reimbursed some clients when they incurred unexpected fees. For

11

example, he reimbursed clients for various "administrative" fees, sales commissions or deferred sales charges. He reimbursed Elizabeth E. about $8,000 for unanticipated taxes, Helen and John A. for $2,500 in taxes resulting from an unauthorized transaction, and Vergie H. $23,000 for an unauthorized transaction. Karsner warned these clients not to talk with anyone else about the reimbursements.

Legacy's Supervisory Procedures

39.     Larry Qvistgaard, Vice President and Chief Compliance Officer of Legacy, supervised Karsner. According to CRD, he supervised Karsner's branch office until it officially closed on March 3, 2006. During the period April 2, 1999 through June 2002, Qvistgaard supervised approximately 103 registered representatives who had approximately 4,124 clients. Karsner alone had more than 1,000 clients. Qvistgaard had about 159 clients of his own.

40.     Qvistgaard, who served both as Chief Compliance Officer and as line supervisor for over 100 representatives, could not adequately supervise those for whom he was responsible while simultaneously ensuring that Legacy's supervisory procedures were adequate and properly implemented.

41.     According to Legacy, Karsner's office was not subject to an annual audit because it is a branch office. Legacy's Compliance Manual required that branch offices be audited at least every three years, but may be subject to more frequent inspections should the Office of Supervisory Jurisdiction become aware of anything that would warrant an inspection. Non-branch offices must be inspected as required by state law.

42.     Legacy has an obligation to monitor the securities-related activities of its agents and to detect and prevent regulatory and compliance problems of its associated persons, whether

12

the persons are working at branch or unregistered offices. In order to fulfill these obligations,

Legacy must conduct periodic examinations of its agents' offices depending on such factors as

the nature and volume of business conducted at the office and the nature and extent of contact

with customers.

43.    The NASD Notice to Members 98-38 advises its members that it does not

distinguish between branch offices and unregistered offices in its evaluation of the adequacy of

compliance examinations and notes that a pre-announced compliance examination only once a

year was inadequate to satisfy supervisory obligations of broker-dealer Royal Alliance.

44.    It appears that Legacy's first inspection of Karsner's office took place on

December 3, 2001, more than two years after Karsner started with Legacy and before his office

became a branch office. At that time, Qvistgaard conducted a two-hour audit of Karsner's office.

The audit showed that Karsner conducted no seminars, although he had a history of soliciting

clients through seminars, and made no deposits to client accounts, although Elizabeth E. filed a

complaint before September 1, 2001, in which she alleged that Karsner had reimbursed her for

the tax consequences of an improper trade. The audit also stated that outgoing correspondence

was sent to Legacy's compliance department, although correspondence from Karsner to his

clients shows that Hampton engaged in securities activities on behalf of Legacy without being

registered through Legacy. The audit did not comment on the role played by Hampton in Joe

Karsner & Associates, although Linda M. had complained in May 2001 about transactions

allegedly executed by Hampton when she had dealt only with Karsner.

45.    Even though there had been numerous customer complaints and an active

investigation by the Securities Division, Legacy did not audit Karsner's office again until July 1,

13

2003. The audit was announced. At that time, the auditor identified Qvistgaard as OSJ Manager and Karsner's office as a non-branch office, in spite of a branch office designation on CRD. The auditor noted that Karsner solicits customers through seminars and stated that Legacy has approved all Karsner's correspondence, seminar material and website. He also stated that Karsner had made no deposits to client accounts, but inconsistently noted the settlement of Elizabeth E.'s claim alleging that Karsner reimbursed her for taxes and rebated fees to other clients. The audit did not comment on any review of Karsner's bank records or on the role played by Hampton in Joe Karsner & Associates.

46.     Legacy did not maintain books and records that were adequate to properly supervise Karsner. It did not have records of the clients' portfolios brought over to Legacy from Hancock and could not determine whether there was a change in the riskiness of the portfolios when Karsner switched the clients from their proprietary Hancock products into other mutual funds. It did not maintain any computerized records of client portfolios or other records providing a statement of client accounts after Karsner switched the mutual fund holdings. Therefore, it could not evaluate the suitability of client investments. It had only the disclosure documents that Karsner completed and clients were supposed to sign when they purchased mutual funds. Often these forms were incomplete, unreviewed by supervisors and unsigned by the clients.

47.     Legacy's Compliance and Procedures Manual and OSJ Branch Office Policy and Procedures Manual prohibit various of Karsner's sales practices. For example, they require that:

a.     NAFs be completed in their entirety;

b.     Mutual fund applications be complete;

14

c. Registered representatives recommend switching of mutual fund families only in rare circumstances where there has been a clear change in the customer's investment objective and the investment objective of the new investment clearly meets the changed investment objective.

d. Registered representatives not guarantee the future value of any security;

e. All correspondence or other materials mailed or handed out at seminars to customers be approved;

f. Registered representatives not make gifts in excess of $100 to any customer; and

g. When a registered representative changes his broker-dealer registration to Legacy, the client complete and sign a change of broker-dealer form and the form be forwarded to Legacy together with a NAF.

48. Legacy's OSJ Branch Office Policy and Procedures Manual spells out supervisory procedures that Legacy has not met or for which proof of implementation has not been provided to the Securities Division:

a. NAFs must be reviewed for completeness;

b. NAFs must be signed by the OSJ Branch Manager;

c. Mutual fund applications must be reviewed for completeness;

d. All office personnel in a small office must be fingerprinted;

e. All correspondence by a registered representative must be approved;

f. All seminar material used by a registered representative must be approved;

g. A registered representative's personal bank disbursements must be reviewed to determine whether there have been checks payable to customers;

15

h.     All mutual fund liquidations must be reviewed to determine whether subsequent investments are suitable and whether appropriate disclosures, including switching letters, have been made; and

i.     All clients must complete and sign a change of broker-dealer form when a registered representative changes his broker-dealer registration to Legacy.

49.     Legacy was on notice at least since 2001 that Karsner worked with Hampton on securities matters and yet Legacy did not supervise her. Karsner client Linda M. complained that Karsner sold her an annuity but that paperwork reflecting the transaction was executed by Hampton, whom the client did not know. In addition, in a letter dated December 17, 2001, Legacy's Compliance Director recognized that client Shirley L. "met with Rita Hampton, an associate of Joe Karsner, to discuss your investments because you saw a decrease in your investment." Yet Legacy took no action to ensure that Hampton stopped conducting business on behalf of Legacy or to supervise Hampton until February 2004, when Legacy hired Hampton as an agent.

50.     Legacy was on notice since no later than December 2001, that clients sometimes had multiple NAFs on the same date with contradictory objectives. In a letter dated December 14, 2001, Legacy's Compliance Director wrote Denise M. that she had two NAFs signed in March 2000, one showing high risk tolerance with investment objectives of long term growth and capital appreciation and the other showing medium risk tolerance and investment objectives of long term growth, capital appreciation and income. Yet Legacy did not question the appropriateness of these NAFs.

51.     Legacy ignored red flags relating to Karsner's sales practices, including multiple,

16

inconsistent and incomplete NAFs; incomplete mutual fund applications; website advertisements in which Karsner holds out as an investment adviser; and indications on Karsner's website, in correspondence, and in complaints that Karsner works with a person not registered through Legacy. Even when client complaints raised serious concerns and red flags about Karsner's sales practices, Legacy denied the complaints out of hand and failed to react to or correct the challenged practices.

52.    Legacy's failure to respond adequately to red flags and customer complaints has caused Legacy to violate the "know your customer" rule in that it failed to learn the essential facts relative to those customers and ensure that their investments were suitable.

53.    Legacy has either not responded or responded only after repeated letters to requests from the Division, including requests for client account records, copies of Karsner's seminar materials, its review of the sale of Class A and Class B mutual funds, and explanations concerning Legacy's supervisory practices and procedures.

**COUNT I**
**(Acting as an Unregistered Investment Adviser or Investment Adviser Representative)**
**(Joe Karsner & Associates and Karsner)**

WHEREAS, an investment adviser means a person who, for compensation:

(1)    engages in the business of advising others, either directly or through publications or writing, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning securities; or

(2)    1.    provides or offers to provide, directly or indirectly, financial and investment counseling or advice, on a group or individual basis;

2.    gathers information relating to investments, establishes financial goals and objectives, processes and analyses the information gathered, and recommends a financial plan; or

17

3.   holds out as an investment adviser in any way, including indicating by advertisement, card, or letterhead, or in any other manner indicates that the person is, a financial or investment "planner", "counselor", "consultant", or any other similar type of adviser or consultant; and

WHEREAS, an investment adviser representative includes an individual who has a place of business in this State and is employed by or associated with a federal covered adviser and who

(1)   makes any recommendations or otherwise renders investment advice to clients;

(2)   manages accounts or portfolios of clients;

(3)   determines which recommendation or investment advice should be given with respect to a particular client account; or

(4)   holds out as an investment adviser; and

WHEREAS, Section 11-401 of the Securities Act makes it unlawful for any person to transact business in this State as an investment adviser or investment adviser representative unless the person is registered as an investment adviser or investment adviser representative and certain exceptions are not applicable; and

WHEREAS, the exceptions to the requirement that an investment adviser or investment adviser representative be registered are not applicable in this matter; and

WHEREAS, JK & A acted as an investment adviser and Karsner acted as an investment adviser representative by managing client portfolios, making recommendations and providing investment advice with regard to those portfolios and holding out as an investment adviser or investment adviser representative; and

WHEREAS, JK & A and Karsner have never been registered in this State as an investment adviser or investment adviser representative,

NOW, THEREFORE, IT IS HEREBY ORDERED that JK & A and Karsner show cause

18

why a final order should not be entered that orders them to cease and desist from engaging in

activities in violation of the Securities Act including Section 11-401, assesses a statutory penalty

of up to $5,000 per violation, permanently bars them from the securities and investment advisory

business in Maryland for or on behalf of others, or from acting as principal or consultant in any

entity so engaged, and orders any other sanction or combination of sanctions as permitted under

Section 11-701.1.

### COUNT II
**(Fraud in Connection with the Offer or Sale of Securities, Section 11-301)**
**(Karsner)**

WHEREAS, Section 11-301 of the Securities Act makes it unlawful for any person, in

connection with the offer, sale or purchase of any security, directly or indirectly to:

(1)    employ any device, scheme or artifice to defraud;

(2)    make any untrue statement of a material fact or omit to
state a material fact necessary in order to make the
statements made, in light of the circumstances under which
they were made, not misleading; or

(3)    engage in any act, practice or course of business which operates or would
operate as a fraud or deceit on any person; and

WHEREAS, Karsner omitted to state material facts, including but not limited to the

following facts related to the sale of mutual funds:

(1)    That mutual funds he recommended to clients were risky;

(2)    That mutual funds he recommended to clients were unsuitable in light of the
clients' investment objectives and risk tolerance; and

(3)    That clients may incur various sales charges; and

(4)    The basis for commissions he earned on the sale of mutual funds; and

WHEREAS, Karsner made material misrepresentations, including but not limited to the

19

following related to the sale of mutual funds:

    (1)    That clients could live off their retirement funds until they died and could earn a guaranteed 12% return on variable annuities, 7% return on fixed annuities and 4.5% return in a money market account;

    (2)    That clients would pay no front or back end load on the purchase or sale of mutual funds; and

    (3)    That clients do not pay his fees; and

WHEREAS, Karsner engaged in an act, practice or course of business which operates or operated as a fraud or deceit on his clients, including but not limited to:

    (1)    Transferring clients from Hancock to Legacy without their authorization;

    (2)    Switching clients from one portfolio of mutual funds to another portfolio in order to maintain control over the client's account after he moved to Legacy;

    (3)    Switching clients from one portfolio of mutual funds to another riskier portfolio;

    (4)    Completing multiple NAFs for clients without explaining to them the issues and changing their investment objectives and risk tolerance without adequate disclosure;

    (5)    Working on Legacy securities matters with a person who was not registered through Legacy; and

    (6)    Paying clients for costs they have incurred, including sales fees and commissions, unanticipated taxes and investment principal for unauthorized transactions,

NOW, THEREFORE, IT IS HEREBY ORDERED that Karsner show cause why a final order should not be entered that orders him to cease and desist from engaging in activities in violation of the Securities Act including Section 11-301, assesses a statutory penalty of up to $5,000 per violation, permanently bars him from the securities and investment advisory business in Maryland for or on behalf of others, or from acting as principal or consultant in any entity so engaged, and orders any other sanction or combination of sanctions as permitted under Section

20

11-701.1.

## COUNT III
### (Fraud in Investment Advisory Activities; Section 11-302)
### (Joe Karsner & Associates and Karsner)

WHEREAS, Section 11-302 of the Securities Act makes it unlawful for any person who

receives, directly or indirectly, any consideration from another person for advising the other

person as to the value of securities or their purchase or sale, or for acting as an investment

adviser or representative under Section 11-101(h) or (i) of the Securities Act to:

(1)     employ any device, scheme or artifice to defraud;

(2)     engage in any act, practice or course of business which operates or
        would operate as a fraud or deceit on the other person;

(3)     engage in dishonest or unethical practices as the Commissioner may define
        by rule; or

(4)     knowingly make any untrue statement of a material fact or omit to
        state a material fact necessary in order to make the statements
        made, in light of the circumstances under which they were made,
        not misleading; and

WHEREAS,  the Securities Commissioner has defined by Rule .03B of the Code of

Maryland Regulations .02.02.05 ("COMAR") dishonest or unethical practices to include:

(1)     recommending to a client to whom investment services are provided the purchase,
        sale or exchange of any security without reasonable grounds to believe that the
        recommendation is suitable for the client on the basis of information furnished by
        the client after reasonable inquiry concerning the client's investment objectives,
        financial situation and needs, and any other information known or acquired by the
        investment adviser after reasonable examination of the client's financial records;

(2)     placing an order to purchase or sell a security for the account of a client without
        having obtained, in advance, the authority to do so;

(3)     lending money to a client;

(4)     misrepresenting to an advisory client or prospective advisory client the

21

qualifications of the investment adviser, or an investment adviser representative employed by or associated with the investment adviser, or misrepresenting the nature of the advisory services being offered or fees to be charged for that service or omitting to state a material fact necessary to make the statements made regarding qualifications, services, or fees, in light of the circumstances under which they are made, not misleading; or

(5)     guaranteeing a client that a certain or specific result will be achieved, for example, gain or no loss, as a result of the advice that will be rendered; and

WHEREAS, JK & A and Karsner engaged in dishonest or unethical practices, employed a device, scheme or artifice to defraud and engaged in an act, practice or course of business which operates or would operate as a fraud or deceit on the other person by, among other matters:

(1)     switching clients from one portfolio of mutual funds to another more risky portfolio and making investment recommendations to clients that were unsuitable;

(2)     completing multiple NAFs for clients without explaining to them the issues and changing their investment objectives and risk tolerance without adequate disclosure;

(3)     carrying out transactions without obtaining prior client authority;

(4)     guaranteeing clients a specific result and promising clients that they could live off their investment income for the rest of their lives; and

(5)     paying clients for costs they incurred, including sales fees and commissions, unanticipated taxes and investment principal for unauthorized transactions; and

WHEREAS, JK & A and Karsner omitted to state material facts, including but not limited to the riskiness of the mutual funds that he recommended; and

WHEREAS, JK & A and Karsner made untrue statements of a material fact, including but not limited to the promises that clients could live off their retirement funds until they died and could earn a guaranteed 12% return on variable annuities, 7% return on fixed annuities and 4.5% return in a money market account; and

WHEREAS, Karsner breached his fiduciary duty as an investment adviser representative

22

to act primarily for the benefit of his clients,

NOW, THEREFORE, IT IS HEREBY ORDERED that JK & A and Karsner show cause why a final order should not be entered that orders them to cease and desist from engaging in activities in violation of the Securities Act including Section 11-302, assesses a statutory penalty of up to $5,000 per violation, permanently bars respondents from the securities and investment advisory business in Maryland for or on behalf of others, or from acting as principal or consultant in any entity so engaged, and orders any other sanction or combination of sanctions as permitted under Section 11-701.1.

## COUNT IV
### (Revocation of Registration – Section 11-412)
### (Respondents Karsner and Legacy)

WHEREAS, Section 11-412 of the Securities Act provides that the Commissioner by order may deny, suspend, or revoke any registration if the Commissioner finds that the order is in the public interest and that the applicant or registrant or, in the case of a broker-dealer or investment adviser, any partner, officer, or director, any person occupying a similar status or performing similar functions, or any person directly or indirectly controlling the broker-dealer or investment adviser,

| | |
|---|---|
| (a)(2) | has willfully violated or willfully failed to comply with any provisions of this title, a predecessor act, or any rule or order under this title or a predecessor act; |
| (a)(7) | has engaged in dishonest or unethical practices in the securities or investment advisory or any other financial services business; |
| (a)(9) | is not qualified on the basis of factors such as training, experience, and knowledge of the securities or investment advisory or any other financial services business; or |
| (a)(10) | has failed reasonably to supervise the broker-dealer's agents; |

23

WHEREAS, Karsner willfully violated or willfully failed to comply with sections 11-301, 11-302, and 11-401 of the Securities Act as detailed in this Order;

WHEREAS, respondents engaged in dishonest and unethical practices, as set forth in this Order;

WHEREAS, Karsner is not qualified on the basis of factors such as training, experience, and knowledge of the investment advisory business; and

WHEREAS, Legacy did not maintain a supervisory system reasonably designed to supervise its representatives and failed to implement its procedures so as reasonably to supervise Karsner,

NOW, THEREFORE, IT IS HEREBY ORDERED that respondents Karsner and Legacy show cause why a final order should not be entered that revokes their broker-dealer and broker-dealer agent registrations and orders any other sanction or combination of sanctions against them as permitted under Sections 11-412 and 11-701.1 of the Securities Act.

## REQUIREMENT OF ANSWER AND NOTICE OF OPPORTUNITY FOR HEARING

_____IT IS FURTHER **ORDERED**, pursuant to Section 11-701.1 of the Securities Act and COMAR 02.02.06.06, that each respondent shall file with the Securities Commissioner a written Answer to this Order within fifteen days of service of the Order. The Answer shall admit or deny each factual allegation in the Order and shall set forth affirmative defenses, if any. A respondent without knowledge or information sufficient to form a belief as to the truth of an allegation shall so state.

The Answer also shall indicate whether the respondent requests a hearing. A hearing to

determine whether the Order should be vacated, modified, or entered as final will be scheduled in this matter if one is requested in writing. Failure by any respondent to file a request for a hearing in this matter within fifteen days of receipt of the Order shall be deemed a waiver by that respondent of the right to such a hearing.

Failure to file an Answer, including a request for a hearing, shall result in entry of a final order:

(a)    directing that respondent permanently cease and desist from violation of the Securities Act; and

(b)    imposing a monetary penalty of up to $5,000 per violation of the Securities Act; and

(c)    barring that respondent from engaging in the securities or investment advisory business in Maryland for or on behalf of others, or from acting as principal or consultant in any entity so engaged; and

(d)    revoking that respondent's securities and investment advisory registrations.

**SO ORDERED:**

DATED:   March 19, 2007                      _____/s/_____  _____
                                             Melanie Senter Lubin
                                             Securities Commissioner

25

ADMINISTRATIVE PROCEEDING
BEFORE THE
MARYLAND SECURITIES COMMISSIONER

| | | |
|---|---|---|
| IN THE MATTER OF: | * | |
| JOSEPH R. KARSNER, IV, | * | File No. 2002-0391 |
| JOE KARSNER & ASSOCIATES, LLC | * | |
| and | * | |
| LEGACY FINANCIAL SERVICES, INC., | * | |
| Respondents. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**AFFIDAVIT OF COMPLIANCE WITH SECTION 11-802(b)**

I hereby certify that, in accordance with section 11-802(b) of the Maryland Securities Act, Title 11, Corporations and Associations Article of the Annotated Code of Maryland, I have effected service upon the respondents, Joseph R. Karsner, IV, Joe Karsner & Associates, LLC and Legacy Financial Services, Inc. by serving the foregoing Order To Show Cause upon the Securities Commissioner, and then by sending a copy of the Order and notice of service by certified mail, return-receipt-requested, to the respondents at their last-known address.

Dated: March 19, 2007                          /s/
                                         Lucy A. Cardwell

Subscribed and sworn to before me
this 19th day of March, 2007

            /s/
Notary Public
My Commission expires: _____

26

## IN  THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

| | | |
|---|---|---|
| **JOSEPH R. KARSNER, IV,** | * | |
| **Petitioner**, | * | NASD Case No.: 04-07347 |
| | | Civil Action No.: 1:07-cv-00334-RJL |
| **v.** | * | |
| **PAMELA LOTHIAN  and** | * | |
| **THE NATIONAL ASSOCIATION OF** | | |
| **SECURITIES DEALERS,** | * | |
| **Respondents**. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### ORDER DENYING PETITION
### TO CONFIRM ARBITRATION AWARD FOR
### PURPOSES OF THE EXPUNGEMENT OF RECORDS

Upon consideration of the motion filed by the Maryland Securities Commissioner in partial opposition to the Petition to Confirm Arbitration Award before the Court, the Court being fully apprised in the premises and good cause for granting that Motion having been shown, it is this __ ___ day of _____ , 2007,

ORDERED, that the motion be and hereby is granted; and it is further

ORDERED, that the petition for confirmation of expungement of records be and hereby is DENIED.

_____

Judge of the U.S. District Court
for the District of Columbia

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| **JOSEPH R. KARSNER, IV,** | * | |
| **Petitioner**, | * | |
| | | NASD Case No.: 04-07347 |
| **v.** | * | Civil Action No.: 1:07-cv-00334-RJL |
| **PAMELA LOTHIAN and** | * | |
| **THE NATIONAL ASSOCIATION OF SECURITIES DEALERS,** | * | |
| **Respondents**. | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MARYLAND SECURITIES COMMISSIONER'S
MOTION FOR A CHANGE IN VENUE**

The Maryland Securities Commissioner, Melanie Senter Lubin, by and through undersigned counsel moves pursuant to Fed. R. Civ. P. 12(b)(3) for a change in venue.  In support of this request, the Securities Commissioner states:

1.      On February 12, 2007, Petitioner filed this proceeding to confirm an arbitration award entered on about January 23, 2006, naming as Respondents the complainant in the arbitration proceeding and the National Association of Securities Dealers ("NASD").

2.      All of the parties to this proceeding are based in Maryland or conducted business in Maryland.  The activities that are the subject of the arbitration complaint took place in Maryland where Petitioner Joseph R. Karsner, IV ("Karsner") had a place of business and was registered as a securities agent.

3.      The arbitration complainant is a Maryland resident.

4.    Respondent NASD has a principal place of business in Maryland.

5.    The Securities Commissioner is based in Maryland and is seeking to protect the integrity of Maryland public records. The records that Petitioner seeks to expunge are required by Maryland law to be maintained in order to facilitate exercise of the Securities Commissioner's responsibilities to protect the investing public. Defense of this matter here would require a Maryland public officer to travel to a foreign jurisdiction in order to prevent expungement of Maryland public records and interfere with her ability to perform her statutory duties.

6.    In addition to this proceeding, Karsner has filed two Petitions to Confirm Arbitration Award, each seeking expungement of Petitioner's arbitration records maintained on the Central Registration Depository. *See Joseph R. Karsner v. Lawrence Simpson et al.*, Civil Action No.: 1:07-cv-00378-RMU, and *Joseph R. Karsner v. John Catalano,* NASD 04-05933, filed on about March 15, 2007. The complainant in each of those cases is a Maryland resident.

7.    Karsner may file other similar petitions seeking to expunge disciplinary records maintained on the Central Registration Depository. Attached to the Securities Commissioner's Opposition to the Petition is an affidavit of Investigator Frank Barlow of this office. That affidavit shows that most of the complainants who have filed arbitration complaints against Karsner are Maryland residents. None is a resident of the District of Columbia.

8.    This case is more properly heard in a Maryland court where the issue arose, the

parties are located and the documents at issue are public records.

WHEREFORE, the Securities Commissioner requests that the Court grant this motion.  A proposed Order is attached.

Respectfully submitted,

DOUGLAS F. GANSLER
ATTORNEY GENERAL of MARYLAND


_____
Kelvin M. Blake
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-7783


_____
Lucy A. Cardwell
Assistant Attorney General
Division of Securities
200 St. Paul Place, 25th Floor
Baltimore, MD 21202
410/576-6337

March 20, 2007

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing motion and proposed order by U.S. mail, first-class postage prepaid, to:

George S. Mahaffey, Jr.
Goodell, DeVries, Leech & Dann, LLP
One South St., 20th Floor
Baltimore, MD 21202
*Counsel for Petitioner Joseph Karsner*

- 3 -

Karen Weinstein
NASD Registration and Disclosure Department
2nd Floor
9509 Key West Ave.
Rockville, MD 20850
*Counsel for NASD, Respondent*

William B. Young, Jr.
Colling, Gilbert, Wright & Carter
2301 Maitland Center Parkway, Suite 240
Maitland, FL 32751
*Counsel for Lawrence Simpson, Respondent*

_____
Lucy A. Cardwell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| **JOSEPH R. KARSNER, IV,** | * | |
| **Petitioner**, | * | |
| | | NASD Case No.: 04-07347 |
| **v.** | * | Civil Action No.: 1:07-cv-00334-RJL |
| **PAMELA LOTHIAN and** | * | |
| **THE NATIONAL ASSOCIATION OF** | | |
| **SECURITIES DEALERS,** | * | |
| **Respondents**. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**ORDER**

Upon consideration of the Maryland Securities Commissioner's Motion for a Change in

Venue, the Court being fully apprised in the premises and good cause for granting that Motion

having been shown, it is this _____ day of _____ , 2007,

ORDERED, that the motion be and hereby is granted; and it is further

ORDERED, that this proceeding be transferred to the United States District Court for the

District of Maryland for further action.

_____
Judge of the U.S. District Court
for the District of Columbia