IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH R. KARSNER, IV, | |
| Petitioner, | |
| v. | Civil Action No.:    1:07-CV-00334-RJL |
| PAMELA LOTHIAN, *et al.*, | NASD Case No.:    04-07347 |
| Respondents. | |

**PETITIONER'S OPPOSITION TO**
**MARYLAND SECURITY COMMISSIONER'S MOTION TO INTERVENE**

Petitioner Joseph R. Karsner, IV ("Petitioner" or "Karsner"), by and through his undersigned attorneys, hereby submits this memorandum in Opposition to the Maryland Security Commissioner's Motion to Intervene.

**I.    SUMMARY OF ARGUMENT**

The Maryland Commissioner's Motion must be denied first, because it is futile, as her proposed Motion in Opposition to Confirmation of the Arbitration Award (the "Proposed Opposition") is barred by the statute of limitations and second, because it does not adequately allege any authorized ground for judicial review of an arbitration award.  The Motion is also due to be denied because it fails to meet the timeliness requirement for intervention.

**II.    BACKGROUND**

Petitioner and Respondent Pamela Lothian ("Lothian") were involved in a private arbitration before the National Association of Securities Dealers ("NASD") in

the District of Columbia.  The Petitioner and Lothian were able to settle their dispute and the parties submitted a Stipulated Award, which included an expungement provision, to the arbitration panel overseeing that matter.  The arbitration panel reviewed the relevant documentary evidence, found that the claims were clearly erroneous, and approved the Stipulated Award (the "Arbitration Award").  Thereafter, Karsner filed his Petition to Confirm Arbitration Award (the "Petition") with this Court.  Respondent NASD filed a response stating that it did not oppose the confirmation of the Arbitration Award.  Respondent Lothian, who consented to the expungement award, did not file any response.

After the deadline for responding to the Petition[1] passed with no opposition being noted by either Lothian or the NASD, the Maryland Securities Commissioner (the "Maryland Commissioner") filed a motion seeking to intervene (the "Motion") for the purpose of opposing confirmation of the Arbitration Award.  The Maryland Commissioner acknowledges in her Memorandum in Support of her Motion to Intervene that she was aware, several days prior to the deadline for responding to the Petition, that the NASD determined it would not oppose the Petition.  *See* Mem. in Support of Mot. to Intervene at 6.  The Maryland Commissioner, however, does not explain why she allowed that deadline to pass before she filed her Motion to Intervene and her Opposition to Confirmation of the Arbitration Award.

---

[1]     The deadline was extended until March 19, 2007 to accommodate the NASD.

## III.   THE MOTION TO INTERVENE MUST BE DENIED

The Maryland Commissioner has moved to intervene pursuant to both subsections (a) and (b) of Rule 24 of the Federal Rules of Civil Procedure.  Rule 24 (a) provides for interventions as of right and Rule 24 (b) provides for permissive interventions.  Under either subsection of Rule 24, the Motion fails as it is futile and untimely.

### A.   Standard of Determination.

Rule 24 of the Federal Rules of Civil Procedure ("Rule 24") provides, in pertinent part:

> (a) Intervention of Right.  Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) Permissive Intervention.  Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24 (a) & (b).

Pursuant to Rule 24 (a), the right to intervene depends upon (1) a timely motion, (2) an interest in property that is the subject of the action,[2] (3) an affect on the applicant's ability to protect that interest, and (4) inadequate representation of the applicant's interest by the existing parties.  *See Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55, 65-66 (D.D.C. 2004) (denying motion to intervene).  Additionally, "an applicant for intervention as of right must demonstrate that it has standing by showing injury-in-fact, causation, and redressability."  *Id.* at 66.

The courts enjoy "considerable discretion" in deciding a motion for permissive intervention under Rule 24 (b).  *Id.* (citing *Equal Employment Opportunity Comm'n v. National Children's Ctr., Inc.,* 146 F.3d 1042, 1046, 1048 (D.C. Cir. 1998) for the proposition that a court "'may deny a motion for permissive intervention even if the movant established an independent jurisdictional basis, submitted a timely motion, and advanced a claim or defense that shares a common question with the main action,' subject to abuse of discretion").  The court may exercise its discretion to grant the motion to intervene, however, only if the applicant "present[s] '(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action'" and demonstrates that intervention will not delay or prejudice the rights of the original parties.  *Environmental Defense*, 329 F. Supp. 2d at 66 (quoting *National Children's Ctr.*, 146 F.3d at 1046).

---

[2]    Although the Maryland Commissioner makes the bare assertion that she has a property interest in records maintained by the NASD which the Arbitration Award orders to be expunged, she has cited no legal authority for that assertion.

Moreover, mootness may bar an application to intervene as of right or for permissive intervention. *See, e.g., Kifafi v. Hilton Hotel Retirement Plan*, Civ. No. 98-1517, 2004 U.S. Dist. LEXIS 28928, at *24 (D.D.C. Sept. 27, 2004) (denying motion to intervene where purpose of intervention could not be achieved);[3] 59 Am. Jur. 2d, *Parties* § 229 ("Mootness may bar an application to intervene."). If the purpose for which the intervention is sought is impossible, the intervention should be denied as futile. *See Kifafi*, 2004 U.S. Dist. LEXIS 28928 at *23-24.

**B.    The Motion to Intervene is Futile**.

Courts regularly deny motions to intervene when the intervention would be pointless.[4] For instance, in *Kifafi, supra*, this Court denied a motion to intervene, explaining that the impossibility of the purpose for which intervention was sought was fatal to the motion to intervene. *Kifafi*, 2004 U.S. Dist. LEXIS 28928, at *23. There, the

---

[3]    A copy of this case is attached hereto as **Exhibit 1**.

[4]    *See Crowley Maritime Corp. v. Panama Canal Comm'n*, 849 F.2d 951 (5th Cir. 1988) (affirming denial of intervention where claims sought to be asserted by intervenor were barred by the statute of limitations); *Rhode Island Fed. of Teachers, AFL-CIO v. Norberg*, 630 F.2d 850 (1st Cir. 1980) (affirming denial of motion to intervene and explaining that intervenors did not plead a colorable defense to the challenged statute; stating that the defense was "quite infirm" and "insufficient to support intervention" and that it was a requirement that an intervenor's claim or defense have some legal merit); *State Farm Mut. Automobile Ins. Co. v. United States*, Civ. No. 02-1799, 2003 U.S. Dist. LEXIS 6013 (E.D. La. April 10, 2003) (denying motion to intervene as futile where only claims asserted were barred by statute of limitations), a copy of which is attached hereto as **Exhibit 2**; *American White Cross, Inc. v. Orentzel*, 269 B.R. 555 (D. Del. 2001) (affirming bankruptcy court's denial of motion to intervene, which sought permissive intervention and intervention as of right, as futile where the intervenor's claims were barred by claim preclusion); 7C Charles Alan Wright, *et al., Federal Practice & Procedure* § 1914 at 416 (2d ed. 1986) (stating that the intervenor's "proposed pleading must state a good claim for relief or a good defense"); *see also Ceribelli v. Elghanayan*, No. 91 Civ. 3337, 1994 WL 529853 (S.D.N.Y. 1994) (explaining that where intervenors' claims were barred by statute of limitations, legal futility provided an alternative basis for refusing to allow intervention in RICO action that was timely filed by original plaintiffs), a copy of which is attached hereto as **Exhibit 3**; *cf. Lefkovitz v. Wagner*, 395 F.3d 773 (7th Cir. 2005) (holding that whether intervenor should have been allowed to intervene in proceeding to confirm arbitration award was moot issue, as intervenor could not gain anything by intervening in suit).

explaining that the impossibility of the purpose for which intervention was sought was fatal to the motion to intervene. *Kifafi*, 2004 U.S. Dist. LEXIS 28928, at *23. There, the applicants sought to intervene as named representatives in order to ensure the viability of the class claim after the court found that the named plaintiff was not an appropriate class representative. *Id.* at *3-4, *23. This Court determined that because the intervenors had not exhausted their administrative remedies for their claims, they could not adequately represent the proposed class. *Id.* at *5, *23. The Court then concluded that as "such representation is impossible due to [i]ntervenors' nonexhaustion[,] . . . granting the Motion to Intervene would be a futile exercise . . . ." *Id.* at *23. Accordingly, the Court denied the motion to intervene as futile. *Id.*

Here, the Maryland Commissioner's Proposed Opposition does not assert a claim or defense upon which relief can be granted and, thus, her Motion to Intervene should be denied. The Maryland Commissioner filed her Motion to intervene in order to seek to vacateur of that portion of the Arbitration Award that provides for expungement of the customer complaint raised in the arbitration from Karsner's Central Registration Depository records (the "CRD Records"). *See* Mem. in Support of Maryland Commissioner's Mot. in Opp'n to Confirmation of Arbitration Award for Purpose of Expungement at 10. The intervention is futile and should be denied, however, because the relevant statute of limitations bars the Maryland Commissioner's attempt to vacate or modify that part of the Arbitration Award that provides for

expungement and because she has failed to assert any recognized ground for vacating or modifying an arbitration award.[5]

### 1.    The Proposed Opposition is barred by the statute of limitations.

The Maryland Commissioner's Motion should be denied as futile, as her Proposed Opposition asserts new claims that are barred by the statute of limitations contained in the Federal Arbitration Act (the "FAA").[6]  The FAA, provides, in relevant part:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney **within three months** after the award is filed or delivered.

28 U.S.C. § 12 (emphasis added).  The three month period provided for in section 12 of the FAA operates as a limitations period.  *See Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1393 (D.C. Cir. 1995) (characterizing the 3 month time period as a "limitation period"); *Sargent*, *supra*, 280 U.S. App. D.C. 7, 882 F.2d at 531 (characterizing 9 U.S.C. section 12 as providing a "special three-months statute of limitations" for vacateur of arbitration award); *MJ Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 582 (S.D.N.Y. 2003) (holding that failure of respondent to seek to modify or vacate the arbitration award within the three-month limitation period provided by section 12 of the FAA compelled the court to confirm the arbitration award; stating that "there is no exception to this three month limitation period").

---

[5]    In the unlikely event that this Court grants the Maryland Commissioner's Motion to Intervene, Petitioner will file a response to the Maryland Commissioner's Proposed Opposition that will more fully addressed the futility of the arguments raised therein by the Maryland Commissioner.

Generally, an intervenor's claims are barred by the applicable statute of limitations if the motion to intervene is not filed within the statutory period; this is true even though the suit in which the intervention is sought was timely filed. *See Crowley Maritime Corp., supra*, 849 F.2d 951; *State Farm Mut. Automobile Ins. Co., supra*, 2003 U.S. Dist. LEXIS 6013; *Ceribelli, supra*, 1994 WL 529853. This is because Rule 24 "does not authorize relation-back." *Ceribelli*, 1994 WL 529853, at *2. "There is nothing in the purpose of the rule which would countenance a situation in which claims, otherwise time-barred, could be resuscitated simply by virtue of the existence of another timely filed lawsuit with common questions of law or fact. Such a result would serve only to frustrate the salutary purpose [of the statute of limitations] to set stale claims at rest." *Id.* (alteration in original) (internal quotation omitted).

The court in *Ceribelli* further explained that its conclusion, that the statute of limitations bars an intervention that is not filed within the statutory period, was compelled by the Supreme Court's decisions in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). The *Ceribelli* court observed that in *American Pipe* the Supreme Court held that the intervenors' motions were not barred by the statute of limitations solely because the motions to intervene were made three days before the limitations period expired. *See Ceribelli*, 1994 WL 529853, at *2. The *Ceribelli* court also noted that in *United Airlines*, the Supreme Court reasoned that a putative class member's motion to intervene might have

---

[6]     The FAA is applicable to the instant action. *See, e.g., Sargent v. Paine Webber Jackson & Curtis, Inc.,* 280 U.S. App. D.C. 7, 882 F.2d 529, 531 (D.C. Cir. 1989) (applying FAA to claims arising out of arbitration between brokerage firm and investor).

been time-barred if the proposed intervenor had sought to litigate the merits of the claim, but because she sought only to appeal the denial of class certification, her claim was not time-barred. *Ceribelli*, 1994 WL 529853 at *2. The *Ceribelli* court explained that "[i]mplicit in the [Supreme] Court's rulings is the premise that a motion to intervene is *not* permitted if made after the limitations period had expired, except under the limited circumstances of a putative class member seeking to appeal the denial of class certification." *Id.* at *3.

Similarly, in *Crowley Maritime Corp., supra* n.4, the Fifth Circuit affirmed the denial of a motion to intervene as the claims sought to be asserted by the intervenor were barred by the statute of limitations. There, the intervenor was a seaman who was injured while working on a barge in a mooring operation outside the Panama Canal locks. *See* 849 F.2d at 952. The seaman's employer and the operator of the barge settled with the seaman and filed a timely claim with the Panama Canal Commission (the "Commission") seeking reimbursement for the settlement amount. *Id.* The relevant federal statutes provided that a claimant could file suit against the Commission within one year "'after the date on which the Commission mails to the claimant written notification of the Commission's final determination with respect to the claim, or within one year after December 23, 1985, whichever is later.'" *Id.* (quoting 22 U.S.C. § 3776 (1988)). The seaman did not file his motion to intervene until March 24, 1987 and, accordingly, the Fifth Circuit affirmed the denial of intervention, reasoning that the claims sought to be asserted by the intervenor were time barred. *Id.*

These cases clearly demonstrate that the motion to intervene must be filed within the statutory period, or it is time-barred.  Here, the Maryland Commissioner was aware of Lothian's complaint and, in fact, undertook her own investigation of Petitioner.  The Maryland Commissioner was monitoring the CRD Records and the proceedings on Lothian's claim and was aware of the Arbitration Award and its contents for some time, but she did not to seek to vacate or modify the Arbitration Award for more than one year after it was issued—well outside the three-month limitations period.  She cannot now use intervention as a tactical device to escape the consequences of her prior inaction and breathe life into a claim that is barred by the statute of limitations.  *See Ceribelli*, 1994 WL 529853, at *1.

As the three month statute of limitations contained in the FAA bars the Maryland Commissioner's attempt to vacate or modify the Arbitration Award's expungement provision, her request to intervene for that purpose should be denied as legally futile.  For this same reason, the motion to intervene must be denied as it fails to meet the timeliness requirements of Rule 24 and thus, for this further reason, the Motion must be denied.

> **2.     The Proposed Opposition fails to assert any recognized basis for judicial review of an arbitration award.**

Judicial review of an arbitration award is limited to consideration of: the reasons enumerated in the FAA; whether the award is in manifest disregard of the law; and whether the award is contrary to some explicit and dominant public policy.  *See Sapiro v. Verisign*, 310 F. Supp. 2d 208, 215 (D.D.C. 2004).  In turn, section 10 of the FAA

provides that an arbitration award may be vacated if the award was procured by fraud, corruption, or undue means, if the arbitrators were corrupt or biased, if the arbitrators were guilty of misconduct, or if the arbitrators exceeded their powers. 9 U.S.C. § 10 (a). Section 11 of the FAA provides that an arbitration award may be modified if there was a material miscalculation or mistake in description in the award, if there was an award on a matter not submitted to the arbitrators, or if the award is imperfect in form.  9 U.S.C. § 11 (a-c).

In her Proposed Opposition, the Maryland Commissioner simply does not allege any of the recognized grounds for judicial review of a petition to confirm an arbitration award or for vacating or modifying an arbitration award.  She does not allege, and cannot allege, that the arbitration panel acted in manifest disregard for the law.  She does not allege, and cannot allege, that the Arbitration Award was procured by fraud. She does not allege, and cannot allege, that the arbitration panel was corrupt or biased or that the panel was guilty of misconduct.  She does not allege, and cannot allege, that the arbitration panel exceeded its powers or made an award on a matter not submitted to it.  She does not allege, and cannot allege, that there was a material mistake in the calculation or description in the award or that the award was imperfect in form.

The sole argument raised in Maryland Commissioner's Proposed Opposition is that confirmation of the arbitration award would somehow interfere with her responsibilities.  *See* Mot. in Opp'n to Confirmation of Arbitration Award, ¶ 6.  There is no merit to the Maryland Commissioner's suggestion.  Expungement of CRD records simply is not contrary to public policy.  As the Maryland Commissioner recognizes in

her own filings, expungement serves to "protect the professional from the specter of a wrongful allegation." *See* Maryland Commissioner's Mem. in Support of Opp'n to Confirmation of Arbitration Award, at 5. Thus, expungement is not contrary to any explicit or dominant public policy. This is especially true in the case at bar, as the arbitration panel reviewed documents relevant to Lothian's claims and affirmatively determined that the claims were clearly erroneous.[7]

Moreover, expungement of the CRD Records could in no way interfere with the Maryland Commissioner's duties. The Maryland Commissioner is obviously aware of the information in those records and expungement of the records will not impede her ability to develop facts related to purported wrongful conduct by Petitioner. Further, to the extent the citizens of Maryland have an interest in the qualifications of Karsner, that interest is fully protected by the administrative action instituted against Karsner by the Maryland Commissioner. Thus, there is absolutely no merit to the Maryland Commissioner's vague assertion that her ability to fulfill her statutory responsibilities will somehow be impeded by the expungement of the CRD Records.[8]

The Maryland Commissioner has not advanced a valid reason for opposing the confirmation of the Arbitration Award. Thus, the Maryland Commissioner's motion to intervene is futile and should be denied, as she could not possibly succeed on the merits of her claim even if she were allowed to intervene.

---

[7]    *See* Stipulated Award at 3 (stating, "the Panel has made the following affirmative findings of fact: the claim, allegation or information is clearly erroneous and the [Petitioner] was not involved in the alleged investment-related sales practice violation").

## IV.    CONCLUSION

The Motion to Intervene is futile, as it is barred by the statute of limitations and fails to raise a recognized ground for judicial review of an arbitration award. The Motion to Intervene also fails to satisfy the timeliness requirement of Rule 24, as it makes claims that are barred by the applicable statute of limitations. Finally, the Maryland Commissioner cannot demonstrate that she meets the requirement of Rule 24 (a) that her claimed interest be affected by the action. Accordingly, Petitioner respectfully requests that this Court deny Maryland Securities Commissioner's Motion.

Respectfully submitted,


_____/s/_____
Richard J. Magid
Whiteford, Taylor & Preston
7 Saint Paul Street
Baltimore, Maryland 21202

and

George S. Mahaffey, Jr.
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

*Attorneys for Petitioner,*
*Joseph R. Karsner, IV*

*1728055*

---

[8]    For this same reason, the Maryland Commissioner cannot meet the requirement of Rule 24 (a) that this action would impede her ability to protect the interest she claims in the CRD Records. Her motion to intervene as of right should be denied for this further reason.

Service: **Get by LEXSEE®**
Citation: **2004 US Dist Lexis 28928**

*2004 U.S. Dist. LEXIS 28928, \**

JAMAL J. KIFAFI, et al., Plaintiffs, v. HILTON HOTEL RETIREMENT PLAN, et al., Defendants.

Civil Action No. 98-1517 (CKK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2004 U.S. Dist. LEXIS 28928

September 27, 2004, Decided
September 27, 2004, Filed

**SUBSEQUENT HISTORY:** Class certification granted by Kifafi v. Hilton Hotel Ret. Plan, 228 F.R.D. 382, 2005 U.S. Dist. LEXIS 5693 (D.D.C., 2005)

**PRIOR HISTORY:** Kifafi v. Hilton Hotels Retirement Plan, 2000 U.S. Dist. LEXIS 17967 (D.D.C., Dec. 7, 2000)

**CORE TERMS:** intervenors', intervene, exhaustion, counting, class representative, failure to exhaust, pension plan, futile, exhaustion requirement, years of service, statutory claim, review process, excused, retirement plan, administrative remedies, class certification, vesting, credited, class action, inappropriate, exhausted, futility, exhaust, case law, nonexhaustion, fiduciary, futility exception, failed to exhaust, notice, independent cause of action

**COUNSEL:** [*1]  For JAMAL J. KIFAFI, individually, and on behalf of all others similarly situated, Plaintiff: Stephen Robert Bruce, Washington, DC.

For HILTON HOTEL RETIREMENT PLAN, HILTON HOTELS CORPORATION, JAMES M. ANDERSON, members of the Hilton Hotels Retirement Plan Committee, MATTHEW J. HART, members of the Hilton Hotels Retirement Plan Committee, BARRON HILTON, DIETER HUCKESTEIN, members of the Hilton Hotels Retirement Plan Committee mem, SAM D. YOUNG, JR., members of the Hilton Hotels Retirement Plan Committee, Defendants: Robert N. Eccles, Karen M. Wahle, O'MELVENY & MYERS LLP, Washington, DC.

For EDNA OGBONNA, FANNY CANAR, EDNA OGBONNA, FANNY CANAR, MARC TOUSSAINT, Movant: Stephen Robert Bruce, Washington, DC.

**JUDGES:** COLLEEN KOLLAR-KOTELLY, United States District Judge.

**OPINION BY:** COLLEEN KOLLAR-KOTELLY

**OPINION: MEMORANDUM OPINION**

(September 27, 2004)

Presently before the Court is Intervenors' Motion to Intervene as Named Representatives in Support of Vesting Service Claim [147]. Three individuals, Edna Ogbonna, Fanny Canar and Marc Toussaint, have requested leave to intervene in Plaintiffs' suit, brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, [*2] *et seq.* Simultaneously, the Plaintiffs are seeking class certification on their service counting claims under Federal Rules of Civil Procedure 23(a) and 23(b)(2), which will be

addressed in a separate Memorandum Opinion and Order.

After reviewing this motion, the parties' briefing, n1 and the applicable law, the Court determines that the Motion to Intervene must be denied because the three individuals have failed to exhaust the internal administrative procedures for their claims, and as a result intervention would be inappropriate.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Court also provided the parties with an opportunity to file factual and legal updates in May 2004. Both Plaintiffs and Defendants did so, and the Court has considered these filings as well. See Docket Entries [160], [162].

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Mr. Kifafi, a former employee of the Hilton Hotels Corporation, brought this suit against the Hilton Hotels Retirement Plan and various other Hilton entities and executives (collectively "Hilton").  **[*3]**  Mr. Kifafi alleged that Hilton improperly calculated the retirement benefits to which he and other similarly situated Hilton employees are entitled. Mr. Kifafi originally raised two claims that he argued were appropriate for class certification under Federal Rule of Civil Procedure 23. In an Order issued on May 11, 1999, the Court certified a class of plaintiffs for the first claim, known as the "benefit accrual claim," with Mr. Kifafi as the named class representative. *Kifafi v. Hilton*, 189 F.R.D. 174, 176-78 (D.D.C. 1999) (order granting in part and denying in part motion for class certification). In that same Order, the Court declined to certify a class for Mr. Kifafi's second claim, known as the "service counting claim," finding that Mr. Kifafi was not an appropriate class representative. n2 *Id.* at 178-80.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The Court discussed this claim as having five subparts, for each of which Mr. Kifafi was an inappropriate class representative. The first subpart involved a question of whether Hilton had properly credited Mr. Kifafi for his years of service as a union employee for vesting purposes. *Kifafi*, 189 F.R.D. at 179. The Court found that Mr. Kifafi's union service credit was adjusted to reflect his union service as part of the claims appeal process prior to the filing of this lawsuit, and that consequently, Mr. Kifafi's union service claim was moot, and he could not serve as a class representative for this issue. *Id.* The Court subsequently indicated a willingness to revisit its finding that Mr. Kifafi's union service claim was moot if there was a basis for doing so. *See* Pls.' Reply at 7. Plaintiffs now present evidence that they argue indicates Mr. Kifafi was not fully credited with his years of union service, *id.*; Pls.' Mot. to Cert. at 32-33.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -  **[*4]**

Subsequently, Plaintiffs have attempted to cure the deficiencies in their earlier motion for class certification on their service counting claim. Towards this end, three individuals n3 have moved to intervene, "seeking to change their role in the litigation from absent class members to named representatives to ensure that all service-counting claims can be certified." Mot. to Intervene at 4-5.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 These three individuals state that they each qualify as members of the certified benefit accrual class.

Mot. to Intervene. at 4.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -


## II. DISCUSSION

The three proposed Intervenors, Ms. Ogbonna, Ms. Canar and Mr. Toussaint, state that they worked for Hilton for more than the five years required to earn vested rights to retirement benefits under Hilton's Retirement Plan. Mot. to Intervene at 1. They also state that they each worked in both union and non-union jobs during the course of their employment with Hilton, but that in calculating their years of service for purposes of vesting, Hilton only credited them with **[*5]** their years of "participation" in the plan during their non-union service. *Id.* They further state that they were not provided with any notice about their rights to benefits after they were no longer in Hilton's employ. *Id.* Without reaching the merits of these claims, the Court finds that the Intervenors are not proper named plaintiffs in this action because they have failed to exhaust the internal claims procedures available to them under the Hilton Retirement Plan. To adequately represent the proposed service counting class, the Intervenors must themselves have a proper service counting claim to pursue. In the absence of such a claim, the Court shall deny the Motion to Intervene.

Section 503 or ERISA, 29 U.S.C. 1133, requires companies to provide a claims procedure available following the denial of benefits to a plan participant. n4 Although ERISA "does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion." *Communications Workers of Am. v. AT&T*, 309 U.S. App. D.C. 170, 40 F.3d 426, 432 (D.C. Cir. 1994) (citations omitted). "It is well established that, barring **[*6]** exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under their pension plans must . . . exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Id.* at 431.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -


n4 29 U.S.C. 1133 states that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."


- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Intervenors' position, however, is that they should not be held to this exhaustion requirement for three reasons. n5 First, Intervenors argue that exhaustion is not required for so-called statutory ERISA claims, and that their claims should be categorized as statutory, thereby excusing their failure to exhaust the Retirement Plan's claim procedures. *See* Mot. to Intervene at 12-13; Pls.' Reply at 20-23. Second, Intervenors argue that their failure to exhaust **[*7]** is excused because Mr. Kifafi has exhausted the claim procedure. Mot. to Intervene at 13-14; Pls.' Reply at 23-25. Finally, Intervenors argue that their failure to exhaust is excused under the futility exception to the exhaustion requirement. Mot. to Intervene at 14-16; Pls.' Reply at 23.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -


n5 There is no dispute over the fact that Intervenors have not exhausted the Retirement Plan's internal claim procedures. The Court ordered the parties to file any necessary factual and legal updates by May 28, 2004 [159], and both parties did so. The Court's Order also required the parties to continue to file such

notices on an ongoing basis in the event that any further factual or legal developments occur. No further information has been filed with the Court, so the Court understands that there has been no change in Intervenors' status with respect to exhaustion of their claims.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## A. Exhaustion

### 1. Intervenors Claims are Not Statutory

Intervenors state that exhaustion is not required for statutory claims,  **[*8]**  citing several decisions from the judges on this District Court. *See* Mot. to Intervene at 13. Although Intervenors overstate their position, n6 there is legal support for their argument. Judge Stanley Harris noted in *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18 (D.D.C. 2000), that the circuits are divided on the question of whether the exhaustion requirement applies to statutory claims, and that the District of Columbia Circuit has not weighed in on this issue. *Id.* at 22. The Court in *Coleman* joined the reasoning of the other judges on this Court, as well as the Third and Seventh Circuits, holding that the requirement that a plaintiff exhaust ERISA claims "does not apply to claims asserting statutory violations." *Id.* at 23; *see also Greer v. Graphic Comm. Int'l Union Officers*, 941 F. Supp. 1 (D.D.C 1996); *Garvin v. American Ass'n of Retired Persons*, 1992 U.S. Dist. LEXIS 2013, 1992 WL 693382 (D.D.C. 1992); *Rauh v. Coyne*, 744 F. Supp. 1186 (D.D.C. 1990).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n6 Intervenors neglect to point out that there is a split among the circuits on this question.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*9]**

Although there is clear law, albeit not binding, supporting Intervenors argument that statutory claims are exempt from the well established exhaustion principle, the Court need not make a determination on that issue because it determines that Intervenors claims are not in fact statutory. In the Motion to Intervene, Intervenors make the conclusory statement that "[a] fiduciary's failure to count all years of service for vesting as required by ERISA is definitely a statutory issue," supported by only one case citation. *See* Mot. to Intervene at 13 (citing *Gauer v. Connors*, 953 F.2d 97 (4th Cir. 1991). Upon examination, *Gauer* simply does not stand for the proposition Intervenors suggest. *Gauer* involved an examination of whether pension plan trustees' interpretation of their plan was consistent with ERISA regulations, and required the Fourth Circuit to consider the proper interpretation of ERISA's statutory language. Nowhere does the *Gauer* court address the difference between a statutory and non-statutory claim, not does it clarify the question of whether a fiduciary's failure to count all years of service for purposes of vesting is a statutory claim. **[*10]**

Intervenors also cite to *Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc.*, 200 U.S. App. D.C. 219, 627 F.2d 272 (D.C. Cir. 1980), in support of their argument that Intervenors raise a statutory claim. n7 *See* Pls.' and Intervenors' Reply ("Reply") at 22. The Court is not persuaded by Intervenors' attempt to massage the case law into a shape that suits their purposes. In the course of its substantive discussion, *Air Line Pilots* distinguishes between different types of ERISA claims, describing one type as an allegation "that [an employer's] conduct violated the terms and conditions of the pension plan and in doing so gave the [employee] a claim under ERISA, and describing another type as alleging that a plan "conflicts with ERISA's statutory requirements. . . ."

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n7 They also cite *Air Line Pilots* for the proposition that exhaustion is not required for statutory claims.

Reply at 21. However, Plaintiffs and Intervenors misread this case, which dealt instead with the interaction of the ERISA statute and the Railway Labor Act, 45 U.S.C. §§ 151, et seq., and the question of whether the Railway Labor Act's compulsory arbitration requirements took precedence over ERISA's provisions allowing such suits to be brought in federal court. Intervenors' other case citations are similarly unpersuasive. For example, *Smith v. Conti*, 205 F.3d 597 (3d Cir. 2000), discussed whether the construction of a particular plan compliance with ERISA, and *Holt v. Winpisinger*, 258 U.S. App. D.C. 343, 811 F.2d 1532 (D.C. Cir. 1987), involved the question of whether an individual was an employee under the ERISA statute and common law principles of agency.



- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*11]**

Nothing in the case law cited by Intervenors indicates that they have raised claims that should be considered statutory. A statutory claim would be brought under an ERISA provision such as ERISA § 510, 29 U.S.C. § 1140, which provides an independent cause of action against employers who interfere with an employees ERISA rights. In the instant case, Intervenors do not argue that the Hilton Retirement Plan itself violates ERISA's mandates, or that ERISA provides an independent cause of action for Intervenors to pursue. Rather, Intervenors claim that the terms of the Hilton Plan were not properly applied to them. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 While it may be a violation of ERISA to improperly apply the terms of a plan to one of its participants, that does not in fact mean that any claim implicating an ERISA-governed retirement plan is in fact a statutory claim for exhaustion purposes.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Intervenors' proposed complaint, *see* Mot. to Intervene Attach. 1, adopts Plaintiffs' claims as presented in their First Amended **[*12]** Class Action Complaint, *see id.* Attach. 1, Ex. A. The service counting claim alleges that "Defendants have violated the [Hilton] Retirement Plan by not counting years of service in union employment in computing years of credited service." *Id.* Attach. 1, Ex. A at 16. By their own language, Intervenors (and Plaintiffs) are alleging that Defendants violated the terms of the Retirement Plan. As Defendants point out in their opposition brief, Intervenors' counsel reasserted this in open court on July 24, 2003. When asked by the Court whether counsel agreed "that the plan sets out a policy that they would get credit for [preparticipation service]," Intervenors' counsel replied: "Right. The plan would indicate they are getting credit for that, but as a systematic matter people were not getting credit before the year in which they became a participant in the plan." Defs.' Opp. at 33 n. 24. Intervenors are alleging that Hilton's conduct violated the terms and conditions of their pension plan, which in turn creates a claim under ERISA. This type of challenge to Hilton's conduct is not a statutory claim, and Intervenors' failure to exhaust cannot be excused on those grounds.

**[*13] 2. Futility Exception is Unavailable**

In the alternative, Intervenors argue that their nonexhaustion should be excused on the grounds that requiring Intervenors to fully exhaust Hilton's internal review procedures would be futile. *See* Mot. to Intervene at 14-16; Reply at 23. Relying on a Sixth Circuit case, Intervenors argue that exhaustion should not be required when systemic violations are alleged, and "resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." Reply at 23 (quoting *Fallick v. Nationwide*, 162 F.3d 410 (6th Cir. 1998)).

The District of Columbia Circuit has recognized that a discretionary exception to the exhaustion of administrative remedies requirement exists when exhaustion of a plan's review process would be futile. *See Communications Workers*, 40 F.3d at 432. However, the standard for a finding of futility is a high bar that Intervenors cannot clear. In order to excuse exhaustion on the basis of futility, the Court would have to find

"the certainty of an adverse decision," and that requiring Intervenors to exhaust the available process would be "clearly useless." *Id.* (citations **[*14]** omitted).

The Court cannot find that Intervenors' use of Hilton's internal claims procedures would be "clearly useless," or that an adverse result is a "foregone conclusion," *id. at 344*, because Hilton has indicated a willingness to reconsider its earlier denial of benefits. In its opposition, Hilton states that Intervenors are entitled to relief of the sort they seek via this lawsuit, and would in fact receive it through the internal claims procedure. n9 Defs.' Opp. at 36-7. Whether or not

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n9 Furthermore, Hilton has amended its retirement plan in several ways, and has undertaken a review of its records on its pension plan participants. *See* Defs.' Notice of Intervening Changes in Facts and Applicable Case Law [160] at 2-4.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Intervenors doubt the sincerity of Hilton's willingness to reconsider their claims, it is clear to the court that Intervenors may in fact find resolution through the available internal process. Intervenors argue that the number of similarly situated individuals indicates that exhaustion **[*15]** would be futile. Mot. to Intervene at 14; Reply at 23. However, this Circuit has not found this to be a persuasive argument. In *Communications Workers*, the Circuit Court overturned the District Court's finding that exhaustion was futile "because Plan administrators had consistently interpreted the Plan to deny . . . initial claims. . . ." *Communications Workers*, 40 F.3d at 432. The Court of Appeals found that, "because the Plan's final review authority . . . never had an opportunity to render a final determination on appellees claims, we fail to see any basis for finding that an unfavorable decision by that Committee was a foregone conclusion." *Id. at* 433. Finally, the Court notes the Circuit Court's explanation that "even if one were to concede that an unfavorable decision . . . was *highly likely*, that does not satisfy our strict futility standard requiring a *certainty* of an adverse decision." *Id.* (emphasis in original). In the instant case, there is simply nothing to suggest that Intervenors face such a certain adverse result, and consequently the futility exception to the exhaustion requirement is unavailable.

Intervenors lament **[*16]** the possibility that any attempt to intervene might be met with the same cold eye towards nonexhaustion. Mot. to Intervene at 19-20. Without making any determinations on that question, the Court notes that this argument is unavailing. If, as the Court has found, there is some possibility that a potential plaintiff would receive a favorable outcome through exhaustion of Hilton's internal claims procedures, then the purposes of the exhaustion are achieved; time and resources may be conserved by both the parties and the Court by requiring exhaustion. The fact that Intervenors might *prefer* to proceed directly to the litigation stage and pursue a class action does not change the Court's analysis.

## 3. Kifafi's Exhaustion Does Not Suffice

Intervenors' remaining argument is that they should not be required to exhaust their available administrative remedies because Mr. Kifafi has exhausted with respect to his service counting claims. *See* Mot. to Intervene at 13-14; Reply at 23-25. In support of their position, Intervenors cite to *Foster v. Gueory*, 211 U.S. App. D.C. 89, 655 F.2d 1319, (D.C. Cir. 1981), n10 in which the Circuit Court held that individual exhaustion was not required **[*17]** for plaintiffs in a Title VII class action. After an examination of the Court of Appeals' reasoning in *Foster*, the Court determines that the analysis is not applicable to the instant ERISA suit. In the absence of any law indicating that the same approach should be followed in the ERISA context, the Court finds that Kifafi's exhaustion does not excuse Intervenors own failure to do so.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 Intervenors also refer to _Cook v. Boorstin_, 246 U.S. App. D.C. 201, 763 F.2d 1462 (D.C. Cir. 1985), which reiterated the Court of Appeals' holding in _Foster_. Mot. to Intervene at 13-14

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In _Foster_, the Circuit Court stated that, although Title VII plaintiffs are generally required to file a timely discrimination charge with the Equal Employment Opportunity Commission ("EEOC") before bringing suit in federal court, individual plaintiffs in Title VII class action suits did not need to file a complaint with the EEOC if at least one member of the plaintiffs class had done so. The _Foster_ court indicated that the rationale had **[*18]** "been extended to situations where no class action had been certified, but where the court was nonetheless able to treat as a class a plaintiff who had satisfied the EEOC filing requirement and one or more plaintiffs who had not satisfied that requirement." _Id. at 1322_. In determining which Title VII actions fit within this approach, the Circuit Court stated that "the critical factor in determining whether an individual Title VII plaintiff must file an EEOC charge, or whether he may escape this requirement by joining with another plaintiff who has filed such a charge, is the similarity of the two plaintiffs' complaints." _Id._ The Court of Appeals noted that "if it was impossible for the EEOC to effectuate a settlement of the original plaintiffs' claims, there is no reason to believe that the EEOC would be successful in settling appellants' claims." _Id. at 1323_.

Intervenors provide no case law that would suggest that the rationale in _Foster_ has ever been applied to the ERISA context, and the Court has found no such application in this jurisdiction or elsewhere. The _Foster_ decision deals with the specific circumstances of discrimination suits under Title VII, cites **[*19]** almost exclusively to other Title VII decisions, and is not drafted in a manner so broad that the Court is persuaded that the rationale was intended to be applied outside the Title VII context. Defendants draw a distinction between the purposes of the available administrative remedies in the Title VII and ERISA contexts, and this distinction bolsters the Court's initial impression that _Foster_ and its Title VII progeny are not intended to apply in the ERISA arena.

Defendants note that under Title VII, the required filing of an EEOC charge serves the purposes of notice to defendants and narrowing of issues, but the EEOC "is not empowered to decide claims or award relief [and] the exhaustion requirement is satisfied by filing a charge with the EEOC even if the claim if never officially denied, and even if it is never investigated by the agency." Defs.' Opp. at 34-35. The review process under an ERISA-governed pension plan "is conducted internally by plan administrators with authority not only to investigate claims but also to grant relief where warranted." _Id._ at 35. While the exhaustion requirement under Title VII is satisfied simply by the filing of a charge, in the ERISA **[*20]** context, exhaustion requires that a determination be reached. Requiring exhaustion in an ERISA suit ensures that the Court is presented with live claims, while requiring exhaustion in a Title VII case may or may not achieve this result. n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Plaintiffs respond by arguing that the Court should be less stringent with exhaustion requirements under ERISA than in the Title VII arena, because an EEOC charge is brought before an independent agency, while an ERISA review process is conducted by internal plan trustees. _See_ Reply at 24. However, courts have rejected the notion that an ERISA review process is suspect simply because it is conducted by an employer's management. _See, e.g., Communications Workers_, 40 F.3d at 433 ("The court will not assume that, merely because members of a pension plan review committee are drawn from a company's management, the review committee will never reach an interpretation of the plan different from that of the company.").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**_B. The Federal Rules Do Not Provide  [*21]  a Basis for Intervention_**

Intervenors submit that their Motion to Intervene should be granted pursuant to Federal Rule of Civil Procedure 24, in order that they may serve as named class representatives. Intervenors claim that their motion is appropriate under both Rule 24(a), which governs "intervention of right," and Rule 24(b), which governs "permissive intervention." Mot. to Intervene at 5-11. Intervenors also state that Rule 23(d) supports their motion, because it authorizes the Court to invite intervention where a replacement class representative is needed. *Id.* at 3. The Court finds, however, that Intervenors' motion must be denied. The Federal Rules of Civil Procedure contemplate intervention in a class action suit where, in the absence of an appropriate class representative, intervenors themselves could properly fulfill that role. However, as the Court has explained above, Intervenors have not exhausted Hilton's internal claims review process, and are consequently not in a position to represent the putative service counting class.

The underpinning of Intervenors' argument is that "intervention should be freely allowed to preserve class claims,'" Mot. to Intervene **[\*22]** at 2 (quoting *Newburg on Class Actions* (3d ed.), § 2.26), and that "intervention like this often occurs when a court determines that there is a subclass which the named representatives may not adequately represent." Mot. to Intervene at 2-3. Intervenors also cite to two other cases, *Fink v. Nat'l Savings & Trust Co.*, 772 F.2d 951, 249 U.S. App. D.C. 33 (D.C. Cir. 1986), and *Link v. Daimler-Benz*, 788 F.2d 918, 929 (3d Cir. 1986), for the proposition that the courts should allow additional plaintiffs to intervene as class representatives when an original class representative proved unable to adequately represent the class. *See* Mot. to Intervene at 3. In the instant case, however, this generally liberal approach to intervention does not support the Motion to Intervene because the Court has found that the three proposed Intervenors would not be appropriate class representatives due to their unexcused failure to exhaust administrative remedies.

The fact that Intervenors' failure to exhaust their available remedies makes them inappropriate class representatives impacts the Court's consideration of the timeliness of their Motion to Intervene. Rules 24(a) and 24(b) both **[\*23]** require that a motion to intervene be timely filed, and the Court considers "time elapsed since the inception of the suit, n12 the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Smoke v. Norton*, 346 U.S. App. D.C. 277, 252 F.3d 468, 471 (D.C. Cir. 2001). In the instant case, consideration of the purpose for which intervention is sought proves fatal to Intervenors' argument that their motion is timely. Intervenors moved to intervene, "seeking to change their role in the litigation from absent class members to named representatives to ensure that all service-counting claims can be certified." Mot. to Intervene at 4-5. The Court has found, however, that such representation is impossible due to Intervenors' nonexhaustion. Consequently, granting the Motion to Intervene would be a futile exercise, and must be denied.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n12 The Court declines to wade into the middle of the parties' mudslinging over whether Intervenors' motion was filed too long after the inception of this suit. Defendants deplore the length of time between this Court's decision filed on May 11, 1999, finding that Mr. Kifafi was not an adequate class representative for the service counting class, and Intervenors' original and renewed intervention motions which were filed on January 22, 2003, and July 21, 2003. *See* Defs.' Opp. at 40-41. Intervenors claim that any delay was the result of Defendants' sluggardly discovery responses. *See* Mot. to Intervene at 8-9; Reply at 13. The Court's finding that the purpose of intervention cannot be achieved spares the Court consideration of these finger-pointing "arguments."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[\*24]**

## III. CONCLUSION

After reviewing the Motion to Intervene, the Court determines that the motion must be denied because Intervenors have failed to exhaust Hilton's available internal administrative procedures for their claims. Intervenors' failure to exhaust cannot be excused either because of futility or because of any exhaustion on Mr. Kifafi's part. As a result, the Court finds that the purpose behind the Motion to Intervene, specifically that Intervenors may serve as class representatives for the putative service counting class, would not be achieved, and permitting the three individuals to intervene would be inappropriate at this time.

An appropriate Order accompanies this Memorandum Opinion.

COLLEEN KOLLAR-KOTELLY

United States District Judge

**ORDER**

In accordance with the accompanying Memorandum Opinion, it is this 27th day of September, 2004, hereby

ORDERED that the Motion to Intervene as Named Representatives in Support of Vesting Service Claims [147] is DENIED.

COLLEEN KOLLAR-KOTELLY

United States District Judge

Service: **Get by LEXSEE®**
Citation: **2004 US Dist Lexis 28928**
View: Full
Date/Time: Monday, April 2, 2007 - 3:54 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
i - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**    About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 6013**

*2003 U.S. Dist. LEXIS 6013, \**

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AS SUBROGEE OF/AND TAMMIE HOLLEY
VERSUS UNITED STATES OF AMERICA

<u>View the Full Docket from LexisNexis CourtLink for 2:02cv1799</u>
CIVIL ACTION NO: 02-1799 SECTION: "R"(5)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

2003 U.S. Dist. LEXIS 6013

April 10, 2003, Decided
April 10, 2003, Filed, Entered

**DISPOSITION:** [\*1] Defendant's motion to review Magistrate's order GRANTED. Order granting motion to intervene reversed and intervention denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In an insurance claim, arising from an automobile accident, defendant United States sought review of the judgment of a magistrate's order, which granted the movant's motion to intervene.

**OVERVIEW:** The movant was injured in an automobile accident with an employee of the United States. The movant filed a claim with the United States, which was denied. The movant failed to file suit six months after the final notice of denial was mailed. Plaintiff insurer brought suit against the United States to recover medical expenses. The original complaint included the movant as a plaintiff, but the amended complaint did not include the movant as a party. The movant sought to intervene, and the magistrate granted the motion. The United States appealed, claiming that the movant's motion was time-barred. The court agreed, finding that the movant's deadline for presenting her claims had expired six months after she received the final notice of denial from the United States. The movant claimed that she was already a party plaintiff, but the court rejected the movant's claims. Although the original complaint listed the movant as a plaintiff, it did not state any claim for damages on her behalf. Furthermore, the evidence established that the inclusion of the movant as a party plaintiff in the original complaint was a typographical error. Therefore, granting the motion to intervene was in error.

**OUTCOME:** The United States motion for review was granted. The movant's motion to intervene was denied.

**CORE TERMS:** motion to intervene, intervene, personal injuries, nondispositive, deadline, typographical error, undersigned, styled, futile, clearly erroneous, question of law, final notice, time barred, articulate, withdrew, pretrial, mailed, right to intervene, timely application, demands judgment, lawsuit, confers, enroll, pray

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Parties > Intervention > Motions to Intervene 

Civil Procedure > Judicial Officers > General Overview

Governments > Courts > Judges

*HN1* ⤓ A magistrate judge may hear and determine any pretrial matter pending before a district court. 28 U.S.C.S. § 636(b)(1). Federal law affords a magistrate judge broad discretion in the resolution of nondispositive pretrial matters. Fed. R. Civ. P. 72(a). In a nondispositive matter, a district court will reverse a magistrate judge's ruling only if the party challenging the decision can demonstrate that the determination was clearly erroneous or contrary to the law. The denial of a motion to intervene is considered a nondispositive motion.  More Like This Headnote

Civil Procedure > Parties > Intervention > General Overview 🔦

*HN2* ⤓ See Fed. R. Civ. P. 24.

Civil Procedure > Pleading & Practice > Pleadings > Supplemental Pleadings 🔦

Civil Procedure > Parties > Intervention > Motions to Intervene 🔦

Civil Procedure > Parties > Intervention > Timeliness 🔦

*HN3* ⤓ Motions to intervene are appropriately denied when the amended complaint in intervention asserts only claims that are time barred.  More Like This Headnote

**COUNSEL:** For STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, plaintiff: Charles S. Green, Jr., Beahm & Green, New Orleans, LA.

For TAMMIE HOLLEY, intervenor-plaintiff: Lizette A. Miller, Law Office of Lizette Auxiliadora Miller, New Orleans, LA.

For UNITED STATES OF AMERICA, defendant: Stevens E. Moore, U. S. Attorney's Office, New Orleans, LA.

**JUDGES:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** SARAH S. VANCE

**OPINION: ORDER AND REASONS**

Before the Court is defendant's motion to review the Magistrate's order granting Tammie Holley's motion to intervene. Because the Court finds that Holley's Supplemental Complaint in Intervention asserts only claims that are time-barred, the Court GRANTS defendant's motion.

## I. Background

On September 11, 2000, a vehicle driven by Justin Vickers, an employee of the United States Marshals Service, rear-ended Tammie Holley's vehicle. On July 16, 2001, Holley, who is an attorney, presented a claim for $ 12,000 for personal injuries to the United States Marshals Service. On June 25, 2002, the United States Marshals Service mailed to **[*2]** Holley a final notice of denial of the claim. Holley was required by law to present her claims in federal court by December 24, 2002 - six months after the final notice of denial was mailed. See 28 U.S.C. § 2401(b).

Two weeks before the Marshals Service denied Holley's claim, on June 13, 2002, State Farm Mutual Automobile Insurance Company filed a complaint in this Court. (Rec. Doc. 1.) In the complaint, styled as above, State Farm represents that Holley sustained personal injuries in a car accident and incurred medical expenses in the sum of $ 4,796.00. (*Id.* P 4.) The complaint alleges that State Farm paid an amount to Holley, or on her behalf, equal to her incurred medical expenses. State Farm demands judgment against defendants in the sum of $ 4,796.00. (*Id.* P 7.) The complaint did not pray for any damages for Holley.

In November 2002, State Farm filed a First Supplemental And Amending Complaint in which it alleges that Holley incurred medical expenses in the amount of $ 5,478.00, that this amount was paid out by State Farm to or on behalf of Holley, and that State Farm demands judgment in the amount of $ 5,478.00. (Rec. Doc. 10.) The amended **[*3]** complaint further differs from the original complaint in two ways. First, it is styled differently. The plaintiff in the amended complaint is "State Farm Mutual Automobile Insurance Company As Subrogee Of Tammie Holley." Second, whereas attorney Charles Green signed the original complaint as "Attorney for Plaintiffs," he signs the amended complaint as "Attorney for Plaintiff." Like the original complaint, the amended complaint does not pray for any damages for Holley.

On January 22, 2003, Green filed a motion to withdraw as counsel:

> Now into court, comes Charles S. Green, Jr. and on suggesting to the Court that the law firm of Beahm & Green is presently the attorney for State Farm Mutual Automobile Insurance Company and Tammie Holley, but desires to withdraw as counsel for Tammie Holley only, remaining as counsel for State Farm Mutual Automobile Insurance Company as subrogee to the rights of Tammie Holley.
>
> I.
> The undersigned has attempted to notify Tammie Holley via certified mail ... however the certified letter came back "unclaimed" a copy of which is attached hereto.
>
> II.
> Moreover, the undersigned was never retained by Tammie Holley to represent her interests and was **[*4]** mistakenly named a plaintiff due to a typographical error, but no claims were asserted on her behalf. The undersigned represents her insurer only, State Farm Mutual Automobile Insurance Company.
>
> III.
> On information and belief, Tammie Holley either has filed or will file the attached Intervention she forwarded to my office ...

(Rec. Doc. 14.) Defendant, United States of America, followed up on Green's motion by filing a Motion To Amend Caption on January 30, 2003. (Rec. Doc. 15.) The United States argues that Holley was erroneously styled a plaintiff due to a typographical error, and that Tammie Holley is not a party plaintiff. On January 31, Judge Porteous denied Holley's motion to enroll counsel, expressly noting that Holley is not a party plaintiff in the matter. (Rec. Doc. 19.)

On February 18, 2003, Tammie Holley filed a Partially Opposed Motion to Intervene. (Rec. Doc. 20.) In the Supplemental Complaint In Intervention, Holley seeks to recover for personal injuries and medical expenses beyond those that were paid to her or on her behalf by State Farm. (Rec. Doc. 33.) Defendant opposes Holley's motion to intervene on the ground that it is futile. Defendant asserts that **[*5]** Holley was required by law to present her claims in federal court by December 24, 2002, and that her motion to intervene is merely an attempt to circumvent the applicable statute of limitations by piggybacking on State Farm's action. Defendant further notes that on February 24, 2002, State Farm and the United States settled their dispute. (Rec. Doc. 21).

On March 14, 2003, the Magistrate denied defendant's Motion To Amend Caption and granted Holley's Partially Opposed Motion To Intervene. (Rec. Doc. 30.) The Magistrate provided no written reasons for her decision. Defendant now moves the Court to review the Magistrate's order granting Holley's motion to intervene.

## II. Discussion

*HN1* A magistrate judge may hear and determine any pretrial matter pending before a district court. 28 U.S.C. § 636(b)(1). Federal law affords a magistrate judge broad discretion in the resolution of nondispositive pretrial matters. *See* FED. R. CIV. P. 72(a). In a nondispositive matter, a district court will reverse a magistrate judge's ruling only if the party challenging the decision can demonstrate that the determination was clearly erroneous or contrary to the law. **[*6]** *Id.; see also* Castillo v. Frank, 70 F.3d 382, 385-86 (5th Cir. 1995). The parties agree that the denial of a motion to intervene is considered a nondispositive motion. *See, e.g., The Tokio Marine and Fire Insurance Co., Ltd. v. M/V FLORA,* 2000 U.S. Dist. LEXIS 1226, 2000 WL 134698 (E.D.La. 2000).

*HN2* The Federal Rules of Civil Procedure provide:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common **[*7]** ...

Fed. R. Civ. P. 24. Holley does not articulate an argument supporting intervention of right under Rule 24 (a). The Court will therefore focus on whether she is entitled to permissive intervention under Rule 24(b). In regard to Rule 24(b), defendant does not dispute that Holley's claims have a question of law or fact in common with those previously brought by State Farm. Defendant's argument is that the motion is futile. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendant also asserts that the motion to intervene is untimely. Because the Court finds that intervention is futile, the Court does not reach defendant's arguments as to timeliness.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Defendant's argument as to futility is premised on the notion that Holley's deadline for presenting the claims that she asserts in the Supplemental Complaint in Intervention was December 24, 2002, or two months before Holley moved to intervene. *See* 28 U.S.C. § 2401(b); (Def.'s Mot. to Review, Ex. 2). Indeed, the Fifth Circuit has affirmed *HN3* denials of motions to intervene **[*8]** when the amended complaint in intervention asserts only claims that are time barred. *See* Crowley Maritime Corporation v. Panama Canal Commission, 849 F.2d 951 (5th Cir. 1988); Atkins v. General Motors Corporation, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983); WRIGHT & MILLER, *Federal Practice and Procedure: Civil 2d* § 1914 (The proposed pleading must state a good claim for relief). In *Crowley,* for example, Jan Rolstad suffered leg injuries during a mooring operation in the Panama Canal outside of the Canal's locks. At the time, he was employed on a barge owned by Crowley Maritime Corporation and operated by Puget Sound Tug & Barge Company. Rolstad, Crowley and Puget Sound all filed claims relating to the incident against the Panama Canal Commission. The Commission denied these claims. Crowley and Puget Sound timely pursued their claims against the Commission in federal court; Rolstad did not. Later, after the window on Rolstad's ability to pursue the claims in federal court had closed, the district court denied Rolstad's motion to intervene. On appeal, the Fifth Circuit affirmed the district court's decision and rejected Rolstad's assertion that **[*9]** the

statute of limitations should be tolled. _Crowley_, 849 F.2d at 954. The Court is thus bound by _Crowley_ to conclude that it is appropriate to deny a motion to intervene when the intervenor seeks to raise claims that are time barred.

Holley does not dispute the December 24, 2002 deadline. Rather, Holley's position in her Partially Opposed Motion To Intervene and in her opposition to defendant's motion to review the Magistrate's order is that she is already a party plaintiff and that her claims were already in this lawsuit. This is a position that the Court has already rejected. (Rec. Doc. 19.) In denying her motion to enroll counsel, the Court expressly noted that Holley is not a party plaintiff in this lawsuit. Holley, an attorney, did not file a motion to reconsider that decision. Now, she seeks to attack that determination without even mentioning it. The Court stands by Judge Porteous' prior determination.

Although the original complaint listed Holley as a plaintiff, it did not state any claim for damages on her behalf. Any judgment obtained under either the original complaint or the amended complaint, if any, is owed by the United States to State Farm, not **[*10]** to Holley. State Farm's attorney represented to the Court that he was never retained by Holley, that he did not state any claim for relief on her behalf, and that the inclusion of Holley as a party plaintiff in this matter in the original complaint was a typographical error. (Rec. Doc. 14.) Notably, Holley does not represent that she ever retained Green. Nor does she represent that she relied on him to assert her claims. Rather, the record indicates that she recognized that she was not a party plaintiff _before_ Green withdrew as counsel. Before Green withdrew, Holley drafted a Motion to Intervene; she did not draft a motion to amend the complaint to state claims on her behalf. _(Id.)_ Accordingly, the Court finds, as Judge Porteous already had, that Holley was not a party plaintiff in this matter. It follows that Holley did not assert her claims until February 2003, which is two months after her December 2002 deadline. She articulates no other reason why her claims are not barred by § 2401(b). Accordingly, the Court concludes that the Magistrate's order is clearly erroneous and contrary to law. The Court grants defendant's motion and reverses the Magistrate's order granting Holley's **[*11]** motion to intervene.

### III. Conclusion

For the foregoing reasons, the Court GRANTS defendant's motion. Holley's Motion to Intervene is denied.

New Orleans, Louisiana, this 10th day of April, 2003.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2003 U.S. Dist. LEXIS 6013**
View: Full
Date/Time: Monday, April 2, 2007 - 3:55 PM EDT

 LexisNexis®  About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Not Reported in F.Supp., 1994 WL 529853 (S.D.N.Y.)

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Diane W. CERIBELLI, Margot Whittemore, James F. Balsley, Bruce Stinson, John W. Moore and Helen Crane, Plaintiff,

v.

H. Henry ELGHANAYAN, Kamran T. Elghanayan and Frederick Elghanayan, Defendants.

No. 91 CIV. 3337 (CSH).

Sept. 28, 1994.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, District Judge:

**\*1** The 15 East 11th Street Apartment Corporation and seven shareholders residing in that building (the "proposed intervenors") petition the Court for leave to intervene as additional parties plaintiff in this civil RICO action commenced by the six plaintiffs whose names appear in the caption. They are also residents of the building. The motion is made under Rule 24(b)(2), Fed.R.Civ.P. Plaintiffs and defendants oppose it. For the reasons stated below, and in the exercise of my discretion, I deny the motion.

The threshold requirement for granting intervention under the rule is that there be "timely application" for the relief. The rule does not define "timely." It is akin to an elemental form of laches or estoppel, and consequently depends on the circumstances of each case. Certain criteria are now well recognized. I had occasion to summarize them in *Underwood v. State of New York Office of Court Administration,* 1983 WL 504 (S.D.N.Y.1983) at \*3.

The first criterion is the purpose for which intervention is sought. The proposed intervenors' purpose is clear enough. They wish to undo a prior informed decision by the Corporation to abandon the Corporation's RICO claim in this Court and pursue exclusively common law and state law claims in state court. The individual proposed intervenors included members of the Corporation's board of directors, who presumably agreed with that strategy. The state court litigation having thus far disappointed the proposed intervenors, they now wish to join plaintiffs' RICO action. They must intervene in this action, timely filed by plaintiffs, because the RICO statute of limitations has run in the interim.

I do not think that is a proper purpose for intervention. Something akin to a rule of repose may be invoked when a party, having chosen a course of action and foregone a claim in the course of doing so, seeks to revive that claim after the statute of limitations has run by joining a suit timely filed by others. If intervention were allowed in those circumstances, the courts would start down a slippery slope of permitting use of the rule as a tactical device to escape the consequences of the intervenor's prior strategy. Permissive intervention under Rule 24(b)(2) is intended to promote the efficient administration of justice by allowing litigants to join an action when the intervenor's "claim or defense and the main action have a question of law or fact in common." That limited and salutary purpose is distorted by the use the proposed intervenors seek to make of the rule.

These considerations also implicate the second criterion of timeliness, the length of time the applicant knew or should have known of its interest in the suit it seeks to join. The proposed intervenors say they could not have known of that interest before the state court trial judge rendered a decision adverse to their interests some weeks ago. There is no substance to the suggestion. The state court action did not involve a RICO claim. That reflected the proposed intervenors' deliberate strategic choice. Nothing in the pendency of the state court action or its recent decision affected a RICO claim, nor could they have. Nothing prevented the proposed intervenors from moving to intervene in plaintiffs' timely RICO action before the RICO statute of limitations ran as to them. Their possible interest in doing so, as a bet-hedging device, was manifest from the start.

**\*2** It is also clear that allowing this intervention will prejudice plaintiffs, another relevant factor. If these applicants are allowed to intervene, all the other building residents-some 80 in number-will inevitably follow that clearly blazed trail. The RICO action timely commenced by plaintiffs has passed through phases of discovery and defendants have now moved for summary judgment, which is *sub judice.* Notwithstanding the protestations of counsel to the contrary, the addition of 80 additional parties plaintiff will significantly delay plaintiffs in their desire to go to trial.

That is the principal point of objection by plaintiffs to the proposed interventions, and it is well taken.

An alternative basis for rejecting a proposed intervention under Rule 24, or an amended pleading under Rule 15, is legal futility. That consideration arises in the case at bar because, contrary to the proposed intervenors' contention, their claims would not relate back to the date of the filing of the complaint. Accordingly the intervenors' RICO claims would remain time barred.

The rule itself does not authorize relation-back. Yet, the explicit provisions for relation-back of amendments under Rule 15(c) and of substitutions of real parties in interest under Rule 17(a), demonstrate that Congress knew how to create such a mechanism when it so chose. The rule of permissive intervention was intended to promote judicial economy by preventing multiple lawsuits where common questions of law or fact are involved. *See Washington Electric v. Mass. Municipal*, 922 F.2d 92, 97 (2d Cir.1990). There is nothing in the purpose of the rule which would countenance a situation in which claims, otherwise time-barred, could be resuscitated simply by virtue of the existence of another timely filed lawsuit with common questions of law or fact. Such a result would serve only to frustrate the "salutary purpose [of the statute of limitations] to set stale claims at rest." *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir.), *cert. denied*, 352 U.S. 844 (1956).

This conclusion is compelled by the decisions of the Supreme Court in *American Pipe & Construction Co. v. Utah*, 538 U.S. 538, 560-61 (1974); and *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). In *American Pipe*, the Court reviewed the decision of a district court denying the motions to intervene of claimed members of the original class in a case initially filed as a class action on the basis that they were barred by the statute of limitations. The Supreme Court disagreed. It held that commencement of the class action had tolled the statute of limitations until the decision was made on a motion to de-certify the class. 414 U.S. at 560-61. In view of the suspension of the limitations period, the intervenors' motions were held timely because they were made three days before the limitations period expired. *Id.*

In *United Airlines*, after the original class had been de-certified, a putative member of the class sought to intervene in the action for the sole purpose of appealing the denial of certification. Despite the fact that, even applying the *American Pipe* tolling analysis, the limitations period had run, the Court held that the motion for intervention was timely. The Court noted that the motion might have been time barred if the proposed intervenor had sought to litigate the claim on the merits, but because she sought only to appeal the denial of certification the motion was not time-barred. 432 U.S. at 392.

**\*3** Implicit in the Court's rulings is the premise that a motion to intervene is *not* permitted if made after the limitations period has expired, except under the limited circumstances of a putative class member seeking to appeal the denial of class certification. This limited exception is reasonable given that "[s]uccess in that review would result in the certification of a class, the named members of which had complied with the statute of limitations." *Id.* The Court's very consideration of the tolling of limitations periods in these cases indicates that relation-back does not automatically apply to motions to intervene. If relation-back were a permissible option, nothing explains the Court's failure to discuss it. If the rule allowed relation-back, the fact that the motions had been made after the expiration of the limitations period would not have been dispositive, and the Court would have at least *considered* the principles of that doctrine in determining whether the motions to intervene had been properly denied.

Moreover, other courts have held that motions to intervene made after expiration of the limitations period are time-barred. In *Crowley Maritime Corp. v. Panama Canal Corp.*, 849 F.2d 951 (5th Cir.1988), affirming the district court's dismissal of a motion to intervene on statute of limitations grounds, the court of appeals determined that since the limitations period had not been tolled, the motion to intervene filed after its expiration was time-barred. In *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n .5 (5th Cir.1983), the court of appeals, *inter alia*, affirmed the district court's denial of motions to intervene on the ground that the proposed intervenors' claims were barred by the statute of limitations. In *Bantolina v. Aloha Motors, Inc.*, 75 F.R.D. 26 (D.Hawaii 1977), after the court determined that a class action could not be maintained, it noted that putative class members could intervene in the individual action provided that the statute of limitations had not run on their claims. The court's dictum is instructive:

"A member of a proper class action could intervene in a class action although the statute of limitations had expired for that particular member. His intervention would relate back to the date of the filing of the original complaint. 3B Moore's Federal Practice ¶ 24.13[2] (2d ed. 1977). That would not necessarily be true of intervention in an individual suit such as the [plaintiffs']. A motion to intervene must be filed timely. A motion to intervene filed after the statute of limitations had run for the movant would not be timely."

*Id.* at 33-34 n. 9 (citations omitted).

Finally, the Second Circuit has spoken on this issue. In *Cresta Blanca Wine Co., Inc. v. Eastern Wine Corp.,* 143 F.2d 1012, 1014 (2d Cir.1944), a proposed intervenor who was a defendant in a suit filed in Delaware district court sought to intervene in an earlier-filed New York suit in order to avail himself of the rule that the federal district court which first retains jurisdiction over an equitable action may enjoin a later-filed action involving the same issues and parties. On appeal, the Second Circuit affirmed denial of the motion for permissive intervention in the first action, noting that "[i]t can hardly be said that intervention, had it been granted, would have related back to the filing of [the] complaint." *See also Speed Products Co., Inc. v. Tinnerman Products, Inc.,* 171 F.2d 727, 730 (D.C.Cir.1948) (holding that the district court properly failed to enjoin another related suit from proceeding on basis that it was second-in-time against defendant, the court reasoning that defendant's motion for intervention did not relate back to the date of the action's commencement and therefore could not be said to have been initiated first).

**\*4** *Cummings v. United States,* 704 F.2d 437 (9th Cir.1983), cited by the proposed intervenors in support of their proposition that the rule permits relation-back, does not compel such a conclusion. In *Cummings,* the Ninth Circuit held that the district court abused its discretion in denying a motion to intervene as untimely. Holding that the expiration of the statute of limitations did not prevent the motion to intervene, the court of appeals noted that "[t]he insurer subrogee's complaint in intervention ... has the same effect as *pro tanto* substitution of the real party in interest under Fed.R.Civ.P. 17(a). Such a substitution relates back to the filing of the original complaint." *Id.* at 440. As such, the court did not consider relation-back under the rule of intervention. Its discussion of relation-back occurred in the context of rule 17(a) which explicitly allows relation-back. Accordingly, the analysis in *Cummings* is inapplicable to this case, which does not involve "real parties in interest" who can avail themselves of the relation-back permitted under rule 17(a).

Aside from *Cummings,* this Court's research has disclosed no other case which granted a motion for intervention filed after expiration of the statute of limitations. Without explicit authority under the rule and in view of the Supreme Court's pronouncements on the interplay between the statute of limitations and the rule of intervention, this Court concludes that motions for permissive intervention do not relate back to the date of the filing of the original complaint.

Lest there be misunderstanding, I stress that I would have exercised my discretion in this case against intervention, even if the intervention related back. But it does not relate back; and so I also ground denial of this motion on the alternative basis of legal futility.

The motion to intervene is denied.

It is SO ORDERED.

Copr. (C) West 2007 No Claim to Orig. U.S. Govt. Works S.D.N.Y.,1994.
Ceribelli v. Elghanayan
Not Reported in F.Supp., 1994 WL 529853 (S.D.N.Y.)

END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.