IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH R. KARSNER, IV, | |
| Petitioner, | |
| v. | Civil Action No.:    1:07-CV-00334-RJL |
| PAMELA LOTHIAN, *et al.*, | NASD Case No.:    04-07347 |
| Respondents. | |

**PETITIONER'S OPPOSITION TO
MARYLAND SECURITY COMMISSIONER'S MOTION TO CHANGE VENUE**

Petitioner Joseph R. Karsner, IV ("Petitioner" or "Karsner"), by and through his

undersigned attorney, hereby submits this memorandum in Opposition to the

Maryland Security Commissioner's Motion to Change Venue.

**I.    SUMMARY OF ARGUMENT**

As the Maryland Commissioner's motion to intervene lacks merit,[1] her Motion

for a Change in Venue (the "Motion") need not be considered.  Even assuming,

*arguendo*, that the Maryland Commissioner were entitled to intervene in this

proceeding, her motion to change venue must be denied because venue is properly

situated in this Court and because, as an intervenor, the Maryland Commissioner

cannot object to venue in this Court.

**II.    BACKGROUND**

Karsner and Respondent Pamela Lothian ("Lothian") were involved in a private

---

[1]    Contemporaneously herewith, Petitioner is filing his Opposition to the Maryland Commissioner's
Motion to Intervene.

arbitration before the National Association of Securities Dealers ("NASD") in the District of Columbia.  Karsner and Lothian were able to settle their dispute and the parties submitted a Stipulated Award, which included an expungement provision, to the arbitration panel overseeing that matter.  The arbitration panel reviewed relevant documentary evidence and approved the Stipulated Award and, thereafter, Karsner filed the Petition to Confirm Arbitration Award (the "Petition") with this Court.  Neither of the Respondents, Lothian and the NASD, oppose the confirmation of the Arbitration Award.

After the deadline for responding to the Petition[2] passed with no opposition being noted by either Lothian or the NASD, the Maryland Securities Commissioner (the "Maryland Commissioner") filed a motion seeking to intervene and oppose confirmation of the Arbitration Award.[3]  Shortly after she filed her Motion to Intervene and her motion on the merits of the Petition, the Maryland Commissioner filed a motion requesting that the Court transfer this case to Maryland, citing Rule 12 (b)(3) of the Federal Rules of Civil Procedure and making an argument based on her convenience.

---

[2]    The deadline was extended until March 19, 2007 to accommodate the NASD.

[3]    The Maryland Commissioner acknowledges in her Memorandum in Support of her Motion to Intervene that she was aware, several days prior to the deadline for responding to the Petition, that the NASD determined it would not oppose the Petition.  *See* Mem. in Support of Mot. to Interven at 6.  The Commissioner, however, does not explain why she allowed that deadline to pass before she filed her Motion to Intervene and her Opposition to Confirmation of the Arbitration Award.

**III.    THE MOTION TO CHANGE VENUE MUST BE DENIED.**

    **A.    Standard of Determination.**

The sole legal authority that the Maryland Commissioner cites in support of her motion to change venue is Fed. R. Civ. P. 12 (b)(3), which provides that a defense of "improper venue" may be made by motion.  Transfers for improper venue are governed by 28 U.S.C. section 1406 and are available only if venue is lacking in the forum court.  *See* 28 U.S.C. § 1406 (a).

Although the legal authority cited by the Commissioner as the basis for her motion is addressed to transfers based on improper venue, the substance of her motion appears to focus on a *forum non conveniens* argument.  The familiar rule governing a change of venue on this basis provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404 (a).  For motions seeking a transfer on the basis of convenience, even if venue is proper in the alternative forum the court retains discretion in deciding whether to transfer the case to that venue.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  The burden is on the moving party to show why there should be a change of venue and the plaintiff's choice of forum is entitled to substantial weight.  *Id*.  Indeed, in order to obtain a transfer, the movant must show that the balance is strongly in its favor and the "plaintiff's choice of forum should rarely be disturbed."  *Id.*; *see also* 14D Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3801 (3d ed. 2007) ("if venue is proper, a plaintiff's choice of forum is given substantial weight, and a transfer will be granted under section 1404(a) .

. . only if the defendant can show that the convenience of the parties and witnesses, and the interest of justice, strongly favor transfer").

### B.   The Maryland Commissioner has Consented to Venue in this Court.

The Maryland Commissioner, who is a stranger to this litigation, cannot seek a change in venue and her motion must be denied.  The courts and legal commentators agree that an intervenor may not question venue.[4]  "By voluntarily bringing himself into the action [the intervenor] has waived his privilege not to be required to engage in litigation in that forum."  7C Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1918 at 485 (2d ed. 1986).  "When a party seeks to enter pending litigation as an intervenor, he enters the litigation subject to the venue which already exists.  The purpose of venue is to alleviate the hardship on a defendant arising from his being forced to defend a suit in an inconvenient forum.  Such a consideration does not apply to an intervenor."  *Commonwealth Edison Co.*, 71 F.R.D. at 394.

The Maryland Commissioner is a stranger to this proceeding, and at best she is an intervenor in this action.  Accordingly, she "'cannot question question venue.'"  *Id.*

---

[4]      *See Beam Laser Sys. Inc., v. Cox Communications, Inc.*, 117 F. Supp. 2d 515, 517-18 (E.D. Va. 2000) (denying motion to change venue for the convenience of the parties and explaining that an intervenor "may not question venue"); *Mobil Oil Corp. v. Department of Energy*, No. 79 Civ. 4105, 1981 U.S. Dist. LEXIS 9437, at *6-7 (S.D.N.Y. Feb. 6, 1981) (denying motion to dismiss for improper venue; stating that intervenor "waived its privilege to object to venue" by voluntarily intervening), a copy of which is attached hereto as **Exhibit 1**; *Commonwealth Edison Co. v. Train*, 71 F.R.D. 391, 394 (N.D. Ill. 1976) (denying intervenor's motion to change venue for the convenience of the parties; explaining that "a person who intervenes in an action whether as plaintiff or defendant cannot be heard to object to the venue"); 6 *Moore's Federal Practice* § 24.22[3] (Daniel R. Coquilette *et al.* eds., 3d ed. 2006) ("A person who intervenes . . . may not object to the venue chosen for the action.  Since the intervenor specifically invoked the jurisdiction of the court, any potential venue objections are considered waived."); *see also Consumers Union Inc. v. Consumer Prod. Safety Comm'n*, 192 U.S. App. D.C. 93, 590 F.2d 1209, 1222 n.65 (D.C. Cir. 1978) (noting the "familiar rule that an intervenor generally is held to have waived his privilege to change the venue of a suit"), *rev'd on other grounds sub nom. GTE Sylvania, Inc. v. Consumers Union, Inc.*, 445 U.S. 375 (1980).

(quoting 7A Wright and Miller, *Federal Practice and Procedure* § 1911 (1972)).  For this reason alone, her motion to transfer venue must be denied.

### C.    The Motion to Change Venue is Without Merit.

#### 1.    Venue is Proper in this Court.

Even if the Maryland Commissioner, as an intervenor, were not precluded from seeking a change of venue, her Motion would fail on its merits.  The instant proceeding is a Petition to Confirm Arbitration Award.  The underlying arbitration was presided over by an NASD arbitration panel in Washington, D.C., which panel ultimately issued its order within Washington, D.C.  *See* Stipulated Award in Pamela Lothian v. Legacy Fin. Servs., Inc & Joseph Karsner, NASD Dispute Resolution Case No. 04-07347, a copy of which is attached hereto as **Exhibit 2**.

Section 9 of the Federal Arbitration Act (the "FAA")[5] governs the confirmation of arbitration awards and it provides, in pertinent part:

> If the parties in their agreement have agreed that a judgement of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.  If no court is specified in the agreement of the parties, then <u>such application may be made to the United States court in and for the district within which such award was made</u>.

9 U.S.C. § 9 (emphasis added).  In enacting this provision, Congress intended to expand traditional venue provisions for suits seeking to confirm arbitration awards.  *Cortez Byrd*

*Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 199-200 (2000). Plainly, under this statute venue is proper in this Court as the arbitration panel presided over this case and issued its award in Washington, D.C. Thus, to the extent the Commissioner's motion for a change of venue is based on the argument that venue is improper, *see* Fed. R. Civ. P. 12 (b)(3), her motion must fail.

### D.     The Petitioner's Forum is Entitled to Deference

To the extent the Maryland Commissioner's Motion for a Change in Venue is based upon considerations of convenience, the Motion must still be denied on its merits. A "plaintiff's choice of forum is due substantial deference and, unless the balance of convenience is <u>strongly</u> in favor of the defendants, should rarely be disturbed." *International Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 55-56 (D.D.C. 2004) (emphasis added) (denying motion to transfer venue). The factors to be considered in evaluating a motion to transfer are the plaintiff's choice of forum, the defendant's choice of forum, the forum in which the claim arose, the convenience of the parties and witnesses, and the ease of access to sources of proof. *Navajo Nation v. Peabody Holding Co., Inc.*, 209 F. Supp. 2d 269, 279-80 (D.D.C. 2002). The public interest factors relevant to a motion to transfer are the relative familiarity of the two forums with the governing law, the relative calendar congestion of the two forums, and the public interest in having the controversy decided in a given forum. *Id.* The Maryland Commissioner has failed to carry her burden of demonstrating that the

---

[5]     The FAA is applicable to this action. *See, e.g., Sargent v. Paine Webber Jackson & Curtis, Inc.*, 280 U.S. App. D.C. 7, 882 F.2d 529, 531 (D.C. Cir. 1989) (applying FAA to claims arising out of arbitration between brokerage firm and investor).

interests of justice and the convenience of the parties and witnesses weigh strongly in favor of transfer.

Venue in this court is not only proper, as discussed above, but convenient. Respondent NASD does business in and has offices located in the District of Columbia and the arbitration panel assigned to this case was situated in the District of Columbia and issued its award there. Both Petitioner and Respondent Lothian consented to proceed with the underlying arbitration in the District of Columbia. Importantly, none of the parties to this proceeding —Karsner, Lothian, or the NASD—have asserted that venue in this Court would be inconvenient. Maryland abuts the District of Columbia and the Maryland Commissioner is located a short car or train ride away from the District of Columbia. Plainly, the intervenor has not come close to demonstrating that convenience considerations "strongly" outweigh the Petitioner's choice of forum.

Venue in this Court is consistent with the interests of justice. Federal law, the FAA, will govern review of the Petition and, as such, this Court is fully familiar with the applicable law. Further, to the extent this Court wishes to consider the relative caseload of the proposed venue, Petitioner notes that for the 12 month period ending September 30, 2006, the U.S. District Court for the District of Columbia had 197 new case filings per judgeship and 274 pending cases per judgeship, while the U.S. District Court for the District of Maryland had 404 new case filings per judgeship and 363 pending cases per judgeship. *See* <http://www.uscourts. gov/cgi-bin/cmsd2006.pl>

(visited March 27, 2007).[6]  Finally, the arbitration underlying the Petition was between two private parties.  The citizens of Maryland have no interest in the resolution of the merits of this private dispute.  To the extent the citizens of Maryland have an interest in the qualifications of Karsner, that interest is fully protected by the administrative action instituted against Karsner by the Maryland Commissioner.[7]  Consideration of the interests of justice does not favor transfer to Maryland.

The Maryland Commissioner also focuses her argument on the location of the events at issue in the underlying arbitration: her argument misses the mark.  The case at bar seeks confirmation of an Arbitration Award.  It is well-established that such proceedings do not present a chance to relitigate the underlying issues.  *See Alston v. UBS Fin. Servs., Inc.*, No. 04-01798, 2006 WL 20516, at *1 n.2 (D.D.C. Jan. 2, 2006) (explaining, in confirming NASD arbitration award, that "[t]he strong federal policy in favor of voluntary commercial arbitration would be undermined if the courts had the final say on the merits of the award").[8]  Rather, the statutory grounds for vacating or modifying an arbitration award have to do with the conduct of the arbitration and the arbitrators.  *See* 9 U.S.C. §§ 10 & 11.[9]  Thus, it is appropriate and convenient that this

---

[6]    For 12 month period ending September 30, 2006, there was less than a 3 month difference in the median time for resolving cases in the U.S. District Court for the District of Columbia and the U.S. District Court for the District of Maryland.  *Id.*

[7]    Although the Maryland Commissioner asserts that the citizens of Maryland have an interest in the records maintained by the NASD, the Maryland Commissioner is obviously aware of the information in those records and expungement of the records will not impede her ability to develop facts related to purported wrongful conduct by Petitioner.

[8]    A copy of which is attached hereto as **Exhibit 3**.

[9]    Section 10 of the FAA provides that an arbitration award may be vacated if the award was procured by fraud, corruption, or undue means, if the arbitrators were corrupt or biased, if the arbitrators were guilty of misconduct, or if the arbitrators exceeded their powers. 9 U.S.C. § 10 (a).  Section 11 of the FAA provides that an arbitration award may be modified if there was a material miscalculation or mistake in description in the award, if there was an award on a matter not submitted to the arbitrators, or

Court, which is the district court for the location where the arbitration took place, preside over the instant action. The Maryland Commissioner's arguments concerning the locus of the events that were at issue in the underlying arbitration does not justify disregarding the Petitioner's choice of forum. Clearly, the Maryland Commissioner has not met her burden of showing that the balance of convenience and the interests of justice weigh strongly in her favor and, accordingly, the Petitioner's forum is entitled to deference.

## IV.    CONCLUSION

The Maryland Commissioner's motion to transfer venue is due to be denied because she has consented to venue in this Court by filing her motion to intervene, because venue is proper in this Court, and because she has not met the requirements for a change of venue. Accordingly, Petitioner respectfully requests that this Court enter an Order denying the Maryland Commissioner's Motion for a Change in Venue.


Respectfully submitted,

_____/s/_____

Richard J. Magid
Whiteford, Taylor & Preston
7 Saint Paul Street
Baltimore, Maryland 21202

George S. Mahaffey, Jr.
Goodell, DeVries, Leech & Dann, LLP
One South Street, 20th Floor
Baltimore, Maryland 21202

*Attorney for Petitioner,*
*Joseph R. Karsner, IV*

*1727901*

---

if the award is imperfect in form. 9 U.S.C. § 11 (a-c). In her proposed Opposition to Confirmation of the Arbitration Award, the Maryland Commissioner does not allege any of the recognized grounds for vacating or modifying the award.

Service: **Get by LEXSEE®**
Citation: **1981 US Dist Lexis 9437**

*1981 U.S. Dist. LEXIS 9437, \**

MOBIL OIL CORPORATION, Plaintiff, against THE DEPARTMENT OF ENERGY, et al., Defendants.

No. 79 Civ. 4105

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1981 U.S. Dist. LEXIS 9437

February 6, 1981

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff corporation filed a motion for an extension of time to serve and file a supplemental complaint, adding a claim for restitution against intervenor distributor, in an action by the corporation against defendant United States Department of Energy (department) seeking declaratory and injunctive relief regarding department orders. The distributor filed a motion to quash service and to dismiss the supplemental complaint.

**OVERVIEW:** The department ordered the corporation to supply the distributor with motor gasoline pursuant to emergency legislation. The corporation sought a declaratory judgment that the orders were invalid and injunctive relief against their enforcement. The distributor objected to the injunction, which was denied, and was determined to be an intervenor by the court. The corporation was granted leave to file a supplemental complaint asserting a claim against the distributor for restitution but failed to serve the distributor within 10 days of the court's order. The corporation sought an extension of time to file, and the distributor sought to dismiss the supplemental complaint for insufficient service and lack of jurisdiction. The court granted the corporation's motion and denied the distributor's motion, holding that by voluntarily intervening, the distributor had submitted itself to the court's jurisdiction and had waived its privilege to object to venue. The court allowed an extension of time because the failure to timely file had been excusable neglect and the corporation's counsel had acted in good faith. The distributor's claim of prejudice was insufficient to deny the request.

**OUTCOME:** The court granted the corporation's motion for an extension of time to and file a supplemental complaint, allowing the corporation 10 days from the day the order was filed, in an action challenging the department's orders. The court denied the distributor's motion to dismiss the supplemental complaint.

**CORE TERMS:** supplemental, New York Law Journal, extension of time, venue, sheet, preliminary injunction, restitution, excusable neglect, intervenor, contacted, personal jurisdiction, declaratory judgment, service of process, injunctive relief, quash service, terminated, equitable, mailed, waived, notice, leave to intervene, date of service, leave to file, affirmatively, intervening, appearance, petroleum, gasoline, orally

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Venue > Multiparty Litigation 

Civil Procedure > Pleading & Practice > Service of Process > General Overview 

Civil Procedure > Parties > Intervention > General Overview 

*HN1* ⟡ The intervenor cannot question venue. By voluntarily bringing himself into the action he has waived his privilege not to be required to engage in litigation in that forum. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > General Overview 🔍

*HN2* ⟡ Fed. R. Civ. P. 6(b)(2) provides that when by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Time Limitations > Extensions 🔍

*HN3* ⟡ An extension of time pursuant to Fed. R. Civ. P. 6(b)(2) is within the court's discretion. The party moving for the extension must demonstrate good faith and show some reasonable basis for non-compliance within the time specified. More Like This Headnote

## COUNSEL: [*1]

DONOVAN LEISURE NEWTON & IRVINE, 30 Rockefeller Plaza, New York, New York 10020

BY: THOMAS TROWBRIDGE, III., ESQ.

MOBIL OIL CORPORATION, of Counsel, 150 East 42nd Street, New York, New York 10017

BY: CHARLES LINDBERG, ESQ.; FREDI PEARLMUTTER, ESQ.; for plaintiff.

ROSEBLUM, GOLDENHERSH, SILVERSTEIN & ZAFFT, 7777 Bonhomme, Suite 1414, Clayton, Missouri 63105

BY: RICHARD BENDER, ESQ., for intervenor Onyx Corporation.

**OPINION BY:** LOWE

**OPINION:** MEMORANDUM OPINION and ORDER

MARY JOHNSON LOWE, D.J.

This is a civil action whereby plaintiff Mobil Oil Corporation ("Mobil") seeks a declaratory judgment and injunctive relief. Plaintiff has moved, pursuant to Rule 6(b)(2) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), for an extension of time to serve and file a supplemental complaint. Onyx Corporation ("Onyx"), an intervenor, has moved in opposition to quash service and dismiss the supplemental complaint as against it on the grounds: (1) lack of subject matter and personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1) and (2); (2) improper venue, pursuant to Fed.R.Civ.P. 12(b)(3); and (3) insufficient process and service of process, pursuant to Fed.R.Civ.P. 12(b)(4) and (5). [*2] Plaintiff has filed papers in opposition to Onyx's motion.

For the following reasons, plaintiff's motion is granted, and Onyx's motion is denied.

I. Facts and Prior Proceedings

In July and August, 1979 Mobil was ordered by defendant Department of Energy ("DOE") to supply Onyx, a Midwest petroleum distributor, with a substantial amount of motor gasoline during the months of July, August and September, 1979. The Orders were issued pursuant to emergency legislation and an Executive Order concerned with the shortage in crude oil, residual fuel oil, and refined petroleum products or

dislocations in the national distribution system. On August 7, 1979 Mobil commenced this action by way of Temporary Restraining Order seeking a declaratory judgment that the DOE Orders were invalid and preliminary and permanent injunctive relief against their enforcement. In compliance with the DOE Orders, plaintiff provided Onyx with over one million gallons of motor gasoline. At the conclusion of the Preliminary Injunction hearing,t eh court issued the following order:

"Plaintiff having moved by order to show cause for a preliminary injunction and such motion having come on for a hearing on [*3] August 10, 1979, and the Onyx Corporation and Marine Petroleum Company having appeared by counsel at the hearing and having orally moved for leave to intervene in the absence of any objection thereto, plaintiff having presented its evidence, and defendants having moved for a directed verdict at the close of plaintiff's evidence, and the Court having orally ruled on the pending motion (see transcript of August 10, 1979) it is hereby ORDERED, that Onyx Corporation and Marine Petroleum Company are granted leave to intervene in this action; and it is further ORDERED, that plaintiff's motion for a preliminary injunction is denied."

On October 5, 1979 Mobil moved for leave to file a proposed supplemental complaint asserting, inter alia, a claim against Onyx for restitution. The Court granted Mobil's motion on condition that the supplemental complaint be served within ten days; defendants were to answer or move within twenty days of the date of service. n1


n1 See Endorsement Order, filed November 26, 1979.

II. Onyx's Motion To Dismiss
A. Subject Matter Jurisdiction

Onyx moved to dismiss the entire claim alleging that administrative remedies had not been exhausted since proceedings [*4] were pending before defendant DOE, and to dismiss the restitution claim as unrelated.

Onyx's first claim is frivolous. See Opinion of this Court, dated August 23, 1979. Mobil's action for an injunction is equitable and restitution is an equitable remedy for transfer to Onyx of Mobil's oil pursuant to the DOE Orders herein. See Chris-Craft Industries Inc. v. Piper Aircraft Corp., 480 F.2d 341, 390 (2d Cir. 1972), cert denied, 414 U.S. 910 and 924 (1973). Further, judicial economy favors this forum. See Stallworth v. Monsanto Co., 558 F.2d 257, 269-70 (5th Cir. 1977); TPI Corp. v. Merchandise Mart of South Carolina, Inc., 61 F.R.D. 684, 690-92 (D.S.C. 1974).
B. Personal Jurisdiction

Onyx claims that its appearance at the Court's August 10, 1979 hearing was for the limited purpose of objecting to Mobil's preliminary injunction and not for the purpose of defining as a party. The record fails to support this claim: (1) Onyx voluntarily appeared by counsel to assert and protect its interest, without any indication that intervention was for a limited purpose; n2 this is confirmed by the Court's August 17, 1979 Order; (2) Onyx represented itself in DOE administratrive proceedings [*5] as an "intervening party defendant" in this action; n3 (3) Onyx requested notification by the Court of all subsequent hearings with the opportunity to appear and present argument; n4 and (4) Onyx did not oppose Mobil's motion for leave to file the proposed supplemental complaint, and requested personal service of said complaint by Mobil if the motion was granted. n5


n2 See Transcript of the August 10, 1979 hearing at 67-68.

n3 See Exhibit B, Plaintiff's Memorandum In Opposition to Motion to Dismiss at 2.

n4 August 15, 1979 letter from Mr. Bender, Onyx's counsel located in St. Louis, Missouri, to the Court. Onyx is required to obtain local counsel pursuant to local rule 2(c) of the General Rules of this Court for appearances; however, rule 2(c) also provides,

"A member in good standing of the bar of any state or of any United States district court, may upon motion be permitted to argue or try a particular cause in whole or in part as counsel or advocate."

n5 Exhibit D of Plaintiff's Memorandum In Opposition to Onyx's Motion to Dismiss.

By voluntarily intervening, Onyx has submitted itself to the Court's jurisdiction. City of Santa Clara, California v. Kleppe, [*6] 428 F. Supp. 315, 317 (N.D. Cal. 1976), aff'd 572 F.2d 660 (9th Cir.), cert. denied, 439 U.S. 859 (1978); see East v. Crowdus, 302 F.2d 645, 647 (8th Cir. 1962); Stell v. Savannah-Chatham County Board of Education, 255 F.Supp.88, 92 (S.D. Ga. 1966). As an intervenor Onyx is treated as an original party in the action, subject to a complete adjudication by the Court of all issues between it and the adverse parties. See United States v. Board of Education of Waterbury, Connecticut, 605 F.2d 573, 576 (2d Cir. 1979); 3B Moore's, Federal Practice P24.16[6] at 24-671 (1980); Freeman v. Bee Machine Co., 319 U.S. 448, 454-55 (1943); In re Raabe, Glissman & Co., 71 F. Supp. 678, 680 (S.D.N.Y. 1947).
C. Venue

By voluntarily intervening Onyx has waived its privilege to object to venue. 7A Wright & Miller, Federal Practice and Procedure: Civil § 1918 at 608 and n.92 (1972) HN1⚓("The intervenor cannot question venue. By voluntarily bringing himself into the action he has waived his privilege not to be required to engage in litigation in that forum"); accord, 3B Moore's, supra, P24.19 at 24-901; Trans World Airlines, Inc. v. CAB, 339 F.2d 56, 64 (2d Cir. 1964), cert. denied, 382 U.S. 842 [*7] (1965); Commonwealth Edison Co. v. Train, 71 F.R.D. 391, 394 (N.D. Ill. 1976).
D. Service of Process

Onyx, having submitted itself to the Court's jurisdiction, may be served with the proposed supplemental complaint pursuant to Fed.R.Civ.P.(5)(b). n6 See Freeman v. Bee Machine Co., supra at 455; Adam v. Saenger, 303 U.S. 59, 67-68 (1938); 7A Wright & Miller, supra, § 1919 at 610 (1972).


n6 Fed.R.Civ.P.(5)(b) provides, in relevant part:
"Whenever... service is required or permitted to be made upon a party represented by an attorney the service shall be made upon the attorney... Service... shall be made by delivering a copy to him or by mailing it to him at his last known address...."

III. Plaintiff's Motion for an Extension of Time.

Mobil claims that its failure to comply with the Court's November 29, 1979 Order to serve and file the proposed supplemental complaint was "excusable neglect". Fed.R.Civ.P. 6(b)(2). n7 Plaintiff contends: (1) the Managing Attorney's Office of Mobil's counsel noted an entry in the New York Law Journal regarding this action; (2) for approximately ten days thereafter, the Office made a daily examination of this action's "docket sheet" [*8] filed with the Clerk of this Court; (3) the normal time required for the processing of Orders by the Clerk's Office is generally less than ten days; daily review of the "docket sheet" was terminated when the Court's Order remained undocketed after ten days in the belief that the New York Law Journal entry was a misprint; (4) Mobil's counsel did not receive the postcard notice of entry of the Court's Order mailed by the Clerk's Office.See Fed.R.Civ.P. 77(d).


n7 HN2⚓Fed.R.Civ.P. 6(b)(2) provides:
"When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion... (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect;...."

In opposition Onyx contends that the failure of Mobil's counsel to affirmatively act by double-checking the

New York Law Journal entry, cannot be deemed excusable neglect. n8 Also, Onyx maintains that it will be prejudiced if the motion is granted. n9

n8 Onyx alleges, inter alia, plaintiff's counsel could have (1) contacted these Chambers to clarify said entry, (2) contacted opposing counsel particularly when the docket sheet indicated that notice of the Court's decision was mailed by the Clerk, or (3) contacted the Court Clerk. Onyx Corporation's Memorandum In Opposition to Mobil Oil Corporation's Motion for Extension of Time and Supporting Affidavit at 2.

n9 Onyx alleges (1) it has informed its employees and customers that this action has terminated for all practical purposes, since plaintiff did not serve the supplemental complaint within the ten days limit, and to grant an extension will effect the corporation's credibility with them, and (2) while the action is pending, with the possibility of a judgment against Onyx, the company's ability to improve its credit rating, financial situation and secure additional loans, is greatly hampered. **[*9]**

*HN3* An extension of time pursuant to Fed.R.Civ.P. 6(b)(2) is within the Court's discretion. Supermarkets General Corp. v. Grinnell Corp., 490 F.2d 1183, 1186 (2d Cir. 1974). The party moving for the extension must demonstrate good faith and show some reasonable basis for non-compliance within the time specified. Yonofsky v. Wernick, 362 F. Supp. 1005, 1012 (S.D.N.Y. 1973); 4 Wright & Miller, supra, § 1165 at 622 (1969). Plaintiff's counsel noted the entry of the Court's Order in the New York Law Journal and affirmatively monitored the "docket sheet" for a reasonable time period. Although counsel could have taken additional action n10 this Court will not deny plaintiff's request solely for its failure to do so since it did act in good faith.

n10 See note 9, supra at 9.

Onyx's claim of prejudice is insufficient to deny plaintiff's request: (1) Mobil may seek restitution from Onyx in a separate action that could be commenced at any time; n11 (2) Onyx does not state with particularity the extent of any financial burden that may be incurred solely resulting from party defendant status; and (3) the liberal interpretation standard embodied in Fed.R.Civ.P. 1 requires that the Federal **[*10]** Rules be construed to "secure the just, speedy, and inexpensive determination of every action." See Vandervelde v. Put and Call Brokers and Dealers Ass'n., 43 F.R.D. 14, 20 (S.D.N.Y. 1967). The filing of the proposed supplemental complaint provides for such determination since all claims and parties relevant to the facts from which this action arose would be before the Court.

n11 Onyx's Memorandum in Support of Its Motion to Quash Service and Dismiss the Supplemental Complaint states, inter alia,
"Mobil is not without adequate remedies if Onyx were dismissed from the pending lawsuit. [I]f Mobil has not obtained satisfaction via [this suit or DOE administrative action] it may then institute independent legal proceedings against Onyx Corporation, equitable in nature, in the United States District Court for the Eastern District of Missouri."
Id. at 7.

IV. Conclusion

For the above-mentioned reasons, Onyx's motion to dismiss is denied. Plaintiff's motion is granted with ten (10) days leave from the date this Memorandum Opinion and Order is filed to serve and file the proposed supplemental complaint; Onyx to serve and file an answer within thirty (30) days of the date **[*11]** of service.

It Is So Ordered.

Service: **Get by LEXSEE®**
Citation: **1981 US Dist Lexis 9437**
View: Full
Date/Time: Monday, April 2, 2007 - 4:07 PM EDT



About LexisNexis  | Terms & Conditions
Copyright ©  2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

02/14/2006 16:54 FAX  202 728 8082          NASD DISPUTE RESOLUTION                    ☑004/014

# Stipulated Award
### NASD Dispute Resolution

In the Matter of the Arbitration Between:

Name of the Claimant                          Case Number: 04-07347
Pamela Lothian

Names of the Respondents                      Hearing Site: Washington, D.C.
Legacy Financial Services, Inc.
Joseph Karsner

Nature of the Dispute:  Customer vs. Member and Associated Person.

## REPRESENTATION OF PARTIES

Claimant, Pamela Lothian, "Claimant", was represented by William B. Young, Jr., Esq., Hooper & Weiss, L.L.C., Orlando, Florida.

Respondents, Legacy Financial Services, Inc. ("Legacy Financial") and Joseph Karsner ("Karsner"), hereinafter collectively referred to as "Respondents", were represented by Jeffrey J. Hines, Esq., and George S. Mahaffey, Jr., Esq., Goodell, DeVries, Leech & Dann, LLP, Baltimore, Maryland.

## CASE INFORMATION

Statement of Claim filed on October 19, 2004.
Claimant signed the Uniform Submission Agreement on August 24, 2004.
Statement of Answer filed by Respondents on December 13, 2004.
Motion to Dismiss filed by Respondents on February 21, 2005.
Claimant filed a Response to the Motion to Dismiss on March 1, 2005.

## CASE SUMMARY

Claimant in her Statement of Claim asserted the following cause of action: unsuitability.  The cause of action relates to the purchase of shares in American Skandia and John Hancock mutual funds.

Unless specifically admitted in its their Answer, Respondents denied the allegations made in the Statement of Claim and asserted various defenses.

## RELIEF REQUESTED

Claimant in her Statement of Claim and Amended Statement of Claim requested:
     Compensatory Damages                     $104,638.00

02/14/2006 16:54 FAX  202 728 8082          NASD DISPUTE RESOLUTION                    ☑005/014

NASD Dispute Resolution
Arbitration No. 04-07347
Award   Page 2

| | |
|---|---|
| Punitive Damages | amount unspecified |
| Interest | amount unspecified |
| Attorneys' Fees | amount unspecified |
| Other Costs | amount unspecified |

Respondents in their Statement of Answer and Motion to Dismiss requested that Claimant's
Statement of Claim be dismissed in its entirety and that the Arbitration Panel (the "Panel") award
the Respondents' forum fees, attorneys' fees and any other costs and fees incurred by
Respondents in defending this action.

### OTHER ISSUES CONSIDERED AND DECIDED

Respondents did not file with NASD Dispute Resolution properly executed submissions to
arbitration but are required to submit to arbitration pursuant to the Code and, having answered
the claim, are bound by the determination of the Panel on all issues submitted.

By Order dated April 22, 2005 the Panel denied Respondents' Motion to Dismiss.

On or about December 5 2005 the parties entered into an agreement to settle this matter on
certain terms and conditions set forth in a confidential settlement agreement.

The parties agreed that the Respondents are not liable for the counts listed in the Statement of
Claim and Amended Statement of Claim, that the investments at issue were suitable, and that the
Stipulated Award for this matter may be executed in counterpart copies.

### AWARD

The parties entered into an agreement to present to the Panel a Stipulated Award.  Upon motion
of all parties for a Stipulated Award and Claimant's agreement, as a result of information and
documents received during the discovery process, that all investments at issue were suitable and
that the Respondents are not liable for any of the counts in the Statement of Claim and Amended
Statement of Claim; the Panel finds that the claims, allegations and information contained in the
Statement of Claim and Amended Statement of Claim are clearly erroneous and that the
Respondents were not involved in the alleged investment-related sales practice violations.  The
Panel hereby grants the parties' motion and enters this award granting the following relief:

1. Pursuant to the confidential settlement agreement reached between all parties, all claims
   against Respondents are dismissed with prejudice;

2. The Panel recommends the expungement of all reference to the above-captioned
   arbitration from Respondent Karsner's registration record maintained by the NASD
   Central Registration Depository ("CRD"), with the understanding that, pursuant to NASD
   Notice to Members 04-16, Respondent Karsner must obtain confirmation from a court of
   competent jurisdiction before the CRD will execute the expungement directive.  Unless
   specifically waived in writing by the NASD, parties seeking judicial confirmation of an

NASD Dispute Resolution
Arbitration No. 04-07347
Award   Page 3

arbitration award containing expungmenet relief must name NASD as an additional party and serve NASD with all appropriate documents.

Pursuant to Rule 10130, the Panel has made the following affirmative findings of fact: the claim, allegation or information is clearly erroneous and the registered person was not involved in the alleged investment-related sales practice violation;

3.  The parties shall bear their own costs, including attorneys' fees, except as fees are specifically addressed below; and

4.  Any and all relief not specifically addressed herein, including punitive damages, is denied in its entirety.

## FEES

Pursuant to the Code, the following fees are assessed:

### Filing Fees

NASD Dispute Resolution will retain or collect the non-refundable filing fees for each claim:

| | |
|---|---|
| Initial claim filing fee | = $ 300.00 |

### Member Fees

Member fees are assessed to each member firm that is a party in these proceedings or to the member firms that employed the associated person(s) at the time of the events giving rise to the dispute.  Accordingly, Respondent Legacy Financial is a party.

| | |
|---|---|
| Member surcharge | = $1,700.00 |
| Pre-hearing process fee | = $  750.00 |
| Hearing process fee | = $2,750.00 |
| Total Member Fees | = $5,200.00 |

### Forum Fees and Assessments

The Panel has assessed forum fees for each session conducted.  A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s), that lasts four (4) hours or less.  Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Two (2) Pre-hearing sessions with Panel @ $1,125.00 | | | = $2,250.00 |
| Pre-hearing conferences: | March 14, 2005 | 1 session | |
| | April 22, 2005 | 1 session | |
| Total Forum Fees | | | = $2,250.00 |

1. The Panel has assessed $750.00 of the forum fees to Claimant
2. The Panel has assessed $750.00 of the forum fees to Respondent Legacy Financial.
3. The Panel has assessed $750.00 of the forum fees to Respondent Karsner.

NASD Dispute Resolution
Arbitration No. 04-07347
Award   Page 4

## FEE SUMMARY

1. Claimant is assessed and shall pay the following fees:

| | | |
|---|---|---|
| Initial Filing Fee | := $ | 300.00 |
| Forum Fees | := $ | 750.00 |
| Retained Hearing Session Deposit | := $ | 375.00 |
| Total Fees | := | $1,425.00 |
| Less payments | := | $1,425.00 |
| Balance Due NASD Dispute Resolution | := $ | 00.00 |

2. Respondent Legacy Financial is assessed and shall pay the following fees:

| | | |
|---|---|---|
| Member Fees | := | $5,200.00 |
| Forum Fees | := $ | 750.00 |
| Total Fees | := | $5,950.00 |
| Less payments | := | $5,200.00 |
| Balance Due NASD Dispute Resolution | := $ | 750.00 |

3. Respondent Karsner is assessed and shall pay the following fees:

| | | |
|---|---|---|
| Forum Fees | := $ | 750.00 |
| Total Fees | = $ | 750.00 |
| Less payments | = $ | 00.00 |
| Balance Due NASD Dispute Resolution | = $ | 750.00 |

All balances are payable to NASD Dispute Resolution and are due upon receipt pursuant to Rule 10330(g) of the Code.

## ARBITRATION PANEL

| | | |
|---|---|---|
| Robert O. Harris, Esq. | - | Public Arbitrator, Presiding Chairperson |
| Stanley H. Ragle, Esq. | - | Public Arbitrator, Panelist |
| Wendie L. Wachtel | - | Non-Public Arbitrator, Panelist |

NASD Dispute Resolution
Arbitration No. 04-07347
Award   Page 5

Concurring Arbitrator's Signatures

_Robert O. Harris_

Robert O. Harris, Esq.
Public Arbitrator, Presiding Chairperson

2/13/06

Signature Date

Stanley H. Ragle, Esq
Public Arbitrator, Panelist

Signature Date

Wendie L. Wachtel
Non-Public Arbitrator, Panelist

Signature Date

2/14/06

Date of Service  (For NASD Dispute Resolution office use only)

02/14/2006 16:56 FAX  202 728 8082          NASD DISPUTE RESOLUTION                    ☑009/014

NASD Dispute Resolution
Arbitration No. 04-07347
Award   Page 5

Concurring Arbitrators' Signatures


_____                    _____
Robert O. Harris, Esq.                     Signature Date
Public Arbitrator, Presiding Chairperson


*Stanley H. Ragle* (signature)

_____                    ___/9/06___
Stanley H. Ragle, Esq                      Signature Date
Public Arbitrator, Panelist


_____                    _____
Wendie L. Wachtel                          Signature Date
Non-Public Arbitrator, Panelist


_____
Date of Service  (For NASD Dispute Resolution office use only)

DEC-12-'13 FRI 19:41 ID:
02/08/2006 17:57 FAX  202 728 8082          NASD DISPUTE RESOLUTION          FAX NO:          #489 P02
                                                                                              ☑007/007

NASD Dispute Resolution
Arbitration No 04-07347
Award  Page

Concurring Arbitrator  Signatures

Robert O. Harris, Esq.
Public Arbitrator, Presiding Chairperson                    _____
                                                            Signature Date


Stanley H. Raphael, Esq
Public Arbitrator, Panelist                                 _____
                                                            Signature Date


Wendie I Wachtel

Wendie L. Wachtel                                           2/10/06
Non-Public Arbitrator, Panelist                            _____
                                                            Signature Date


Date of Service ( For NASD Dispute Resolution office use only)

Not Reported in F.Supp.2d, 2006 WL 20516 (D.D.C.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Todd C. ALSTON and Grace Cole-Alston, Petitioners,
v.
UBS FINANCIAL SERVICES, INC., et al., Defendants.
No. Civ.A. 04-01798(HHK).
Jan. 2, 2006.

William Scott Greco, Greco & Greco, PC, McLean, VA, for Petitioners.
Dana P. Moore, Richard J. Magid, Whiteford, Taylor & Preston, LLP, Baltimore, MD, A. Patricia M. Christiansen, Boose, Casey, Ciklin, Lubitz, Martens, Mcbane & O'Connell, West Palm Beach, FL, for Defendants.

MEMORANDUM OPINION

KENNEDY, J.
*1 Petitioners, Todd D. Alston and Grace Cole-Alston ("the Alstons"), bring this action seeking to vacate and set aside an NASD Dispute Resolution arbitration award that followed a dispute with the Alstons' financial advisors, defendants UBS Financial Services, Inc. ("UBS") and Daron D. Fullwood, a former UBS broker. Presently before the court are the parties' cross motions for summary judgment [18, 20, 24]. Upon consideration of the motions, the oppositions thereto, and the record of the case, the court concludes that the Alstons' motion should be denied, the respondents' motions should be granted, and the arbitration award should be confirmed.

I. BACKGROUND

The Alstons are a married couple living in Virginia. Todd Alston began working at American Online ("AOL") in the 1990s as an engineer. His wife, Grace Cole-Alston, is a nurse. In February 2000, the couple opened a joint account with UBS. At the time, the Alstons' net worth was $4.5 million, most of which consisted of AOL stock obtained through the exercise of stock options that Todd had received as part of his compensation package at AOL.

At issue in this action is the advice allegedly given by Fullwood, a broker at UBS, to the Alstons regarding a covered call writing strategy for the Alstons' AOL stock options.[FN1] The Alstons assert that Fullwood failed to recommend that they diversify their stock holdings and failed to adequately apprise the Alstons of the risks associated with the proposed strategy. Further, respondents' advice to adopt the covered call writing strategy constituted, according to the Alstons, an unsuitable recommendation in violation of Section 10(b) of the Securities Exchange Act of 1934. UBS and Fullwood paint a different picture of the underlying dispute, alleging that the idea to exercise the stock options originated with the Alstons, that they did advise the Alstons to diversify their holdings but the Alstons refused to do so, and that the Alstons continually refused to sell the AOL stock, despite its falling price. Ultimately, after selling the AOL stock in February 2001, the Alstons suffered a net loss in the UBS accounts of over $3 .5 million.

> FN1. UBS indicates that a covered call strategy "involves the sale of call options for stock that the seller owns, and that is capable of delivering if the option is exercised and the stock is 'called away.' ' UBS Opp'n at 10 n. 2. A call option is the "right, but not the obligation, to purchase stock at a specific price until the expiration date of the option." *Id.*

The Alstons commenced arbitration in August 2002 by submitting a Statement of Claim to NASD Dispute Resolution, Inc., a subsidiary of the NASD. The arbitral hearing occurred in Washington, D.C. on June 14-18, 2004 and July 13, 2004. The arbitration panel heard the testimony of witnesses and received documentary evidence from all of the parties to the proceeding. On August 9, 2004, the arbitration panel issued its award, denying all claims against UBS and Fullwood in their entirety. The panel also recommended that all reference to the arbitration be expunged from Fullwood's registration records. This action followed.

## II. ANALYSIS

Courts have long recognized that judicial review of an arbitration award is extremely limited. _United Paperworkers Int'l Union v. Misco, Inc._, 484 U.S. 29, 37-38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); _Kanuth v. Prescott, Ball & Turben, Inc._, 949 F.2d 1175, 1178 (D.C.Cir.1991); _Apex Plumbing Supply, Inc. v. U.S. Supply Co._, 142 F.3d 188, 193 (4th Cir.1998) (calling judicial review of arbitration awards "severely circumscribed").[FN2] In fact, a court may vacate an arbitration award only if there is a showing that one of the limited circumstances enumerated in the Federal Arbitration Act ("FAA") is present, or if the arbitrator acted in manifest disregard of the law. _LaPrade v. Kidder, Peabody & Co._, 246 F.3d 702, 706 (D.C.Cir.2001); _Apex Plumbing_, 142 F.3d at 193.[FN3]

> FN2. This narrow standard of review is necessary "to effectuate th[e] objective" embodied by the FAA; namely, to establish "the desirability of arbitration as an alternative to the complication of litigation." _Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac R.R. Co._, 516 F.Supp.2d 1305, 1312 (D.D.C.1981). As the D.C. Circuit has noted, "[t]he strong federal policy in favor of voluntary commercial arbitration would be undermined if the courts had the final say on the merits of the award." _Revere Copper & Brass, Inc. v. Overseas Private Inv. Corp._, 628 F.2d 81, 84 (D.C.Cir.1980) (citing Note, _Judicial Review of Arbitration Awards on the Merits_, 63 HARV. L.REV.. 681 (1950)).

> FN3. The Alstons attempt to rely on Virginia law as a basis for vacatur as well. The court, however, need not analyze the Alstons' motion under Virginia law because, to the extent that the FAA and Virginia law conflict, state law is preempted, _Southland Corp. v. Keating_, 465 U.S. 1, 10-16, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and to the extent that the two coincide, the court's analysis would be the same. Furthermore, although the parties had the authority to specify that review of the award would be governed by Virginia law, see _Matsrobuono v. Shearson Lehman Hutton, Inc._, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); _Roadway Package Sys., Inc. v. Kaysar_, 257 F.3d 287 (2001), the record does not reflect that the parties actually did so here.

**\*2** The statutory grounds for vacating an arbitration award under the FAA are as follows:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Courts also recognize a limited non-statutory ground for vacatur of an arbitration award where an arbitrator has acted in "manifest disregard of the law." _Al- Harbi v. Citibank, N.A._, 85 F.3d 680, 682 (D.C.Cir.1996); _Kanuth_, 949 F.2d at 1178 (citing _Wilko v. Swan_, 346 U.S. 427, 436-37, 74 S.Ct. 182, 98 L.Ed. 168 (1953)). The Alstons bear the "heavy" burden of establishing that vacation of

the arbitration award is appropriate. *Al-Harbi*, 85 F.3d at 683; *see also LaPlade*, 246 F.3d at 706. Furthermore, in the absence of a legal basis to vacate, this court has no discretion but to confirm the award. 9 U.S.C. § 9; *Bryson v. Gere*, 268 F.Supp.2d 46, 54 (D.D.C.2003).

The Alstons contend that the arbitration award should be vacated for two primary reasons: (1) because the arbitrators, according to the Alstons, manifestly disregarded the law; and (2) because of the alleged evident partiality of the arbitrators.[FN4] Neither of these arguments has merit.

> FN4. The Alstons also argue that the arbitrators assertedly failed to allow the Alstons to cross-examine certain witnesses in violation of Virginia law. As discussed *supra*, footnote 3, Virginia vacatur law is preempted by the FAA. *Southland*, 465 U.S. at 10-16. Therefore, this argument, because it is based on a law that has no applicability in this proceeding, must fail. However, the Alstons' cross-examination argument will be considered to the extent it supports their claim that vacatur is appropriate under the FAA.

### A. Manifest Disregard of the Law

Manifest disregard of the law "means more than error or misunderstanding with respect to the law." *Kanuth*, 949 F.2d at 1178. Thus, a party seeking to have an arbitration award vacated on this ground must at least establish that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case. *LaPrade*, 246 F.3d at 706 (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir.1997); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 392 (2d Cir.2003) ("Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case."); *LaPrade v. Kidder, Peabody & Co., Inc.*, 94 F.Supp.2d 2, 6 (D.D.C.2000) ("In addition, there must be no colorable support for the Panel's award in the record; if it seems that the Panel rejected plaintiff's argument after fair consideration, then plaintiff's showing falls short, and the Court must enter the Panel's judgment.").

The Alstons contend that the arbitration panel manifestly disregarded the law by ruling against them on their claims that the respondents made two unsuitable recommendations regarding their securities accounts. To support their claims, the Alstons rely heavily on the assertion by their expert that, had Fullwood recommended the covered call writing strategy as alleged, it would not have been suitable for the Alstons. The Alstons further suggest that the respondents failed to dispute either that Fullwood made the recommendation or that it was not suitable for the Alstons. Additionally, the Alstons claim that, by failing to respond properly to an email request they made, Fullwood made a second unsuitable recommendation.[FN5] The arbitration panel's refusal to find Fullwood and UBS liable for this email response, according to the Alstons, manifestly disregarded the law.

> FN5. The Alstons allegedly requested that Fullwood recommend a strategy to pay off the margin balance. Fullwood responded by recommending a strategy that failed to pay off the margin balance in full, instead only reducing it.

**\*3** The Alstons' arguments fail on a number of fronts. First, their papers suggest that they misunderstand their burden before this court. As required, the Alstons fail to allege that the arbitrators undertook to correctly state the law and then proceeded to disregard their own pronouncement. *Fairchild*, 516 F.Supp. at 1315. Rather, as with the plaintiff's arguments in *Fairchild*, the Alstons' allegations "fall within the realm of errors in the understanding or the application of the law, rather than rising to the level of manifest disregard." *Id.* The proposition advanced by the Alstons, that the arbitrators could only conclude that the recommendations were unsuitable, and that they, therefore, were entitled to prevail, is an argument, not a legal principle. Rejecting the Alstons' argument does not amount to a manifest disregard *of the law*. *Ruppert v. Deutsche Bank Secs., Inc.*, 2005 U.S. Dist. LEXIS 16871, at \*8 (D.D.C. July 11, 2005). Second, even assuming the truth of the Alstons' evidence and granting all reasonable inferences in their favor, the court is able to find a

justifiable ground for the arbitration award in the record. _Duferco Int'l Steel Trading,_ 333 F.3d at 392. On the record before this court, it appears that the arbitration panel could well have concluded that the Alstons failed to make a showing on several key elements of their unsuitability claims.[FN6]

> FN6. To prevail on their claim of unsuitability, the Alstons were required to prove: (1) that the securities purchased were unsuited to the Alstons' needs; (2) that respondents knew or reasonably believed the securities were unsuited to the Alstons' needs; (3) that respondents recommended or purchased the unsuitable securities anyway; (4) that, with scienter, respondents made material misrepresentations (or, owing a duty to the Alstons, failed to disclose material information) relating to the suitability of the securities; and (5) that the Alstons justifiably relied to their detriment on respondents' fraudulent conduct. _See, e.g., Banca Cremi v. Alex. Brown & Sons, Inc.,_ 132 F.3d 1017, 1032 (4th Cir.1997); _Brown v. E.F. Hutton Group, Inc.,_ 991 F.2d 1020, 1031 (2d Cir.1993); _O'Connor v. R.F. Lafferty & Co.,_ 965 F.2d 893, 898 (10th Cir.1992).

### B. Evident Partiality

Next, the Alston's argue that vacatur is appropriate given the evident partiality of the arbitration panel. It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality. _See, e.g., Health Servs. Mgmt. Corp. v. Hughes,_ 975 F.2d 1253, 1264 (7th Cir.1992); _Apperson v. Fleet Carrier Corp.,_ 879 F.2d 1344, 1358 (6th Cir.1989); _Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds,_ 748 F.2d 79, 83 (2d Cir.1984). Rather, to vacate an award because of evident partiality, the party seeking to vacate the award bears a "heavy" burden to establish " 'specific facts that indicate improper motives on the part of an arbitrator." ' _Al- Harbi,_ 85 F.3d at 683 (quoting _Health Servs. Mgmt.,_ 975 F.2d at 1264). The alleged partiality must be " 'direct, definite, and capable of demonstration rather than remote, uncertain or speculative." ' _Id._ (quoting _Health Servs. Mgmt.,_ 975 F.2d at 1264).

Here, the Alston's evident partiality argument is based on a number of exchanges between the arbitration chair, James A. Johnstone, and the attorneys during the examination of defendant Fullwood, which, according to the Alstons, precluded the proper presentation of their case. For example, at one point Johnstone interrupted the Alstons' cross-examination of Fullwood and asked a clarifying question that assertedly benefitted respondents. Arbitration Transcript, 6/14/04, at 143:19-144:7. At another point in the same cross-examination, Johnstone cut off the Alstons' attorney and instructed him "to [a] sk questions that have to do with the merits of the case." _Id._ at 47:17. At a third point during the cross-examination of Fullwood, while the Alstons' counsel was questioning Fullwood about a missing page of Fullwood's Answer, Johnstone interrupted and asked the Alstons' counsel "what [his] point" was and determined that the missing page was "inadvertent" and did not "seem to have done any harm." _Id._ at 16:9-17:5. Additionally, the Alstons assert that Johnstone allowed leading questions of Fullwood by his counsel, in violation of the rules of evidence. The Alstons allege that, taken as a whole, these actions "demonstrate the evident partiality of the Chair which prevented [them] from properly presenting their case, and resulted in an award in favor of Respondents." Pets.' Mot. at 24.

**\*4** The actions complained of by the Alstons failed to demonstrate the "evident partiality" that is contemplated by the FAA as grounds for vacating an arbitration award. The Alstons never suggest that there was any disqualifying bias due to some special relationship to a party or interest in the outcome of the proceedings on the part of an arbitrator. _See, e.g., Commonwealth Coatings Corp. v. Continental Casualty Co.,_ 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). Rather, the Alstons' arguments are premised upon a belief that the arbitrator should not have asked questions of the witnesses, should not have expressed opinions about the merits of the case, and should have followed the rules of evidence.

Given the advantages of arbitration-speed and informality-an arbitrator is certainly permitted "to act affirmatively to simplify and expedite the proceedings before him." _Fairchild,_ 516 F.Supp. at 1313; _Kruse v. Sands Bros. & Co.,_ 226 F.Supp.2d 484, 488 (S.D.N.Y.2002) (noting the "great deference given to arbitrator's decision to control order, procedure and presentation of evidence by federal courts."). Moreover, arbitrators are not bound by the rules of evidence. _Fairchild,_ 516 F.Supp. at 1315; _Industrial_

*Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH,* 141 F.3d 1434, 1443-44 (11th Cir.1998) ("An arbitrator enjoys wide latitude in conducting an arbitration hearing. Arbitration proceedings are not constrained by formal rules of procedure or evidence."). Furthermore, it is certainly permissible for an arbitrator to develop and express an opinion of the merits of the parties' claims during an arbitration. *Fairchild,* 516 F.Supp. at 1313; *Ballantine Books, Inc. v. Capital Distrib. Co.,* 302 F.2d 17, 21 (2d Cir.1962). For these reasons, "[i]t is not surprising that within the informal confines of an arbitration proceedings, an unsuccessful party eventually may perceive the demeanor of an arbitrator as less than satisfactory." *Fairchild,* 516 F.Supp. at 1313. An arbitrator's legitimate efforts to control the proceedings in an expeditious manner often "may be viewed as abrasive or disruptive to a disappointed party." *Id.* Such displeasure, however, fails to qualify as grounds for vacating an arbitration award.

Because the Alstons' arguments amount to nothing more than displeasure with the manner in which the arbitrator controlled the hearing, they fail to meet the requisite heavy burden to go beyond speculation and establish specific facts to indicate an improper motive on the part of the arbitrator. Moreover, the record indicates that the Alstons were given ample time and opportunity to conduct a meaningful examination of Fullwood, Johnstone's demeanor notwithstanding.

### C. Confirmation of Award

Section 9 of the FAA, which governs the confirmation of arbitration awards, states in relevant part:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

*\*5* 9 U.S.C. § 9. Here, all of the conditions precedent to the confirmation are satisfied. First, when they executed the Uniform Submission Agreement, the parties agreed "to abide by and perform any award rendered pursuant to the Submission Agreement and further agree[d] that a judgment … may be entered upon such awards." UBS Opp'n, Exh. A, ¶ 4. Second, jurisdiction is proper in this court because the award was issued in the District of Columbia. Third, within one year of the award, the respondents requested that the award be confirmed. Finally, as discussed above, the court has determined that the award may not be vacated, modified, or corrected. Therefore, this court is bound to confirm the award. *See Bryson,* 268 F.Supp.2d at 54.

### III. CONCLUSION

In sum, the evidence presented by the Alstons, which the court presumes to be true for purposes of resolving the Alstons' motion, fails to satisfy their heavy burden of establishing that vacatur of the arbitration award is appropriate. Therefore, the Alstons' motion for summary judgment is denied [# 18], the respondents' cross motions for summary judgment are granted [20, 23], and, pursuant to 9 U.S .C. § 9, the arbitration award is confirmed. An appropriate order accompanies this memorandum opinion.

Copr. (C) West 2007 No Claim to Orig. U.S. Govt. Works D.D.C.,2006.
Alston v. UBS Financial Services, Inc.
Not Reported in F.Supp.2d, 2006 WL 20516 (D.D.C.)

Motions, Pleadings and Filings (Back to top)

• 2005 WL 3557486 (Trial Motion, Memorandum and Affidavit) Petitioners' Reply to Respondents'

Response to Petitioners' Motion for Summary Judgment and Petitioners' Response to Responents' Cross-Motion for Summary Judgment (Aug. 30, 2005) 📄 Original Image of this Document (PDF)
- 2005 WL 3557487 (Trial Motion, Memorandum and Affidavit) Petitioners' Reply to Respondents' Response to Petitioners' Motion for Summary Judgment and Petitioners' Response to Responents' Cross-Motion for Summary Judgment (Aug. 30, 2005) 📄 Original Image of this Document (PDF)
- 2005 WL 3556288 (Trial Motion, Memorandum and Affidavit) Deck Type: General Civil (Aug. 9, 2005) 📄 Original Image of this Document (PDF)
- 2005 WL 3556289 (Trial Motion, Memorandum and Affidavit) Deck Type: General Civil (Aug. 9, 2005) 📄 Original Image of this Document (PDF)
- 2005 WL 3556287 (Trial Motion, Memorandum and Affidavit) DECK TYPE: General Civil (Aug. 8, 2005) 📄 Original Image of this Document (PDF)
- 2005 WL 3556286 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Cross-Petitioner's Cross-Motion for Summary Judgment (Aug. 4, 2005) 📄 Original Image of this Document (PDF)
- 2005 WL 3556285 (Trial Motion, Memorandum and Affidavit) Petitioners' Motion for Summary Judgment (Jul. 5, 2005) 📄 Original Image of this Document (PDF)
- 2004 WL 3633815 (Trial Motion, Memorandum and Affidavit) Petitioners' Response to Counter-Petition to Confirm Arbitration Award and Petitioners' Reply to Respondents' Response and Answer to Petition to Vacate Arbitration Award (Dec. 27, 2004) 📄 Original Image of this Document (PDF)
- 2004 WL 3633813 (Trial Pleading) Answer of Respondent Fullwood to Petition and Supplement to Petition to Vacate Arbitration Award (Dec. 17, 2004) 📄 Original Image of this Document (PDF)
- 2004 WL 3633814 (Trial Pleading) Deck Type: General Civil (Dec. 17, 2004) 📄 Original Image of this Document (PDF)
- 1:04cv01798 (Docket) (Oct. 19, 2004)
END OF DOCUMENT

(C) 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.